1

1               UNITED STATES OF AMERICA
                UNITED STATES DISTRICT COURT
2              SOUTHERN DISTRICT OF CALIFORNIA

3
                         - - -
4             HONORABLE THOMAS J. WHELAN
          UNITED STATES DISTRICT JUDGE PRESIDING
5                        - - -

6    UNITED STATES OF AMERICA,   )
                                 )
7          PLAINTIFF,            )
                                 )
8          VS.                   )NO. 10CR1372W
                                 )
9    JONATHAN LEAL-DEL CARMEN,   )
     DOMINGO GOMEZ-AGUILAR,      )
10                               )
           DEFENDANTS.           )
11   _____)

12

13                   **MOTION HEARING**

14        REPORTER'S TRANSCRIPT OF PROCEEDINGS
                   **AUGUST 30, 2010**
15              SAN DIEGO, CALIFORNIA

16

17

          MELISSA A. PIERSON, CSR 12499, RPR
18         FEDERAL OFFICIAL COURT REPORTER
            940 FRONT STREET, ROOM 3155
19          SAN DIEGO, CALIFORNIA 92101
               PH:  (619)702-7508
20          PIERSON1121@SBCGLOBAL.NET

21

22

23

24

25

```
 1    APPEARANCES OF COUNSEL:

 2    ON BEHALF OF PLAINTIFF:
              LAURA DUFFY
 3            UNITED STATES ATTORNEY
              BY:  MR. STEVE MILLER, ESQ.
 4            ASSISTANT UNITED STATES ATTORNEYS
              880 FRONT STREET
 5            FIFTH FLOOR
              SAN DIEGO, CA 92101
 6

 7    ON BEHALF OF DEFENDANT LEAL-DEL CARMEN:
              FEDERAL DEFENDERS OF SAN DIEGO
 8            BY:  MR. HANNI FAKHOURY, ESQ.
              225 W. BROADWAY
 9            ST. 900
              SAN DIEGO, CA 92101
10            (619) 234-8467

11    ON BEHALF OF DEFENDANT GOMEZ:
              MR. ROBERT CARRIEDO, ESQ.
12            105 W. "F" STREET
              ST. 300
13            SAN DIEGO, CA 92101
              (619) 232-0900
14

15

16

17

18

19

20

21

22

23

24

25
```

1          MADAM CLERK:  CASE NO. 10CR1372, UNITED STATES OF

2   AMERICA VERSUS JONATHAN LEAL-DEL CARMEN AND DOMINIGO GOMEZ-

3   AGUILAR.

4          MR. FAKHOURY:  GOOD AFTERNOON, AGAIN, YOUR HONOR,

5   HANNI FAKHOURY, FEDERAL DEFENDERS, ON BEHALF OF MR. LEAL-DEL

6   CARMEN.

7          THE COURT:  GOOD AFTERNOON.

8          MR. CARRIEDO:  GOOD AFTERNOON, YOUR HONOR, ROBERT

9   CARRIEDO ON BEHALF OF DOMINGO GOMEZ-AGUILAR.  HE SHOULD BE

10  HERE SHORTLY.

11         THE COURT:  GOOD AFTERNOON.

12         MR. MILLER:  STEVE MILLER FOR THE UNITED STATES.

13         THE COURT:  GOOD AFTERNOON.

14         MR. MILLER:  GOOD AFTERNOON, YOUR HONOR.

15         MR. FAKHOURY:  YOUR HONOR, MR. LEAL-DEL CARMEN IS

16  PRESENT IN COURT.  HE IS THE INDIVIDUAL WITH THE MUSTACHE, TO

17  YOUR HONOR'S RIGHT.

18         THE COURT:  THANK YOU.

19         MR. CARRIEDO:  YOUR HONOR, MR. GOMEZ IS ALSO

20  PRESENT.  HE IS USING THE SERVICES OF THE SPANISH LANGUAGE

21  INTERPRETER AS WELL.

22         THE COURT:  BOTH DEFENDANTS ARE BEING SO ASSISTED.

23  ALL RIGHT, THIS MATTER IS ON CALENDAR FOR A MOTION HEARING.

24  IN THAT REGARD THE RECORD CAN REFLECT THAT I HAVE READ AND

25  CONSIDERED THE DEFENSE'S MOVING PAPERS, INCLUDING THE

1    DECLARATION OF MR. LEAL-DEL CARMEN.  I HAVE READ AND

2    CONSIDERED THE GOVERNMENT'S RESPONSE, BOTH RESPONSES, I

3    SHOULD SAY.

4         STARTING WITH DOCKET NO. 21-1, THAT'S THE MOTION

5    FOR DISCOVERY.  THERE DON'T APPEAR TO BE ANY ISSUES YOU NEED

6    ME TO RESOLVE.

7         MR. FAKHOURY:  THERE IS ONE ISSUE, YOUR HONOR.

8         THE COURT:  ALL RIGHT.

9         MR. FAKHOURY:  I MISSPOKE, THERE ARE TWO ISSUES.

10   THE FIRST ISSUE THERE WAS A MATERIAL WITNESS DEPOSITION IN

11   THIS CASE, YOUR HONOR.  THE MATERIAL WITNESSES WERE DEPOSED,

12   AND IT'S MY UNDERSTANDING THAT MR. MILLER HAS RECEIVED A COPY

13   OF THE TRANSCRIPT OF THE DEPOSITION.  HE HADN'T TURNED IT

14   OVER.  WE HAVE HAD A LITTLE BIT OF A DISPUTE WHETHER HE IS

15   OBLIGATED TO TURN IT OVER.  I AM MAKING A REQUEST THAT HE

16   TURN OVER, THROUGH DISCOVERY MEANS, THE TRANSCRIPT OF THE

17   MATERIAL WITNESS DEPOSITION, SPECIFICALLY UNDER RULE

18   16(A)(1)(E)(2), WHICH SAYS THAT UPON A DEFENDANT'S REQUEST,

19   GOVERNMENT MUST PERMIT THE DEFENDANT TO INSPECT AND TO COPY

20   OR PHOTOGRAPH DOCUMENTS, ETC., AND THE GOVERNMENT INTENDS TO

21   USE THE ITEM IN ITS CASE-IN-CHIEF AT TRIAL.

22        GIVEN THAT THE DEPOSITION WOULD BE THE TESTIMONY OF

23   TWO WITNESSES WHO ARE NO LONGER PRESENT BECAUSE THEY HAVE

24   BEEN RELEASED AND RETURNED, I AM MAKING A SPECIFIC REQUEST

25   UNDER RULE 16 FOR THE DEPOSITION TRANSCRIPT TO BE TURNED OVER

1    BY MR. MILLER.  THAT'S THE FIRST ISSUE, AND I DON'T KNOW IF

2    THE COURT --

3              THE COURT:  LET ME HEAR FROM MR. MILLER ON THAT ONE

4    FIRST.

5              MR. MILLER:  I WILL DO WHAT THIS COURT TELLS ME,

6    HOWEVER, CUSTOM IN THE PAST HAS BEEN WHEN THERE IS A

7    DEPOSITION AND THERE IS A COST OF TRANSCRIPTS, BOTH PARTIES

8    BEAR THE COST OF THOSE TRANSCRIPTS.  AND THE CASE OF THE

9    DEPOSITION, THE GOVERNMENT BEARS THE COST OF THE ORIGINALS,

10   AND THE DEFENSE BEARS THE COST OF THE COPIES.

11             THIS IS REALLY A MATTER OF COMMERCIAL PROTOCOL.  I

12   HESITATED TO TURN OVER COPIES OF THE DEPOSITION OUT OF

13   RESPECT FOR THE COURT REPORTER, WHO USES THIS AS A COMMERCIAL

14   VENTURE.

15             I HAVE HAD A CASE IN THE PAST WHERE THE SAME

16   REQUEST WAS MADE IN ORDER FOR THE FEDERAL DEFENDERS TO OBTAIN

17   A FREE COPY OF THE MATERIAL WITNESS DEPOSITIONS, AND I WAS

18   INFORMED THAT THIS ISSUE IS SORT OF ONE THAT'S COMING TO A

19   HEAD IN HAVING SOME KIND OF BUTTING OF HEADS BECAUSE OF

20   BUDGETARY CONSTRAINTS FOR THE FEDERAL DEFENDERS WHERE THE

21   DIRECTOR OF THE FEDERAL DEFENDERS HAS MADE A DECISION TO

22   PRESS THIS ISSUE EVERY TIME THE FEDERAL DEFENDERS HAS TO

23   OBTAIN A COPY OF THE DEPOSITION ORDERS.

24             JUST AS A MATTER OF WHAT I UNDERSTAND THE PROCEDURE

25   TO BE FOR COURT REPORTERS WHO ARE PAID TO PREPARE THE

1    TRANSCRIPTS --

2              THE COURT:  WELL, IT'S MY OPINION IT'S NOT

3    APPROPRIATE FOR YOUR OFFICE TO COPY THE DEPOSITION AND TURN

4    IT OVER BECAUSE, AS YOU INDICATED, THAT DOES AFFECT THE

5    LIVELIHOOD OF THE COURT REPORTERS.  AS LONG AS THE MATERIAL

6    IS READILY AVAILABLE TO MR. FAKHOURY AND HE CAN REQUEST A

7    COPY, SINCE YOU ALREADY PAID FOR THE ORIGINAL, YOU PAID THE

8    HIGHEST PRICE, HIS OFFICE CAN PAY THE COPY PRICE AND RETAIN

9    THEIR OWN COPY.  MR. FAKHOURY, FROM THAT STANDPOINT, YOUR

10   REQUEST IS DENIED.

11             WHAT'S THE OTHER ISSUE?

12             MR. FAKHOURY:  THE OTHER ISSUE, YOUR HONOR, IS

13   RELATED TO THE MOTION REGARDING DEPORTATION OF MS. GARCIA-

14   GARCIA, ANOTHER MATERIAL WITNESS.  I HAD FILED, IN ADDITION

15   TO THE PAPERS REGARDING THIS SPECIFIC MOTION TO DISMISS, I

16   REQUESTED SPECIFICALLY SOME OTHER ITEMS OF DISCOVERY THAT

17   INCLUDES AN OPPORTUNITY TO INSPECT THE A-FILE OF ALL MATERIAL

18   WITNESSES, INCLUDING THOSE RETAINED AS MATERIAL WITNESSES.

19             TO GIVE THE COURT SOME BACKGROUND, THERE WERE THREE

20   MATERIAL WITNESSES RETAINED, AND THERE WERE, I BELIEVE, NINE

21   THAT WERE ULTIMATELY RELEASED TO MEXICO AND NOT DETAINED AS

22   MATERIAL WITNESSES.  I'M ASKING FOR ONE, AN OPPORTUNITY TO

23   INSPECT AND EXAMINE ALL OF THE A-FILES OF RETAINED AND

24   UNRETAINED MATERIAL WITNESSES.

25             SECONDLY, I RECEIVED VIDEO FROM MS. GARCIA-GARCIA'S

1    STATEMENT, EVEN THOUGH SHE WAS NOT RETAINED AS A MATERIAL

2    WITNESS, AND RECEIVED THE VIDEO STATEMENTS OF THREE MATERIAL

3    WITNESSES THAT WERE RETAINED, BUT I HAVE RECEIVED VIDEO OF

4    THE OTHER, I GUESS IT WOULD MAKE IT, EIGHT MATERIAL

5    WITNESSES.

6              FORGIVE ME, MR. MILLER, IF I MISSPOKE, I THOUGHT

7    MR. MILLER SAID THEY MAY NOT EXIST AT ALL, BUT I'M JUST

8    PUTTING ON THE RECORD A REQUEST IF THEY DON'T EXIST,

9    MR. MILLER, SAY-SO, AND END THAT.  I WANT TO MAKE SURE I MADE

10   THE REQUEST ON THE RECORD.

11             MR. MILLER:  I INQUIRED ABOUT THAT SPECIFIC POINT,

12   ASKED IF THERE WERE ANY OTHER RECORDINGS, AUDIO OR VIDEO, OF

13   ANY OF THE OTHER MATERIAL WITNESSES, AND I WAS TOLD NO.  WHAT

14   HAD HAPPENED, AND THIS IS CUSTOMARY PROCEDURE, THAT IS, WHEN

15   THEY GET A GROUP OF UNDOCUMENTED ALIENS, THEY WILL INTERVIEW

16   ONE, VIDEO RECORD THAT PERSON, AND WHAT HAPPENED WAS BECAUSE

17   OF THE GENERAL NATURE OF MS. GARCIA-GARCIA'S ANSWERS, THEY

18   PLAYED IT SAFE AND GOT A MORE COMPETENT PERCEPTIVE WITNESS

19   BECAUSE SHE HAD ALREADY BEEN VIDEOTAPED.  IT WAS KEPT ON THAT

20   DISK AND TURNED OVER.  I HURRIED UP AND GOT COPIES OF ALL THE

21   VIDEOS SO COUNSEL WOULD HAVE THEM BEFORE THE DEPOSITIONS,

22   HAVE THEM AVAILABLE.

23             THE COURT:  SO, YOU TURNED OVER ALL THE EXISTING

24   VIDEOS?

25             MR. MILLER:  YES.

1          THE COURT:  THAT ANSWERS THAT QUESTION.

2          MR. MILLER:  AS TO THAT.

3          NO OTHER RECORDINGS OF ANY OTHER STATEMENTS OF THE

4    REMAINING EIGHT EXIST.

5          MR. FAKHOURY:  YOUR HONOR, I APPRECIATE

6    MR. MILLER'S COMMENTS.  THE ONLY OTHER THING I WANTED TO PUT

7    ON THE RECORD, I CAN'T TELL WHETHER THE ISSUE OF WHETHER THE

8    STATEMENT WAS RECORDED OR UNRECORDED ASIDE, I CAN'T TELL

9    WHETHER THERE WAS ACTUALLY A STATEMENT TAKEN, EVEN IF IT WAS

10   UNRECORDED, FOR THE OTHER EIGHT MATERIAL WITNESSES.  IT'S

11   BEEN MY PRACTICE AND MY EXPERIENCE IN THESE TYPES OF CASES

12   THAT THEY USUALLY AT LEAST TAKE A STATEMENT FROM EVERY

13   MATERIAL WITNESS, WHETHER THEY KEEP THEM IN THE OFFICIAL, SO

14   TO SPEAK, MATERIAL WITNESS AND PULL THEM INTO THE COUNTRY OR

15   NOT TO HAVE A STATEMENT TAKEN.  I THOUGHT THEY USUALLY

16   VIDEOTAPE IT.  APPARENTLY THEY DIDN'T FOR AT LEAST EIGHT OF

17   THESE INDIVIDUALS.  BUT I HAVE NO STATEMENTS FROM THESE EIGHT

18   INDIVIDUALS AT ALL.  I WOULDN'T PRESS THE ISSUE SO MUCH, BUT

19   FOR THE MOTION TO DISMISS I FILED REGARDING THE DEPORTATION

20   OF MS. GARCIA-GARCIA THAT RAISED SOME RED FLAGS, IN MY

21   OPINION.

22          THE COURT:  MR. MILLER, ANY STATEMENT YOU ARE AWARE

23   OF, OTHER THAN THE NON-RETAINED MATERIAL WITNESSES?

24          MR. MILLER:  NONE THAT I AM AWARE OF.  I CAN SPEAK

25   TO CUSTOMS, THAT IS USUALLY WHEN A GROUP OF MATERIAL

1    WITNESSES IS APPREHENDED AND THAT IF IT'S SMUGGLED, THE

2    STATEMENTS THAT THEY TAKE ARE FOR PURPOSES OF REMOVING THOSE

3    PARTICULAR ALIENS.  AND THEN THE STATEMENTS ARE, WHAT IS YOUR

4    CITIZENSHIP?  WHERE WERE YOU BORN?  WHERE WERE YOUR PARENTS

5    BORN?  DO YOU HAVE ANY DOCUMENTATION?

6            THE COURT:  ALL RIGHT.  LET'S DO IT THIS WAY, I

7    KNOW YOU TURNED OVER EVERYTHING YOU ARE AWARE OF.  WOULD YOU

8    JUST CHECK YOUR CASE AGENTS TO SEE IF THERE ARE ANY WRITTEN

9    STATEMENTS TAKEN AND TURN THEM OVER?  IF NOT, THAT'S FINE.

10   YOU CAN'T TURN THEM OVER IF THEY DON'T EXIST.  OTHERWISE YOU

11   WILL TURN THEM OVER, FAIR ENOUGH, MR. FAKHOURY?

12           MR. FAKHOURY:  THAT'S FINE.

13           THE COURT:  MR. CASILLAS (SIC) YOU WILL GET THEM

14   ALSO.

15           MR. CARRIEDO:  I'M SORRY?

16           THE COURT:  MR. CASILLAS WAS ON THE LAST MATTER.

17           MR. CASILLAS:  IT'S A LONG DAY.

18           THE COURT:  WITH REGARD TO DOCUMENT NO. 22, THAT'S

19   A MOTION TO PRESERVE EVIDENCE.  AT THIS POINT, MR. FAKHOURY,

20   THAT'S OVERBROAD, SO I TEND TO DENY IT.  BUT YOUR REQUEST IS

21   ALL EVIDENCE THAT MAY BE DESTROYED, CAN BE DESTROYED.  I

22   CAN'T ISSUE AN ORDER PRESERVING ALL EVIDENCE THAT MAY BE

23   DESTROYED.

24           MR. FAKHOURY:  PROBABLY TO MAKE IT A LITTLE MORE

25   SPECIFIC, IT WAS MORE TOWARDS THE VIDEOTAPE, IF THEY DID

1   EXIST, ANY WRITTEN REPORTS THAT DO EXIST.  IT'S MY

2   UNDERSTANDING THERE REALLY IS NOT ANY PHYSICAL SUBSTANTIVE

3   EVIDENCE, THERE IS NO GUNS, OR DRUGS OR ANYTHING OF THAT

4   SORT.  FROM WHAT MR. MILLER SAID THERE ARE NO VIDEOTAPES THAT

5   EXIST AND THERE IS NOTHING TO PRESERVE.  THE COURT CAN RULE

6   ON THAT OR LEAVE IT OPEN.  IF I HAVE A MORE SPECIFIC REQUEST,

7   IF THINGS COME TO MIND, I WILL LET THE COURT KNOW.

8          THE COURT:  I WILL DENY THAT AT THIS POINT AS MOOT.

9   HE HAS TURNED OVER EVERYTHING HE IS AWARE OF VIDEOTAPE WISE

10  AND STATEMENTS WISE.  IF SOMETHING COMES UP, PREPARE

11  SOMETHING, REPRESENT IT TO ME, HE WILL TURN IT OVER TO YOU.

12         MR. FAKHOURY:  THAT'S FINE.  I CAN ACCEPT THAT.

13  THANK YOU.

14         THE COURT:  DOCKET NO. 21-3, DEFENSE'S MOTION TO

15  FILE FURTHER MOTIONS, MY TENTATIVE WOULD BE TO GRANT THAT

16  PROVIDED ANY NEW MOTIONS ARE BASED ON NEWLY DISCOVERED

17  EVIDENCE.  ANY OBJECTION TO THAT, MR. MILLER?

18         MR. MILLER:  NO.

19         THE COURT:  THAT'S GRANTED.

20         WITH REGARD TO DOCKET NO. 41-2, THAT'S ANOTHER

21  MOTION TO COMPEL DISCOVERY.  I WILL LEAVE THAT PENDING,

22  MR. FAKHOURY, IS THAT AGREEABLE?

23         MR. FAKHOURY:  THAT'S FINE, YOUR HONOR.  THAT GOES

24  BACK TO MY MOTION TO DISMISS.  I THINK THE COURT'S ALREADY

25  ADDRESSED THAT.

1           THE COURT:  WITH REGARD TO DOCKET 41-1, MOTION TO

2   DISMISS ON THE BASIS THE GOVERNMENT ALLEGEDLY DEPORTED

3   EXCULPATORY WITNESSES.

4           THE FIRST PRONG THERE I HAVE TO LOOK TO SEE WHETHER

5   OR NOT, IN THE COURT'S MIND, THE GOVERNMENT ACTED IN BAD

6   FAITH.  QUITE FRANKLY, MR. FAKHOURY, I DON'T SEE ANY

7   INDICATION THEY ACTED IN BAD FAITH.  TO ME WHAT IT SHOWED WAS

8   GOOD FAITH THE FACT THEY VIDEOTAPED MS. GARCIA'S INTERVIEW.

9   YOUR CLIENT DID SIGN A WAIVER.

10          THE MATERIAL WITNESS THAT WE ARE TALKING ABOUT,

11  MS. GARCIA, HER STATEMENT WITH REGARD TO NOT HEARING YOUR

12  CLIENT GIVE ANY DIRECTION, IS CUMULATIVE OF WHAT HER

13  BOYFRIEND, MR. GONZALEZ, SAYS, WHICH WAS HE WAS RETAINED AND

14  HIS DEPOSITION WAS TAKEN.

15          AND ALSO, EXHIBIT A, I BELIEVE IT IS, TO YOUR

16  PAPERS, IS THE TRANSCRIPT OF THE INTERVIEW OF MS. GARCIA, AND

17  IN ABOUT A PAGE-AND-A-HALF, SPECIFICALLY FROM PAGE 9, LINE

18  ONE, THROUGH PAGE 10, LINE 15, END RESPONSE TO QUESTIONS SHE

19  SAYS, "I DON'T REMEMBER.  I WASN'T LOOKING."  AND THEN SHE

20  SAYS, "I DON'T KNOW, AT LEAST FIVE OCCASIONS."  SO, THAT TO

21  ME IS CERTAINLY NOT SOMEONE WHO'S GOING TO HAVE SOMETHING

22  THAT'S GOING TO BE MATERIALLY HELPFUL TO THE DEFENSE.  IN

23  FACT, IT APPEARS SHE WAS BEING SOMEWHAT EVASIVE.

24          IN ANY EVENT, HER BASIC STATEMENTS YOU'RE RELYING

25  ON SHE DIDN'T HEAR THE CLIENT GIVE ORDERS, WHICH IS PERFECTLY

1    CONSISTENT WITH WHAT MR. GONZALEZ SAID, AND LIKEWISE, DIDN'T

2    HEAR YOUR CLIENT DIRECT THE GROUP OR GIVE ORDERS.  ALTHOUGH

3    YOU ARE AWARE IN THE DEPOSITION HE INDICATES HE DID SEE YOUR

4    CLIENT LAY A BLANKET ON THE DIRT ROAD AND ALL THE GROUP

5    WALKED ACROSS THE BLANKET, BUT THAT'S HERE NOR THERE.  FOR

6    PURPOSES OF WHETHER OR NOT SHE HAD EXCLUSIVELY SPOKE TOWARDS

7    MR. (INAUDIBLE), I JUST DON'T SEE THAT IT'S THERE.  IT'S HARD

8    TO BELIEVE HER TESTIMONY OF, "I DON'T RECALL, AND I WASN'T

9    LOOKING, AND I DON'T REMEMBER," WOULD BE RELEVANT, AND

10   MATERIAL OR ANYTHING, ESPECIALLY SINCE ANYTHING SHE HAD TO

11   SAY OR DID SAY BASICALLY IS CUMULATIVE OF WHAT MR. GONZALEZ

12   SAID.  I DON'T THINK THAT'S ALL EXCULPATORY.  CERTAINLY, IF

13   ANYTHING, IT'S AN INADEQUATE SHOWING OF THE STATEMENT OF YOUR

14   CLIENT NOT GIVING ANY ORDERS IS EXCULPATORY.

15             MR. FAKHOURY:  YOUR HONOR, IF I COULD JUST BRIEFLY

16   ADD A COUPLE OF THINGS?

17             THE COURT:  SURE.

18             MR. FAKHOURY:  ONE, WITH RESPECT TO THE **LUJAN-**

19   **CASTRO** WAIVER, THAT MR. LEAL PURPORTEDLY SIGNED, I DISPUTE

20   THAT AND I DISAGREE WITH MR. MILLER ABOUT IT.  I DON'T HAVE A

21   COPY OF THE WAIVER IN DISCOVERY.  I RECEIVED ONE FOR THE

22   CO-DEFENDANT, MR. AGUILAR.  BUT I NEVER RECEIVED ONE FOR

23   MR. LEAL'S BEHALF.

24             I NOTED THAT THE REPORT OF INVESTIGATION INDICATED

25   THAT MR. LEAL DID GIVE -- DID NOT REQUEST TO RETAIN ANY

1    MATERIAL WITNESS.  AS I ATTACHED TO A DECLARATION, THERE WAS

2    NEVER ANY EXPLANATION AS TO WHAT THE MATERIAL WITNESSES HAD

3    SAID TO HIM.

4         SO, WITH RESPECT TO THE VALIDITY OF THE

5    **LUJAN-CASTRO** WAIVER, I DON'T THINK ANY SUCH WAIVER WOULD BE

6    VALID IN THIS CASE, EVEN IF ONE EXISTED IN WRITTEN FORM,

7    WHICH I HAVEN'T SEEN, AND EVEN AN ORAL ONE, I THINK, IS NOT

8    VALID BECAUSE, AS INDICATED, MR. LEAL'S DECLARATION THERE IS

9    NO CHANCE FOR HIM TO KNOWINGLY CHOOSE TO EXCISE THAT RIGHT.

10        WITH RESPECT TO WHETHER MS. GARCIA'S STATEMENTS

11   WERE CONSISTENT WITH HER BOYFRIEND, AND I THINK IT WAS

12   MR. GONZALEZ, IF I AM INCORRECT I APOLOGIZE, AGAIN, ALSO YOUR

13   HONOR, I RESPECTFULLY DISAGREE THAT THEY ARE CONSISTENT.  I

14   THINK THEY ARE INCONSISTENT IN THE SENSE THAT THE OTHER --

15   I'M SORRY, THE OTHER THREE MATERIAL WITNESSES ALL BASICALLY

16   POINT THE FINGER AT MR. LEAL SAYING THAT HE WAS DIRECTING AND

17   SAYING ORDERS, AND MS. GARCIA IN STARCK CONTRAST SAYS, "NO, I

18   NEVER HEARD THAT."

19        NOW, I CERTAINLY CAN SEE THE COURT'S CONCERN WITH

20   RESPECT TO MS. GARCIA'S, KIND OF, "I DON'T KNOW, I'M NOT

21   SURE," BUT WITH RESPECT TO THAT SPECIFIC PORTION OF HER

22   INTERVIEW, SHE WAS VERY FIRM AND STEADY.  IN FACT, THE AGENTS

23   EVEN ASKED HER, I THINK, SOMETHING TO THE EFFECT OF, "PARDON

24   ME?"  AND SHE SAID THE SAME THING, "HE DID NOT DIRECT US."

25   THEY SAID, "NO?"  AND SHE SAID, "NO."

1          SO, WHATEVER FUZZINESS OR UNCERTAINTY SHE MAY HAVE

2     HAD, IN GENERAL, I THINK, AT LEAST WITH RESPECT TO THIS

3     SPECIFIC PORTION, AND THE MOST RELEVANT AND MOST

4     SIGNIFICANTLY **BRADY** PORTION OF THAT STATEMENT, SHE WAS VERY

5     FIRM AND I THINK SHE WAS CONSISTENT.

6          AND YOU KNOW, YOUR HONOR, I HATE TO SAY THE

7     GOVERNMENT ACTS IN BAD FAITH AND JUST THROW IT OUT THERE, BUT

8     I WOULD NOTE, AGAIN, GOING BACK TO WHAT MR. MILLER SAID

9     EARLIER, THEY ONLY TAKE STATEMENTS OF MATERIAL WITNESSES

10    CUSTOMARILY JUST TO EXPEDITE THE REMOVAL, AND IT'S BACKGROUND

11    IMMIGRATION INFORMATION.  I THINK IT'S TELLING THAT THERE ARE

12    12 INDIVIDUALS APPREHENDED, EIGHT ARE SUMMARILY REMOVED

13    WITHOUT ANY STATEMENT BEING TAKEN BY THEM AS TO WHAT HAPPENED

14    IN THE OFFENSE, THREE ARE RETAINED AS MATERIAL WITNESSES, AND

15    VIDEOTAPED AND THEN WE HAVE MS. GARCIA WHO'S KIND OF IN THE

16    MIDDLE.  THEY TAKE A STATEMENT FROM HER, UNLIKE THE OTHER

17    EIGHT INDIVIDUALS WHO ARE REMOVED, VIDEOTAPE THE STATEMENT,

18    LIKE THE THREE OTHER INDIVIDUALS WHO ARE RETAINED, AND

19    ULTIMATELY DECIDE TO REMOVE HER.

20          I THINK IT'S THAT ODD SEQUENCE OF EVENTS THAT LEADS

21    ME TO BELIEVE THAT THERE IS AT LEAST AN INDICATION OF SOME

22    BAD FAITH, AT A MINIMUM, REQUIRES AN EVIDENTIARY HEARING TO

23    FURTHER FIGURE OUT WHAT THE AGENT IN THIS CASE IS

24    CONTEMPLATING DECIDING TO TAKE HER STATEMENT IN CONTRAST TO

25    THE OTHER EIGHT MATERIALS WITNESSES AND THEN REMOVE HER.

1          THE COURT:  WHEN YOU READ THE TRANSCRIPTS,

2    MR. FAKHOURY, YOU CAN SEE THAT SHE AND HER BOYFRIEND,

3    MR. GONZALEZ, WHO THEY DID KEEP, ARE KIND OF IN THE MIDDLE OF

4    THE GROUP.  AND IT IS CERTAINLY CLEAR THAT SHE SAID, "NO,"

5    REFERRING TO YOUR CLIENT, ASKED ABOUT NO. 5 WHO ALLEGEDLY IS

6    YOUR CLIENT, THAT NO, SHE SAID, "NO, HE DIDN'T GIVE ANY

7    ORDERS."  THE AGENT SAYS, "PARDON ME?"  SHE AGAIN REPEATS,

8    "NO, HE DID NOT GIVE ORDERS."  THAT'S EXACTLY CONSISTENT WITH

9    WHAT MS. GONZALEZ SAID, THAT, "NO, HE DIDN'T GIVE ANY

10   ORDERS," OR, "DID YOUR CLIENT GIVE ANY ORDERS?"  IT'S A

11   LITTLE DIFFERENT THAN WHAT YOUR CLIENT HAS IN HIS DECLARATION

12   THAT HE CONTRIBUTES TO YOU THAT YOU TOLD HIM THAT MS. GARCIA

13   SAID THAT HE WAS GUIDING THE GROUP.  WELL, GUIDING THE GROUP

14   CAN BE LOTS OF THINGS BESIDES HEARING HIM GIVING ORDERS.  I

15   THINK YOUR CLIENT HAD A LITTLE MISAPPREHENSION AS TO EXACTLY

16   WHAT WAS SAID.

17          IN ANY EVENT, WHAT MR. GARCIA SAID IN HIS

18   DEPOSITION, WHAT MR. GONZALEZ SAID IN HIS DEPOSITION, AND

19   WHAT MS. GARCIA SAID IN HER INTERVIEW ARE DEFINITELY

20   CONSISTENT, AND CUMULATIVE, AND UNDERSTANDABLE BASED ON THEIR

21   POSITION IN THE GROUP.  THEY WERE IN THE MIDDLE OF THE GROUP.

22   SO, UNDERSTANDING THERE WERE A LOT OF PEOPLE UP CLOSER TO THE

23   FRONT WHERE YOUR CLIENT ALLEGEDLY WAS, MAY HAVE HEARD

24   SOMETHING, OR MAYBE PEOPLE THOUGHT IT WOULD GET BACK TO HIM.

25          MR. FAKHOURY:  I CERTAINLY UNDERSTAND THE COURT'S

16

1    POINT.  I THINK MY RECORD HAS BEEN MADE.

2              THE COURT:  OKAY.  FOR THE REASONS I ALREADY

3    STATED, THE REQUEST FOR THE MOTION TO DISMISS THE INDICTMENT

4    BECAUSE OF GOVERNMENT DEPORTS EXCULPATORY WITNESSES IS DENIED

5    ON THE BASIS I DON'T FIND THE GOVERNMENT ACTED IN BAD FAITH,

6    AND I DON'T FIND THE GOVERNMENT'S WITNESS WAS AN EXCULPATORY

7    WITNESS, WOULD BE A RETAINED WITNESS SPECIFICALLY WITH REGARD

8    TO MR. GONZALEZ.

9              WITH REGARD TO A TRIAL DATE, DO YOU WANT TO GO OFF

10   THE RECORD AND DISCUSS A DATE?  I CAN SUGGEST DATES.

11             MR. MILLER:  I'M UNAVAILABLE THE WEEK OF SEPTEMBER

12   27TH.  I HAVE A TRIAL SCHEDULED.

13             THE COURT:  HOW ABOUT OCTOBER 5TH?

14             MR. CARRIEDO:  YOUR HONOR, I'M COMING BACK ON

15   OCTOBER 5.

16             THE COURT:  THAT'S RIGHT, FROM THIS MORNING, I'M

17   SORRY.  I SHOULD HAVE REMEMBERED THAT.

18             MR. CARRIEDO:  AND I WOULD ASK THAT WE NOT START A

19   TRIAL THAT WEEK.

20             THE COURT:  CERTAINLY.  ABSOLUTELY, MR. CARRIEDO,

21   NO PROBLEM AT ALL.  WHY DON'T YOU GUYS GO OFF THE RECORD AND

22   TALK ABOUT IT, GIVE ME AN IDEA --

23                  (DISCUSSION HAD OFF THE RECORD.)

24             MR. FAKHOURY:  YOUR HONOR, OCTOBER 12TH, IF THAT'S

25   AVAILABLE TO THE COURT?

1           THE COURT:  NO, THAT'S NOT GOOD.  I JUST SET ONE

2   FOR THE END OF OCTOBER.  IT PROBABLY WOULD HAVE TO GO INTO

3   NOVEMBER.  HOW ABOUT THE 16TH?  MY CLERK SUGGESTS THAT.

4           MR. MILLER:  I HAVE A TRIAL SCHEDULED FOR THE 2ND.

5   IN THE LAND OF RATIONAL THOUGHT, IT WOULD BE DONE THAT WEEK,

6   BUT IT INVOLVES A BORDER PATROL SHOOTING.

7           THE COURT:  THAT WOULD BE TWO WEEKS AFTER THAT,

8   THAT SHOULDN'T BE A PROBLEM.

9           MR. MILLER:  OKAY.

10          THE COURT:  MR. CARRIEDO, YOU ARE AVAILABLE?

11          MR. CARRIEDO:  THAT'S FINE.

12          THE COURT:  MR. FAKHOURY?

13          MR. FAKHOURY:  I'M AVAILABLE, YOUR HONOR.  MY ONLY

14  CONCERN IT'S PRETTY FAR SINCE MR. LEAL HAS BEEN IN CUSTODY

15  SINCE MARCH, BUT IF THAT'S THE ONLY DATE THAT WORKS --

16          THE COURT:  I CAN TRY IT SOONER IF YOU WANT TO LOOK

17  FOR SOMETHING IN SEPTEMBER?

18          MR. FAKHOURY:  MY ONLY PROBLEM WITH SEPTEMBER IS I

19  HAVE THREE STRAIGHT WEEKS OF TRIALS.  I GUESS NOVEMBER 16TH

20  IS THE ONLY DATE THAT WORKS.  THAT'S FINE.

21          THE COURT:  WHAT'S WRONG WITH OCTOBER 5TH?  WHO

22  COULDN'T DO -- MR. CARRIEDO IS NOT AVAILABLE.

23          MR. CARRIEDO:  I'M NOT IN THE DISTRICT.

24          MR. FAKHOURY:  I DON'T KNOW IF THE WEEK OF OCTOBER

25  18TH, OR EVEN THE WEEK OF OCTOBER 25TH --

1          MR. MILLER:  I HAVE A TRIAL SCHEDULED FOR THE 26TH.

2     THAT WAS ONE YOU SET AND THEN TRANSFERRED TO JUDGE HAYES.

3          THE COURT:  I'M NOT AVAILABLE THE WEEK OF THE 18TH

4     EITHER.  OKAY.  NOVEMBER 16TH LOOKS LIKE THAT'S THE BEST WE

5     CAN DO.

6          MR. MILLER:  VERY WELL.

7          THE COURT:  IF ANYTHING OPENS UP ON YOUR

8     PERSPECTIVE SCHEDULES, JUST CONTACT MY CLERK AND WE WILL TRY

9     TO MOVE IT UP.

10          MR. FAKHOURY:  THAT'S FINE, YOUR HONOR.

11          THE COURT:  MR. CARRIEDO, IS THAT AGREEABLE?

12          MR. CARRIEDO:  YES.

13          MR. FAKHOURY:  THAT'S FOR TRIAL?  IN LIM'S -- THE

14     16TH WOULD ALSO BE IN LIM'S?

15          THE COURT:  YES.  MR. LEAL-DEL CARMEN, IS THAT DATE

16     ALL RIGHT WITH YOU, SIR?

17          DEFT. LEAL:  WELL, YES.

18          THE COURT:  MR. GOMEZ?

19          DEFT. GOMEZ:  YES.

20          THE COURT:  OKAY.  THANK YOU, GENTLEMEN.

21          MR. FAKHOURY:  THANK YOU, YOUR HONOR.

22          THE COURT:  YOU ARE WELCOME.

23               (WHICH WERE ALL THE PROCEEDINGS

24               HELD IN THE ABOVE-ENTITLED CAUSE.)

25

19

CERTIFICATE OF REPORTER

COUNTY OF SAN DIEGO          )

                             )  SS.

STATE OF CALIFORNIA          )


I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING

PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH;

THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY

MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER

CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

STENOGRAPHIC NOTES.



DATE: 4-28-11


**S:/MELISSA A. PIERSON**

MELISSA A. PIERSON, CSR 12499 RPR

FEDERAL OFFICIAL COURT REPORTER