1            UNITED STATES OF AMERICA
          UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF CALIFORNIA

3                    - - -

4          HONORABLE THOMAS J. WHELAN
     UNITED STATES DISTRICT JUDGE PRESIDING
5                    - - -

6   UNITED STATES OF AMERICA,   )
                                )
7          PLAINTIFF,           )
                                )
8   VS.                         ) NO. 10CR1372W
                                )
9   JONATHAN LEAL-DEL CARMEN,   )
                                )
10         DEFENDANT.           )
    _____)
11

12

13                **JURY TRIAL - DAY ONE**
          REPORTER'S TRANSCRIPT OF PROCEEDINGS
14              **NOVEMBER 16, 2010**
               SAN DIEGO, CALIFORNIA
15

16

17        MELISSA A. PIERSON, CSR 12499, RPR
           FEDERAL OFFICIAL COURT REPORTER
18           940 FRONT STREET, ROOM 3155
            SAN DIEGO, CALIFORNIA 92101
19             PH:  (619)702-7508
              PIERSON1121@SBCGLOBAL.NET
20

21

22

23

24

25

```
 1    APPEARANCES OF COUNSEL:

 2    ON BEHALF OF PLAINTIFF:
              LAURA E. DUFFY,
 3            UNITED STATES ATTORNEY
              BY:  MR. STEPHEN MILLER, ESQ.
 4            ASSISTANT UNITED STATES ATTORNEYS
              880 FRONT STREET
 5            FIFTH FLOOR
              SAN DIEGO, CA 92101
 6

 7    ON BEHALF OF DEFENDANT:
              FEDERAL DEFENDERS OF SAN DIEGO
 8            BY:  MR. HANNI M. FAKHOURY, ESQ.
              BY:  MR. DAVID M.C. PETERSON, ESQ.
 9            225 W. BROADWAY
              ST. 900
10            SAN DIEGO, CA 92101
              (619) 234-8467
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1              SAN DIEGO, CALIFORNIA; TUESDAY, NOVEMBER 16, 2010

 2                            - - -

 3                 (COURT IN SESSION AT 9:00 A.M.)

 4          MADAM CLERK:  CASE NO. 10CR1372, UNITED STATES OF

 5   AMERICA VERSUS JONATHAN LEAL-DEL CARMEN.

 6          MR. FAKHOURY:  GOOD MORNING, HANNI FAKHOURY AND

 7   DAVID PETERSON, FEDERAL DEFENDERS, FOR MR. LEAL-DEL CARMEN.

 8   HE IS PRESENT BEFORE THE COURT IN CUSTODY BEING ASSISTED BY

 9   THE SPANISH INTERPRETER.  HE IS NOT DRESSED OUT YET, BUT WE

10   ARE IN THE PROCESS OF GETTING THAT CLEARED UP.

11          THE COURT:  GOOD MORNING, SIR.

12          MR. MILLER:  STEVE MILLER FOR THE UNITED STATES.

13   WITH ME IS AGENT GUIEB, BORDER PATROL.

14          THE COURT:  GOOD MORNING.  THE RECORD CAN REFLECT

15   NO MEMBERS OF THE PROSPECTIVE JURY PANEL ARE PRESENT.  WE ARE

16   IN SESSION OUTSIDE THE PRESENCE OF THE JURY FOR THE COURT TO

17   RULE ON IN LIMINE MOTIONS FILED BY THE DEFENSE.

18          LET'S START WITH THE MOTION TO RULE ON OBJECTIONS

19   THAT WERE MADE DURING THE MATERIAL WITNESSES' DEPOSITIONS

20   TAKEN BEFORE TRIAL.  AS MR. FAKHOURY AND MR. PETERSON ARE

21   AWARE, THEY INDICATED THEY ARE GOING TO MEET WITH MR. MILLER

22   TO RESOLVE WHATEVER MATTERS COULD BE RESOLVED PRIOR TO THIS

23   MORNING.  I KNOW THAT THEY HAVE DONE THAT.  WHAT'S THE

24   RESULT, GENTLEMEN?

25          MR. FAKHOURY:  THERE ARE QUITE A FEW THAT WE PRETTY
```

1    MUCH AGREED ON.  UNFORTUNATELY, YOUR HONOR, I THINK THE BULK

2    OF THEM ARE GOING TO NEED RULING ON BY YOUR HONOR.  I CAN

3    TELL THE COURT THE ONES WE AGREE ON.

4          THE COURT:  LET'S DO IT ORDERLY.  EVERYBODY GET A

5    COPY OF THE DEPOSITION TRANSCRIPT AND WE WILL GO THROUGH IT

6    BY PAGE.

7          MR. MILLER:  FOR THE RECORD, THE COPY THAT I THINK

8    WAS FILED IN ITEM 50-2 -- I'M SORRY, 50-2 AND 50-1 WITH THE

9    COURT IS THE GOVERNMENT'S RED LINE REDACT.

10         THE COURT:  HOPEFULLY THAT'S WHAT I'VE GOT HERE,

11   MR. MILLER.  I'VE GOT THE --

12         MR. MILLER:  YES, THE FIRST ONE.

13         THE COURT:  THE FIRST ONE IS THE DEPOSITION OF

14   MAURO RAMIREZ-JARQUIN.

15         MR. MILLER:  YES, THE FIRST RED LINE REDACT WOULD

16   BE ON PAGE 47.

17         THE COURT:  PAGE 47, YOUR HIGHLIGHTED NUMBERS ON

18   THE BOTTOM RIGHT-HAND CORNER?

19         MR. MILLER:  YES.

20         THE COURT:  YOU HIGHLIGHTED THEM AGAIN, LINE 12

21   THROUGH LINE 25?

22         MR. MILLER:  CORRECT.

23         THE COURT:  THIS IS ONE YOU HAVE OR HAVE NOT BEEN

24   ABLE TO REACH AN AGREEMENT ON?

25         MR. MILLER:  CORRECT.

```
 1              THE COURT:  WHICH?

 2              MR. FAKHOURY:  I'M SORRY FOR INTERRUPTING, I DON'T

 3    KNOW IF THE COURT WANTS TO GO THROUGH THEM IN ORDER?  THERE

 4    ARE OTHER OBJECTIONS THAT HAVE BEEN LAUNCHED BEFORE THIS

 5    POINT IN THIS DEPOSITION.  JUST SO THE COURT -- SO WE CAN ALL

 6    BE ON THE SAME PAGE, MR. MILLER SELECTED SOME PORTIONS THAT

 7    HE WANTED TO EXCISE.  SOME OF THE THOSE PORTIONS WE ARE IN

 8    AGREEMENT WITH AND HAVE NO OBJECTION IF THEY GET EXCISED.

 9    THROUGHOUT THE DEPOSITION THERE ARE OBJECTIONS THAT BOTH

10    SIDES LODGE, AND AT LEAST ON MR. LEAL'S BEHALF, ANY OBJECTION

11    WE LODGED IN THE DEPOSITION WE ARE NOT WITHDRAWING.  WHILE WE

12    AGREE THERE ARE SOME THAT WE AGREE WITH MR. MILLER, CAN BE

13    REMOVED, PERHAPS THE BETTER COURSE MAY BE STARTING FROM THE

14    BEGINNING AND HIGHLIGHTING TO THE COURT, TAKING THE TIME TO

15    WRITE OUT THE SPECIFIC PAGE NUMBERS TO TELL THE COURT ON PAGE

16    14 THERE IS AN OBJECTION, HERE WE ARE NOT WITHDRAWING OUR

17    OBJECTION.

18              THE COURT:  ANY WAY YOU GENTLEMEN WANT TO DO IT.

19    IS THAT HOW YOU WANT TO DO IT?

20              MR. FAKHOURY:  I THINK THAT MAY BE THE MORE ORDERLY

21    WAY TO DO IT.

22              THE COURT:  LET'S GO BACK IN THE DEPOSITION, PAGE

23    14, IS THAT WHERE IT IS?

24              MR. FAKHOURY:  I THINK THE FIRST ONE, YOUR HONOR --

25    THE PARTIES ARE IN AGREEMENT THAT ON THE DEPOSITION FOR MAURO
```

1   RAMIREZ-JARQUIN, PAGES 5, 6, 7 AND UP TO LINE 4 ON PAGE 8,

2   SHOULD BE REMOVED.  AND WE HAVE NO OBJECTION TO THAT BEING

3   EXCISED.

4            MR. MILLER:  I AM SORRY, UP TO?

5            MR. FAKHOURY:  FROM PAGE 5, UP UNTIL LINE FOUR OF

6   PAGE 8.  SO, THAT'S JUST INTRODUCTORY COMMENTS.  WE HAVE NO

7   OBJECTION TO THAT BEING REMOVED.

8            THE COURT:  DID YOU WANT TO REMOVE THAT,

9   MR. MILLER?

10           MR. MILLER:  I HAVE NO OBJECTION, BUT I THINK THAT

11  WE NEED TO REMOVE IT UP TO LINE 3.

12           MR. FAKHOURY:  THAT'S FINE, YOUR HONOR.

13           THE COURT:  NOTHING FOR ME TO RULE ON THERE.  LET'S

14  GET TO SOMETHING YOU NEED ME TO RULE ON.

15           MR. FAKHOURY:  YOUR HONOR, PAGE 16, LINES 5 UP

16  THROUGH 16.

17           THE COURT:  THE OBJECTION ON LINE 7 AND 8 IS

18  OVERRULED.  THE OBJECTION ON 15 IS OVERRULED.

19           MR. FAKHOURY:  PAGE 16, LINE 22, UP UNTIL PAGE 17,

20  LINE 5.

21           THE COURT:  OBJECTION ON LINE 24 IS OVERRULED.

22           MR. FAKHOURY:  PAGE 22, LINE 22, UP THROUGH PAGE

23  23, LINE 2.

24           THE COURT:  PAGE 22, LINE 22?

25           MR. FAKHOURY:  YES, SIR.

```
1          THE COURT:  THE OBJECTION ON LINE 24 IS OVERRULED.

2          MR. FAKHOURY:  NEXT, YOUR HONOR, IS PAGE 29, LINES

3   21 THROUGH 24.

4          THE COURT:  PAGE?

5          MR. FAKHOURY:  PAGE 29, LINE 21 THROUGH 24.

6          THE COURT:  WITHOUT ME GOING BACK AND READING THE

7   TRANSCRIPT I CAN'T TELL IF IT WAS ASKED AND ANSWERED.  THAT'S

8   NOT THAT CRITICAL.  IT'S OVERRULED.

9          MR. FAKHOURY:  NEXT, YOUR HONOR, PAGE 36, LINES 13

10  THROUGH 17.

11         THE COURT:  OBJECTION ON LINE 15 IS SUSTAINED.

12         MR. FAKHOURY:  PAGE 39, LINE 9 THROUGH 13.  LINES 9

13  THROUGH 13.

14         THE COURT:  PAGE 39, LINES 9 -- OKAY.  OBJECTION ON

15  LINE 10 IS SUSTAINED.

16         MR. FAKHOURY:  AND THEN PAGE 43.

17         MR. MILLER:  I'M SORRY, YOUR HONOR, ONE MOMENT.

18  SO, LINE NINE --

19         THE COURT:  QUESTION IS --

20         MR. MILLER:  THROUGH 14 IS TO BE REDACTED?

21         THE COURT:  YES.

22         MR. MILLER:  CORRECT.  AND I'M SORRY, THE OTHER

23  SUSPENDED PAGE 36, THAT WOULD BE LINE 13 THROUGH 17?

24         THE COURT:  LET ME GO BACK.  YES, 13 THROUGH 17 IS

25  CORRECT.
```

```
1              MR. MILLER:  THOSE ARE THE ONLY TWO SUSTAINED SO

2    FAR.

3              THE COURT:  YES.  WHERE ARE WE AFTER PAGE 39,

4    MR. FAKHOURY?

5              MR. FAKHOURY:  I THINK WE FINISHED THAT ONE.  NOW

6    WE ARE ON 43, LINES 18 THROUGH 21.

7              THE COURT:  43.  WITHOUT GOING BACK AND READING THE

8    ENTIRE TRANSCRIPT, I DON'T KNOW IF IT'S ASKED OR ANSWERED OR

9    NOT.  I DON'T SEE A PROBLEM WITH -- THE HARM IN LEAVING IT

10   IN.  I WILL OVERRULE THAT ONE EVEN THOUGH HE MAY LEGALLY BE

11   CORRECT.

12             MR. FAKHOURY:  THAT'S FINE, YOUR HONOR.  PAGE 44,

13   WE BELIEVE THE BOTTOM PORTION SHOULD BE REDACTED.

14             THE COURT:  WHAT DO YOU MEAN BY THE BOTTOM PORTION?

15             MR. FAKHOURY:  LINE 17 THROUGH 25.

16             THE COURT:  YOU CONCUR WITH THAT, MR. MILLER?

17             MR. MILLER:  FROM 17, "THE INTERPRETER REQUESTS A

18   BREAK."

19             THE COURT:  THROUGH 25?

20             MR. MILLER:  YES, CONCUR.

21             THE COURT:  OKAY.

22             MR. FAKHOURY:  AND I THINK THE GOVERNMENT ON PAGE

23   47, I THINK THE GOVERNMENT WANTS TO REMOVE A PORTION THAT'S

24   IN THE RED, AND WE WOULD OBJECT TO THAT BEING EXCISED.  THAT

25   WOULD BE THE GOVERNMENT'S OBJECTION.
```

1          THE COURT:  MR. MILLER'S OBJECTION IS OVERRULED.

2     THAT CAN COME IN.

3          MR. MILLER:  THAT WITNESS WAS CONVICTED OF A DUI.

4          THE COURT:  THE FACT HE IS ON PROBATION?

5          MR. PETERSON:  PRECISELY.

6          THE COURT:  THE FACT HE IS ON PROBATION MAY GO TO

7     HIS CREDIBILITY, IT COMES IN.  WHAT HE IS ON PROBATION FOR IS

8     NOT RELEVANT.  STRIKE, "I WAS DRIVING UNDER THE INFLUENCE OF

9     ALCOHOL," THAT PART IS IRRELEVANT.

10         MR. MILLER:  THE ANSWER, "TROUBLE WITH THE LAW,

11     YES, IN FACT, PROBATION RIGHT NOW," REMAINS?

12         THE COURT:  YES.

13         MR. MILLER:  AND THEN, THE NATURE AND THE PENALTY,

14     FROM 16 TO 25?

15         THE COURT:  THAT ALL COMES OUT, WHAT HE IS ON

16     PROBATION OR WHAT THE PENALTY WAS IS NOT RELEVANT.

17         MR. MILLER:  AND CONTINUES TO PAGE 48.

18         THE COURT:  THAT'S NOT RELEVANT.  THAT DOESN'T GO

19     TO HIS CREDIBILITY, "TO TRY TO CATCH ME".  THAT HAS NOTHING

20     TO DO WITH HIS CREDIBILITY.  LINE 12 THROUGH PAGE 48 IS OUT.

21     LINES 1 THROUGH 12 ON 48 IS OUT.

22         MR. FAKHOURY:  YOUR HONOR, THE ONLY THING I WANTED

23     TO ADD TO THAT THE PROBLEM IS IF IT'S PERMISSIBLE

24     IMPEACHMENT, IMPEACH HIM WITH THE FACT HE IS ON PROBATION.

25     WE EXCISED HIS ANSWER AND THE JURY IS GOING TO BE INSTRUCTED

1    THAT THE QUESTIONS THAT THE ATTORNEY ASKS IS NOT EVIDENCE, WE

2    CERTAINLY WEREN'T TRYING TO ELICIT THAT HE HAD A CONVICTION

3    FOR DRIVING UNDER INFLUENCE, IT'S JUST THAT WAS THE ANSWER HE

4    GAVE.  IF THAT WERE TO HAPPEN AT A LIVE TRIAL, HE WOULD BE

5    STUCK WITH THE ANSWER.  THE GOVERNMENT WOULD BE STUCK WITH

6    THE ANSWER.

7              THE COURT:  AT A LIVE TRIAL, THE OBJECTION WOULD

8    HAVE BEEN SUSTAINED AND THERE WOULDN'T BE AN ANSWER.

9              MR. PETERSON:  FOR, "WHETHER ON PROBATION".

10             THE COURT:  THE ANSWER HE STARTED TO GIVE WOULD

11   HAVE BEEN OBJECTED TO AND SUSTAINED.  HE WOULDN'T HAVE BEEN

12   ALLOWED TO GIVE THAT ANSWER AT A LIVE TRIAL.

13             MR. PETERSON:  THE ONLY WAY THE ANSWER CAN STAND,

14   7, "YES".

15             THE COURT:  WHERE DOES HE SAY YES?

16             MR. FAKHOURY:  PAGE 8, LINE 7.

17             THE COURT:  THAT'S FINE.  MR. MILLER, YES, THAT CAN

18   COME IN.

19             MR. MILLER:  STRIKE IT FROM ONE TO SIX, "YES, THEY

20   REMOVED ME FROM THE COUNTRY".

21             THE COURT:  THAT ENTIRE ANSWER CAN COME IN.

22             MR. MILLER:  8 TO 12?

23             MR. FAKHOURY:  IS OUT.

24             THE COURT:  AND YOU AGREE?

25             MR. PETERSON:  YES.

```
1              THE COURT:  WHAT'S NEXT.

2              MR. FAKHOURY:  I THINK THE GOVERNMENT IS ALSO GOING

3    TO OBJECT ON PAGES 49, LINES 1 THROUGH 51.

4              MR. PETERSON:  MORE STUFF ABOUT PROBATION.

5              THE COURT:  THAT DOESN'T APPEAR TO ME TO BE

6    RELEVANT AT ALL, UNLESS YOU CAN ENLIGHTEN ME, MR. PETERSON.

7              MR. PETERSON:  FIRST OF ALL, I'D NOTE THERE WAS NO

8    OBJECTION UNTIL PAGE 50, LINE 9.  I THINK THE RULE OF

9    DEPOSITIONS, IF YOU DON'T OBJECT, IF YOU DON'T OBJECT AT THE

10   TIME, YOU'RE KIND OF STUCK WITH IT.  RAISING AN OBJECTION

11   LATE.  IF WE CAN DO THAT, WE MIGHT BE HERE ALL DAY.  IT'S

12   ABOUT HIS PROMISE TO FOLLOW THE LAW, TO THE JUDGE.  THAT'S

13   WHAT PROBATION IS, AND VIOLATING A PROMISE TO THE JUDGE GOES

14   TO CREDIBILITY.

15             THE COURT:  LET'S SEE.  YOU ARE CORRECT, THERE IS

16   NO OBJECTION AT ALL TO ANYTHING ON PAGE 49.  THAT CAN ALL

17   STAY.  AND THERE IS AN OBJECTION TO THE QUESTION STARTING ON

18   PAGE 50, LINE 5.

19             MR. PETERSON:  FRANKLY, THE REST OF IT.

20             MR. MILLER:  THEN, YOUR HONOR, I ALSO WOULD RENEW

21   MY CONTINUED OBJECTION WITH REGARD TO THE REFERENCES OF

22   CRIMINAL HISTORY AND REITERATE A MOTION TO STRIKE.  SO, AFTER

23   HE WAS GOING THROUGH THAT, I THEN INTERPOSE AN OBJECTION

24   ABOUT THAT WHOLE LINE OF QUESTIONING.

25             MR. PETERSON:  AND STARTING ON 50, LINE 5, IT DOES
```

1   GET SO CONFUSING THAT I -- IF PAGE 49 STUFF COMES IN, PAGE 50

2   IT GETS SO CONFUSING THAT I WOULD OBJECT.

3             THE COURT:  YOU AGREE TO STRIKE PAGE 50?

4             MR. PETERSON:  YES.

5             THE COURT:  AGREEABLE, MR. MILLER?

6             MR. MILLER:  YES.

7             THE COURT:  PAGE 50 IS OUT.  THAT GOES OVER INTO

8   PAGE 51, LINE 23, DO YOU WANT TO CARRY IT THAT FAR?

9             MR. PETERSON:  YES, YOUR HONOR, IT'S CONFUSING.

10            THE COURT:  ALL RIGHT.  AGREE WITH THAT,

11  MR. MILLER?

12            MR. MILLER:  STRIKE 1 THROUGH 23?

13            THE COURT:  YES.

14            MR. MILLER:  VERY WELL.

15            THE COURT:  WHAT'S THE NEXT --

16            MR. FAKHOURY:  THE GOVERNMENT HAS OBJECTIONS TO 52,

17  LINE 15, ON THROUGH 53, LINE 12.

18            THE COURT:  THE OBJECTION ON LINE 17 IS OVERRULED.

19  THE OBJECTION ON LINE 24 IS OVERRULED.  THE OBJECTION ON PAGE

20  53, LINE 3, BY MR. MILLER, IS OVERRULED.  AND ON LINE 8,

21  OBJECTION BY MR. GILMORE IS OVERRULED.  OKAY.  WHAT'S NEXT?

22  THAT ALL COMES IN.

23            MR. FAKHOURY:  YOUR HONOR, GOVERNMENT'S OBJECTIONS

24  ON PAGE 57, YOUR HONOR, LINES 2 THROUGH 5.  AND AGAIN ON --

25            THE COURT:  57.

```
1              MR. PETERSON:  I THINK MR. MILLER HAS WITHDRAWN
2    THOSE OBJECTIONS.  HE DIDN'T SEEK TO REDACT THEM.
3              THE COURT:  IS THAT CORRECT?
4              MR. MILLER:  LET ME JUST TAKE A MOMENT, YOUR HONOR.
5              THE COURT:  ALL RIGHT.
6              MR. MILLER:  I WITHDRAW THAT OBJECTION.
7              THE COURT:  YOU WITHDRAW.  WHERE DOES THAT TAKE US,
8    MR. PETERSON?
9              MR. FAKHOURY:  PAGE 75, LINES 7 THROUGH 14.
10             THE COURT:  75.
11             MR. MILLER:  I'M SORRY, WHAT LINES AGAIN?
12             MR. FAKHOURY:  LINES 7 THROUGH 14.
13             MR. MILLER:  AS BACKGROUND, YOUR HONOR.
14             THE COURT:  LINE NINE IS OVERRULED.  AND LINE 13 IS
15   OVERRULED.  THOSE OBJECTIONS ARE OVERRULED.
16             MR. FAKHOURY:  THEN AGAIN, 77 -- PAGE 77, LINES 12
17   THROUGH 15.
18             THE COURT:  LINE 15, THE OBJECTION IS OVERRULED.
19             MR. FAKHOURY:  PAGE 77, LINES 25 THROUGH UP UNTIL
20   PAGE 78, LINE 6.  BOTTOM OF THE PAGE 77 UP THROUGH THE FIRST
21   FEW LINES UP UNTIL LINE 6 OF PAGE 78.
22             THE COURT:  OBJECTION ON LINE 26, PAGE 78, IS
23   OVERRULED.  OBJECTION ON LINE FIVE IS OVERRULED.
24             MR. FAKHOURY:  PAGE 79, LINES FOUR THROUGH NINE.
25             THE COURT:  79, LINES FOUR -- OBJECTION TO LINE SIX
```

1    OVERRULED.

2          MR. FAKHOURY:  AND THEN PAGE 79, LINES 15 UP

3    THROUGH PAGE 80, LINE 7.

4          THE COURT:  PAGE 79, LINE 15, JUST A SECOND.

5          MR. MILLER:  THAT WOULD BE UP TO 80, LINE 7.

6          THE COURT:  SUSTAIN THE OBJECTION.

7          MR. MILLER:  I HAVE NO OBJECTION TO STRIKING THAT.

8          THE COURT:  LET'S START FROM PAGE 79, LINE 22 UP

9    THROUGH PAGE 80, LINE 7.  RIGHT?

10          MR. MILLER:  I WOULD RECOMMEND STRIKING FROM LINE

11    15.

12          MR. FAKHOURY:  WE HAVE NO OBJECTION.

13          MR. PETERSON:  WE HAVE NO OBJECTION TO THAT.

14          THE COURT:  PAGE 79.

15          MR. MILLER:  79, LINE 15 THROUGH 25, AND THEN ONE

16    TO 7, ON 80.

17          THE COURT:  ALL RIGHT.  THAT'S FINE.  I ASSUME YOU

18    AGREE WITH THAT, MR. PETERSON?

19          MR. PETERSON:  THAT'S FINE.

20          MR. FAKHOURY:  PAGE 80, LINES 17 THROUGH 81, LINE

21    5.

22          THE COURT:  OBJECTION TO LINE 17 IS SUSTAINED.

23          MR. MILLER:  SO, STRIKE 17.

24          THE COURT:  THROUGH 21.

25          MR. MILLER:  THROUGH 25.

```
1            THE COURT:  LET'S SEE.  THAT'S RIGHT, THROUGH 25.

2            MR. MILLER:  AND ONE THROUGH FIVE.

3            MR. PETERSON:  THAT'S JUST CHATTER.

4            THE COURT:  YEAH.  AND I THINK WE CAN STRIKE

5   MR. CARRIEDO'S COMMENTS ON THE TOP OF PAGE 81.

6            MR. FAKHOURY:  THAT'S FINE, YOUR HONOR.

7            MR. MILLER:  YES, ONE THROUGH FIVE.

8            MR. FAKHOURY:  PAGE 81, LINE 23, THROUGH PAGE 82,

9   LINE 13.

10           MR. MILLER:  I'M SORRY, UP TO WHAT LINE ON PAGE 82?

11           MR. FAKHOURY:  UP UNTIL LINE 13 OF PAGE 82.

12           THE COURT:  THE PROBLEM I HAVE, GENTLEMEN, SINCE I

13  DIDN'T HEAR THIS, I DON'T KNOW IF IT MISSTATES TESTIMONY OR

14  NOT.  I HAVE TO RELY ON YOUR HONEST RECOLLECTION, DOES IT

15  MISSTATE TESTIMONY.

16           MR. MILLER:  I DON'T AGREE WITH THAT.

17           MR. PETERSON:  YOUR HONOR, LET ME FIND THAT

18  TESTIMONY, IF I MAY.

19           MR. MILLER:  BUT THEN AGAIN, YOU KNOW, IT'S THE

20  QUESTION WITHIN THE CONTEXT OF THE ANSWER, HE TELLS HIM WHAT

21  HIS PERCEPTION WAS AT THAT TIME.

22           MR. PETERSON:  YOUR HONOR, WE WILL WITHDRAW THAT

23  OBJECTION.

24           THE COURT:  ALL RIGHT.  IT'S WITHDRAWN.  OKAY.  AND

25  WHAT'S THE NEXT ONE?
```

1          MR. PETERSON:  THAT'S THE ONLY THING WE NEED YOU TO

2     RULE ON FROM OUR SIDE.

3          MR. MILLER:  THE NEXT ONE IS PAGE 85.

4          THE COURT:  ALL RIGHT.  THIS IS ONE YOU DON'T AGREE

5     CAN COME OUT.

6          MR. PETERSON:  THAT'S CORRECT, YOUR HONOR.  IT

7     WASN'T OBJECTED TO AT THE TIME AND IT IS RELEVANT TO THIRD-

8     PARTY CULPABILITY.

9          MR. MILLER:  IT'S NOT RELEVANT TO THIRD-PARTY

10    CULPABILITY, AND IT'S FOCUSED UPON THE DEFENDANT WHO'S NO

11    LONGER IN THE CASE.  AND ALSO, THERE IS THE ARGUMENTIVE

12    PORTION ABOUT, "DO YOU PROMISE TO RETURN TO TRIAL."  SO, THAT

13    PORTION IS NO LONGER RELEVANT.  IT WAS RELEVANT.

14         MR. PETERSON:  YOUR HONOR, I BELIEVE IT'S RELEVANT

15    TO HIS CREDIBILITY.  HE PROMISED TO RETURN TO TRIAL AND HE IS

16    NOT HERE.

17         MR. MILLER:  THAT WOULD REQUIRE MR. GILMORE TO

18    TESTIFY AND HAVE EXPLANATIONS AS TO THE PROCESS OF MATERIAL

19    WITNESSES RETAINING AND HAVING ATTORNEYS APPOINTED FOR THEM,

20    STEPS THAT THE MATERIAL WITNESS ATTORNEYS GO THROUGH IN ORDER

21    TO MAINTAIN CONTACT.  CONTACT, I ISSUE SUBPOENAS TO

22    MR. GILMORE, AND HE TOOK THE STEPS TO TRY TO MAKE CONTACT

23    WITH THIS PERSON.  SO, THAT REALLY GOES INTO IMPEACHMENT ON A

24    COLLATERAL MATTER.

25         MR. PETERSON:  SO, WE CAN SEPARATE IT OUT INTO TWO

1   SEPARATE ISSUES.  THE FIRST PART IS MR. CARRIEDO'S

2   QUESTIONING ON THE FOOT GUIDE WHO HAS PLEAD GUILTY, AND I

3   WILL BE FRANK WITH MR. MILLER AND JUST GIVE AWAY OUR WHOLE

4   DEFENSE, WE ARE GOING TO SAY THAT HE WAS THE FOOT GUIDE.  HE

5   IS THE FOOT GUIDE BECAUSE HE PLEAD GUILTY TO IT.  I THINK

6   THAT THE FACT THAT THE MATERIAL WITNESS REFUSED TO IDENTIFY

7   THE FOOT GUIDE IS RELEVANT TO THAT MATERIAL WITNESS'S

8   CREDIBILITY.  HE SAYS HE CAN RECOGNIZE OUR CLIENT WAS THE

9   FOOT GUIDE.  THIS GUY WE NOW KNOW IS THE FOOT GUIDE, HE

10   DOESN'T RECOGNIZE HIM AND --

11          MR. FAKHOURY:  IF I CAN INTERJECT, YOUR HONOR,

12   THERE IS THAT JURY INSTRUCTION REGARDING A WITNESS'S

13   CREDIBILITY AND THE CREDIBILITY OF AN EYEWITNESS

14   IDENTIFICATION MADE AND THIS, I THINK, PRECISELY GOES INTO

15   SHEDDING DOUBT ON WHETHER HIS IDENTIFICATION OF MR. LEAL AS A

16   FOOT GUIDE IS A CREDIBLE ONE.

17          THE COURT:  WHAT HE SAYS, HE IS NOT 100 PERCENT

18   SURE I CAN'T SAY IT'S HIM, RIGHT?

19          MR. FAKHOURY:  EXACTLY.

20          THE COURT:  THAT CAN COME IN.  THE OBJECTION IS

21   OVERRULED.

22          MR. MILLER:  I THINK THE PARTIES ALSO AGREE TO

23   STRIKE LINES 20 TO 25, ON PAGE 85.

24          THE COURT:  IS THAT CORRECT?

25          MR. PETERSON:  THAT'S RIGHT.

```
1              MR. MILLER:  LINE 1 THROUGH 22.

2              MR. PETERSON:  THAT'S CORRECT.

3              MR. MILLER:  PAGE 86.

4              THE COURT:  JUST ONE AND TWO.

5              MR. MILLER:  ONE THROUGH 22.

6              THE COURT:  ONE THROUGH 22.  ALL RIGHT.  YOU CONCUR

7    WITH THAT, MR. PETERSON?

8              MR. PETERSON:  YES, YOUR HONOR.

9              THE COURT:  OKAY.  THAT'S THE END OF THAT

10   DEPOSITION.  THE NEXT DEPOSITION I HAVE A COPY OF IS THE ONE

11   OF GABRIEL GONZALEZ-RAMIREZ.

12             MR. FAKHOURY:  THAT'S RIGHT, YOUR HONOR.

13             MR. MILLER:  DOCKET 50-2.

14             THE COURT:  YES, IT IS.  WHERE DO WE START THERE,

15   GENTLEMEN.

16             MR. FAKHOURY:  YOUR HONOR, PAGE 16, LINES ONE

17   THROUGH EIGHT.  THE QUESTION IS ASKED ON PAGE 15, LINE 24.

18             THE COURT:  PAGE 15, OBJECTION IS OVERRULED.

19             MR. FAKHOURY:  THEN PAGE 16, LINES 16 ALL THE WAY

20   TO PAGE 17, LINE 16.

21             MR. MILLER:  I'M SORRY, 17 TO WHAT LINE?

22             MR. FAKHOURY:  I'M SORRY, PAGE 16, LINE 16, TO PAGE

23   17, LINE 16.

24             MR. MILLER:  OKAY.

25             THE COURT:  OBJECTION IS OVERRULED.
```

```
1            MR. FAKHOURY:  AND THEN PAGE 18, PRETTY MUCH THE
2     ENTIRE PAGE.
3            THE COURT:  STARTING WITH YOUR OBJECTION, LINE TWO,
4     THAT'S OVERRULED.  OBJECTION BY MR. CARRIEDO, LINE 10, BY MR.
5     FAKHOURY, ON LINE 11, ARE BOTH OVERRULED.  OBJECTION ON LINE
6     22 IS OVERRULED.
7            MR. FAKHOURY:  AND THEN PAGE 20, LINES 3 THROUGH
8     12.
9            THE COURT:  OBJECTION ON LINE FIVE IS OVERRULED.
10    WELL, LET ME SEE, HE DOESN'T KNOW THEIR NAMES.
11           MR. MILLER:  HE HAD AN IN-ROOM IDENTIFICATION, AND
12    THEN --
13           MR. FAKHOURY:  ACTUALLY, YOUR HONOR, IF YOU LOOK ON
14    PAGE 19, LINE 21 AND 22, YOU CAN SEE THAT'S WHERE HE SAYS
15    THAT HE DOESN'T KNOW THE NAMES.
16           THE COURT:  OKAY, THAT'S FINE.  AT THE TOP OF THE
17    PAGE HE IS TALKING ABOUT THE PERSON WITHOUT THE MUSTACHE.
18           MR. FAKHOURY:  EXACTLY.  THAT'S APPROPRIATE.  THAT
19    OBJECTION IS OVERRULED.  THAT'S APPROPRIATE.
20           MR. FAKHOURY:  AND THE NEXT OBJECTION IS ON PAGE
21    26, LINE 17 THROUGH 21.
22           THE COURT:  26, OBJECTION ON LINE 19 IS OVERRULED.
23           MR. FAKHOURY:  NEXT IS PAGE 31, LINE 23, ALL THE
24    WAY THROUGH 32, LINE 2.
25           THE COURT:  THAT'S JUST FOUNDATIONAL.  THE
```

1    OBJECTION ON LINE 2, PAGE 32, IS OVERRULED.

2            MR. FAKHOURY:  ON PAGE 32, LINE 16 THROUGH 22.

3            THE COURT:  THE OBJECTION TO LINE 17 IS OVERRULED.

4            MR. FAKHOURY:  NEXT IS PAGE 35, LINE -- I'M SORRY,

5    THERE IS SOME DISCUSSION ON 35 REGARDING **JENCKS**, BUT I THINK

6    WE CAN HAVE THAT -- WE CAN HAVE THAT REMOVED.  WE HAVE NO

7    OBJECTION TO THAT.

8            THE COURT:  HAVE IT REMOVED.

9            MR. FAKHOURY:  I DON'T SEE MR. MILLER HAVING AN

10   OBJECTION TO THAT.

11           MR. MILLER:  SO, STRIKE LINE 8.

12           MR. FAKHOURY:  8 THROUGH 19.

13           THE COURT:  PAGE 35?

14           MR. FAKHOURY:  YES.

15           MR. MILLER:  CORRECT.  I CONCUR.

16           THE COURT:  OKAY.

17           MR. FAKHOURY:  AGAIN, THERE IS A DISCUSSION ON PAGE

18   52 THAT WE CAN AGREE SHOULD COME OUT.

19           MR. MILLER:  I'M SORRY, YOU HAD SOMETHING DOWN FOR

20   39.

21           MR. FAKHOURY:  I REALIZED THAT WAS -- ACTUALLY

22   THERE IS NO OBJECTION BY ME IN 39.  I MISWROTE THAT.

23           MR. MILLER:  OKAY.  SO, THAT NEXT ONE IS PAGE 46.

24           THE COURT:  46 OR 52, WHERE DO YOU WANT ME TO GO?

25           MR. FAKHOURY:  ONE SECOND, YOUR HONOR.  AGAIN,

```
 1   THERE IS DISCUSSION BETWEEN THE ATTORNEYS ON PAGES 51 AND 52
 2   THAT WE CAN AGREE SHOULD COME OUT.
 3           THE COURT:  STARTING AT LINE 18, PAGE 51, IS THAT
 4   WHERE YOU WANT TO START OR FARTHER UP?
 5           MR. FAKHOURY:  FROM LINE 9, ALL THE WAY TO LINE --
 6   PAGE 52, LINE 28.
 7           MR. MILLER:  YOUR HONOR, DO YOU BELIEVE THAT THE
 8   MATERIAL WITNESS HAVING AN ATTORNEY PRESENT IN THE DEPOSITION
 9   IS RELEVANT?
10           THE COURT:  ARE YOU ASKING ME?
11           MR. MILLER:  YES.
12           THE COURT:  IT'S RELEVANT.
13           MR. FAKHOURY:  I WILL WITHDRAW THE QUESTION.  I
14   DON'T THINK THAT NEEDS TO COME IN.
15           MR. MILLER:  I WILL RECOMMEND STRIKING 7 TO 25, AND
16   THEN WHAT WAS THE NEXT --
17           MR. FAKHOURY:  THAT'S FINE.  I HAVE NO OBJECTION TO
18   SEVEN BEING STRICKEN AS WELL.
19           THE COURT:  SEVEN THROUGH 25, ON PAGE 51, IS OUT.
20   THEN THAT'S WHAT YOU ARE AGREEING TO?
21           MR. FAKHOURY:  YES.
22           THE COURT:  ALL RIGHT.  PAGE 52, LINE ONE
23   THROUGH --
24           MR. FAKHOURY:  TWENTY.
25           THE COURT:  YOU CONCUR WITH THAT, MR. MILLER?
```

1           MR. MILLER:  ONE THROUGH --

2           THE COURT:  TWENTY.

3           MR. MILLER:  YES.

4           THE COURT:  ALL RIGHT.

5           MR. FAKHOURY:  AND THEN THE GOVERNMENT HAS

6  OBJECTIONS ON PAGE 55, LINES 5 THROUGH 11.

7           THE COURT:  IT'S CUMULATIVE.  I WILL SUSTAIN THAT

8  OBJECTION.  LINES 5 THROUGH 11 COME OUT.  HE ALREADY ANSWERED

9  YES TO THE QUESTION BEFORE.  FIVE THROUGH 11 ARE OUT.

10          MR. FAKHOURY:  OKAY.  THE GOVERNMENT HAS AN

11  OBJECTION ON PAGE 56, LINE 18, THROUGH PAGE 57, LINE 13.  AND

12  AGAIN, THIS KIND OF GOES BACK TO THE OTHER MATERIAL WITNESSES

13  PROMISED TO COME BACK.  IT GOES TO HIS CREDIBILITY.

14          THE COURT:  OBJECTION IS SUSTAINED -- IS OVERRULED.

15  THAT CAN COME IN.  WHAT'S NEXT?

16          MR. FAKHOURY:  UM, THERE IS ALSO GOVERNMENT'S

17  OBJECTION ON PAGE 60, BEGINNING AT LINE 21, AND CARRYING OVER

18  UP UNTIL PAGE 62, LINE 18.  IT'S BASICALLY MR. CARRIEDO'S

19  LINE OF CROSS EXAMINATION.  AND WE THINK THIS SHOULD COME IN.

20  AGAIN, IT'S RELEVANT.  IT GOES TO THIS WITNESS'S CREDIBILITY,

21  AND HE ADMITS ON CROSS EXAMINATION THAT HE ACTUALLY DID NOT

22  SEE ANYBODY PUT BLANKETS ON THE ROAD, AND DID NOT SEE ANYBODY

23  PICK UP BLANKETS ON THE ROAD.  AND THE OTHER WITNESS SAID

24  THAT HE DID SEE SOMEBODY PUT BLANKETS ON THE ROAD.  SO, THERE

25  IS CONFLICTING ACCOUNTS OF WHAT HAPPENED.  AND THERE IS NO

1  GOVERNMENT OBJECTION.

2        THE COURT:  ALL RIGHT, LINES -- FROM LINE 20, PAGE

3  60, THROUGH LINE 18, PAGE 26, ARE ALL ADMISSIBLE.  WHAT'S

4  NEXT?

5        MR. FAKHOURY:  PAGE 63, LINES 10 THROUGH 23.

6        MR. MILLER:  OKAY.  SO, LINE 60 -- PAGE 60, LINE 20

7  TO 25, LINE 61, 1 THROUGH 25?

8        THE COURT:  THAT ALL COMES IN.

9        MR. MILLER:  OKAY.

10        THE COURT:  EVERYTHING YOU HAVE BOXED IN RED COMES

11  IN.

12        MR. MILLER:  VERY WELL.

13        THE COURT:  OKAY.

14        MR. FAKHOURY:  NEXT IS PAGE 63, LINES 10 THROUGH

15  23.

16        THE COURT:  PAGE 63.

17        MR. FAKHOURY:  WE CAN WITHDRAW, ACTUALLY, YOUR

18  HONOR.  IT'S FACTS NOT IN EVIDENCE, MISSTATES TESTIMONY.  WE

19  WILL WITHDRAW OUR OBJECTION.

20        THE COURT:  ALL RIGHT.  WHAT'S THE NEXT ONE?

21        MR. FAKHOURY:  THEN ON PAGE 65, BEGINNING AT LINE

22  24, UP THROUGH PAGE 68, THERE IS A DISCUSSION AMONGST THE

23  ATTORNEYS AND WE AGREE ALL SHOULD CAN BE EXCISED.

24        THE COURT:  24, 25 AND 65 ARE ALL OUT.  ENTIRE PAGE

25  OF 66 IS OUT, AND ENTIRE PAGE 67 IS OUT, AND 68 DOWN TO THE

1    DEPOSITION ENDING IS OUT.

2              MR. MILLER:  RECESS.

3              THE COURT:  OKAY.  IT'S JUST A RECESS.  OKAY.

4    ANYTHING FURTHER?

5              MR. FAKHOURY:  JUST ONE SECOND, YOUR HONOR.

6              THE COURT:  SURE.

7              MR. FAKHOURY:  PAGE 70, LINES 16 THROUGH 22.

8              THE COURT:  WELL, SINCE I DON'T HAVE THE VIDEO

9    STATEMENT IN FRONT OF ME, I DON'T KNOW IF HE MISSTATES IT OR

10   NOT, MR. MILLER.  YOU'RE ON TENUOUS GROUND HERE.  IF HE DOES

11   MISSTATE IT, YOU ARE CORRECT.  IF HE DOESN'T, YOU ARE IN

12   TROUBLE.  I DON'T KNOW.

13             MR. MILLER:  I BELIEVE IN THE CROSS EXAMINATION

14   THEY WENT THROUGH A SERIES OF QUESTIONS, I HAD TO GO BACK TO

15   THE CROSS EXAMINATION WHERE IN THE DEPOSITION HE SAID THAT HE

16   MET WITH ONE GUY, AND THEN LATER WAS POINTED OUT TO MR. LEAL,

17   AND THEN ASKED ON CROSS EXAMINATION, "WELL, HEY, BACK WHEN

18   YOU WERE ARRESTED IN THIS CASE, YOU TOLD THE AGENTS THAT YOU

19   MADE ARRANGEMENTS WITH MR. LEAL," IMPLYING ARRANGEMENTS WERE

20   MADE, HOW MUCH, AND HOW FAR AND WHEN.  AND YOU KNOW --

21             MR. PETERSON:  THAT WASN'T -- I CAN ASSURE YOU THAT

22   WASN'T MR. FAKHOURY'S LINE OF QUESTIONING THAT WOULD HAVE

23   BEEN INCRIMINATING.  WE WON'T HAVE SAID THAT THE MATERIAL

24   WITNESS MADE ARRANGEMENTS WITH MR. LEAL.

25             THE COURT:  IT'S YOUR CASE, MR. MILLER.  BEING

```
 1   VERY, VERY BLUNT, I HAVEN'T SEEN THE VIDEO STATEMENT YOU ARE
 2   REFERRING TO.  IF YOU ARE CONFIDENT IT'S IN THERE, I WILL
 3   OVERRULE THE OBJECTION.  IF YOU ARE NOT SURE, I WILL SUSTAIN
 4   IT.
 5           MR. MILLER:  ALL RIGHT, WELL, PAGE 39.
 6           THE COURT:  PAGE 39.
 7           MR. MILLER:  LET US TURN OUR HYMNALS TO PAGE 39.
 8           THE COURT:  OKAY.
 9           MR. MILLER:  PAGE 10 THEY SHOW, "STRIKE THAT," AND
10   THIS IS THEIR CROSS EXAMINATION.  "WHEN YOU SPOKE WITH THE
11   AGENTS, YOU NEVER TOLD THEM ABOUT A TAXI, RIGHT?  THEY NEVER
12   ASKED ME ABOUT A TAXI.  OKAY.  BUT THEY DID ASK YOU WHO MADE
13   ARRANGEMENTS WITH YOU, RIGHT?  YES.  AND YOU TESTIFIED THAT
14   YOU MADE ARRANGEMENTS WITH THE GUY IN THE TAXI, RIGHT?
15   OBJECTION, STATES INCORRECTLY THE STATEMENT TO THE AGENT.
16   YES.  (THE INTERPRETER DIDN'T GET THE OBJECTION.)  QUESTION,
17   INCORRECTLY STATES THE DEFENDANT'S STATEMENT TO THE AGENTS OR
18   THE WITNESS'S STATEMENT TO THE AGENT.  OKAY.  ASSUMES FACTS
19   NOT IN EVIDENCE.  DON'T YOU REMEMBER TELLING THE AGENTS ABOUT
20   THE TAXI?  I DON'T REMEMBER VERY WELL, BUT IT SEEMS THAT I
21   DIDN'T SAY.  AGAIN, YOU TESTIFIED TODAY THAT YOU MADE
22   ARRANGEMENTS WITH THE MAN IN THE TAXI, RIGHT?  MR. LEAL, THE
23   MAN WITH THE MUSTACHE WAS NOT THE MAN DRIVING THE TAXI,
24   RIGHT?  NO."  AND THEN, SO, THAT WAS IN REFERENCE TO THEIR
25   MAKING REFERENCE -- BACK THEN HE SAID YOU MADE ARRANGEMENTS
```

1   BUT HE DIDN'T SAY IT WAS THE GUY WITH THE TAXI.  DURING THE

2   DEPOSITION WE HAD TO VIEW HIS REPORT AND VIDEO STATEMENT

3   WHICH WAS -- LET ME SEE IF I CAN FIND WHERE THE REFERENCE

4   ENTERS IN THE CROSS EXAMINATION.  PAGE 43.

5           MR. FAKHOURY:  I THINK, YOUR HONOR --

6           MR. MILLER:  "MR. LEAL WAS THE MAN WITH THE

7   MUSTACHE, WAS IN THE TAXI, RIGHT?  NO, HE WASN'T.  HE MADE

8   ARRANGEMENTS WITH YOU, RIGHT?  NO."

9           MR. PETERSON:  THAT'S THE PROBLEM, THEN THE

10  QUESTION FLIPS THAT AND SAYS, "YOU MADE ARRANGEMENTS WITH

11  MR. LEAL?"

12          MR. MILLER:  THE QUESTION WAS, "THAT YOU SAID BACK

13  THEN."

14          THE COURT:  AGAIN, I DON'T KNOW WHAT HE ORIGINALLY

15  SAID.  IF YOU ARE CONFIDENT THAT'S WHAT HE ORIGINALLY SAID,

16  THEN MR. FAKHOURY'S OBJECTION IS OVERRULED.  IF YOU ARE NOT

17  CONFIDENT, IT'S SUSTAINED.  IT'S YOUR RECORD TO DEFEND ON

18  APPEAL.

19          MR. MILLER:  LET ME TAKE A MOMENT, YOUR HONOR.

20          THE COURT:  YEAH.

21          MR. MILLER:  NO OBJECTION TO STRIKING 6 THROUGH 22.

22          THE COURT:  PAGE 70, LINES 6 THROUGH 22 ARE

23  STRICKEN.  IS THAT IT?

24          MR. FAKHOURY:  I THINK WE ARE VERY CLOSE TO BEING

25  DONE, YOUR HONOR.

```
 1            THE COURT:  SHOULD HAVE HAD A COURT TRIAL.

 2            MR. MILLER:  PAGE 71 TO 72.

 3            MR. PETERSON:  WE WITHDRAWAL THOSE THROUGH 73.

 4            MR. MILLER:  I'M SORRY, THERE IS A GOVERNMENT

 5   OBJECTION.

 6            MR. PETERSON:  WE AGREE WITH THAT.

 7            MR. MILLER:  SO, THAT'S THE ONE THAT HAD BEEN

 8   AGREED UPON.

 9            THE COURT:  THOSE COME OUT.  OKAY.  ONE THROUGH

10   NINE, ON 72, AND LINE 25, ON 71, IS OUT.

11            MR. FAKHOURY:  YOUR HONOR, ALMOST, LAST IS ON PAGE

12   75, LINES 25, THE MATERIAL WITNESS DECIDES TO ASK A QUESTION

13   AND GIVES A BIT OF A NARRATIVE WITHOUT THERE BEING A QUESTION

14   PENDING AND IT GOES UP UNTIL PAGE 76, LINE 8, I THINK ALL OF

15   THAT SHOULD BE STRICKEN AS WELL.

16            THE COURT:  THAT'S SUSTAINED.

17            MR. MILLER:  HOLD ON.

18            THE COURT:  HANG ON JUST A MINUTE.  PAGE 75, LINE

19   25 IS STRICKEN, THROUGH PAGE 76, LINE 8, IS STRICKEN.

20            MR. FAKHOURY:  AND THEN NEXT, YOUR HONOR, ON PAGE

21   77, LINE 19, UP UNTIL PAGE 78, LINE 6.

22            THE COURT:  OBJECTION ON LINE 23 IS OVERRULED.

23   WHAT ABOUT THE BLOCKED-OFF LINE 7?

24            MR. FAKHOURY:  WE HAVE NO OBJECTION TO THAT BEING

25   STRICKEN.
```

```
 1              THE COURT:  LINE 7 THROUGH 25 ON PAGE 78 IS
 2   STRICKEN.
 3              MR. FAKHOURY:  THEN WE ALSO HAVE NO OBJECTION TO
 4   THE PORTION ON PAGE 80.
 5              THE COURT:  PAGE 80, LINES 13 THROUGH 22 IS
 6   STRICKEN.
 7              MR. FAKHOURY:  THAT SHOULD DO IT, YOUR HONOR.
 8              THE COURT:  ALL RIGHT.
 9              MR. PETERSON:  ARE WE HAVING FUN YET?
10              THE COURT:  SURE.  NO PROBLEM.  NOW, WITH REGARD TO
11   THE OTHER IN LIMINE'S, LET'S SEE, DOCKET NO. 45-8, MOTION TO
12   PRECLUDE DOCUMENTS NOT PRODUCED IN DISCOVERY, I WILL DENY
13   THAT AT THIS POINT AS MOOT.  IF SOMETHING COMES UP THAT
14   HADN'T BEEN PRODUCED, YOU HAVE TO OBJECT AT THAT TIME.  I
15   HAVE NO WAY OF KNOWING WHAT YOU HAVE.
16              MR. FAKHOURY:  VERY WELL, YOUR HONOR.
17              THE COURT:  DOCKET 45-7, THAT'S A MOTION TO
18   PRECLUDE EXPERT TESTIMONY, I ASSUME YOU DON'T PLAN TO HAVE
19   ANY EXPERT, DO YOU?
20              MR. MILLER:  NO.
21              THE COURT:  THAT'S DENIED AS MOOT.
22              DOCKET NO. 45-6 IS A MOTION TO EXCLUDE HEARSAY
23   STATEMENTS OF FINANCIAL ARRANGEMENTS.  WELL, I WOULD DEFER
24   THAT UNTIL THE TIME OF THE TRIAL.  I THINK WE JUST RULED ON
25   ALL OF THOSE.  A WITNESS CAN STATE IF THE WITNESS KNOWS WHAT
```

1    WAS GOING TO BE DONE.  WHAT THE WITNESS CAN'T DO IS STATE

2    WHAT SOMEBODY TOLD HIM SOME THIRD PARTY WAS GOING TO DO.  I

3    CAN'T RULE IN A VACUUM ON THAT.  IT HAS TO BE IN CONTEXT.  I

4    WILL DEFER THAT.  IF IT COMES UP, MR. PETERSON OR

5    MR. FAKHOURY, OBJECT AND WE WILL DEAL WITH IT AT THE TIME.

6            MR. FAKHOURY:  THANK YOU, YOUR HONOR.

7            THE COURT:  45-5 IS A MOTION TO PRECLUDE EVIDENCE

8    OF STRUCTURE.  I ASSUME THE GOVERNMENT IS NOT OFFERING

9    EVIDENCE OF STRUCTURE?

10           MR. MILLER:  NO.

11           THE COURT:  DENIED AS MOOT.  45-4 IS A MOTION TO

12   PRECLUDE STATEMENTS OF NON-TESTIFYING CO-DEFENDANTS.  THAT,

13   AGAIN, I CAN'T RULE IN A VACUUM.  IF THAT COMES UP, YOU WILL

14   JUST HAVE TO MAKE AN OBJECTION.  IF THERE IS A LEGAL BASIS

15   FOR IT, I WILL SUSTAIN IT.  IF THERE ISN'T, I WILL OVERRULE

16   IT.

17           MR. FAKHOURY:  THAT'S FINE, YOUR HONOR.  THANK YOU.

18           THE COURT:  45-3 IS A MOTION TO EXCLUDE 609

19   EVIDENCE.  DO YOU HAVE ANY SUCH EVIDENCE?

20           MR. MILLER:  NO.

21           THE COURT:  ALL RIGHT.  SO, THAT'S MOOT.  45-2 IS A

22   MOTION TO EXCLUDE EVIDENCE UNDER 404(B).  DO YOU HAVE ANY

23   404(B)?

24           MR. MILLER:  NO.

25           THE COURT:  ALL RIGHT, THAT'S MOOT.  45-1 IS A

1   MOTION TO ADMIT THE VIDEOTAPED STATEMENT OF THE MATERIAL

2   WITNESS, ANNA MARIA GARCIA-GARCIA.  THAT'S THE WITNESS THAT

3   WE ALREADY HAD THE HEARING ON WHERE MR. LEAL DID NOT OBJECT

4   TO HER BEING RELEASED.  MY TENTATIVE IS NOT TO ALLOW YOU TO

5   PUT THAT IN.  DO YOU WANT TO BE HEARD FURTHER OR DOES THE

6   GOVERNMENT WANT TO BE HEARD?

7           MR. MILLER:  NO.

8           MR. FAKHOURY:  WITH RESPECT TO THAT, THE ONLY THING

9   I WANTED TO PUT ON THE RECORD IS I THINK IN THE CONTEXT OF

10  THE PRETRIAL MOTION, I KNOW THE COURT DENIED IT, I THINK IN

11  TERMS OF WHETHER IT SHOULD COME IN AS SUBSTANTIVE EVIDENCE AT

12  TRIAL, I THINK THE STANDARD IS A LITTLE BIT LOOSER BECAUSE

13  THE RULES OF EVIDENCE IS THAT ALL RELEVANT EVIDENCE IS

14  ADMISSIBLE.  AND IT'S OUR POSITION THAT EVIDENCE OR HER

15  STATEMENT IS RELEVANT BECAUSE IT DOES TEND TO PROVE A POINT

16  AT ISSUE, WHICH IS, IT PROVES THE POINT MR. LEAL WAS NOT THE

17  GUIDE.  AND SPECIFICALLY, SHE INDICATED TO THE AGENTS THAT

18  MR. LEAL WAS NOT GUIDING ANYONE AND WAS NOT GIVING

19  INSTRUCTIONS.  AND THAT'S IN DIRECT CONTRADICTION TO WHAT THE

20  THREE MATERIAL WITNESSES THE JURY IS GOING TO HEAR FROM ARE

21  GOING TO HEAR.

22          SO, HER STATEMENT IS RELEVANT, AND SHE IS

23  UNAVAILABLE BECAUSE SHE HAS OBVIOUSLY BEEN DEPORTED TO

24  MEXICO.  WE HAVE NO WAY TO SUBPOENA HER OR SECURE HER

25  ATTENDANCE AT TRIAL.  WE DO HAVE A VIDEO RECORDING OF HER

1  STATEMENT, OTHERWISE IT WOULD BE HEARSAY, BUT I THINK I LAID

2  IT OUT IN MY PLEADINGS THAT THERE ARE A NUMBER OF HEARSAY

3  EXCEPTIONS IT FALLS UNDER.  SO, I STILL THINK IT SHOULD BE

4  ADMISSIBLE.  IT IS RELEVANT AND IT'S MATERIAL FOR MR. LEAL TO

5  PRESENT HIS DEFENSE.

6          THE COURT:  MR. MILLER.

7          MR. MILLER:  YOU REVIEWED THE TRANSCRIPT OF HER

8  STATEMENT AND EVALUATED THE WEIGHT AND RELIABILITY OF WHAT

9  SHE SAID.  SHE DID NOT SAY HE WAS NOT GUIDING.  SHE SAID, "I

10  WAS GOING WITH MY BOYFRIEND.  HE MADE ARRANGEMENTS, AND I

11  FOLLOWED ALONG WITH HIM.  MY FOCUS WAS ON MY BOYFRIEND, AND I

12  DIDN'T SEE WHAT ANYONE ELSE WAS DOING.  I WAS IN THE MIDDLE

13  OF THE PACK."  SO, THE CHARACTERIZATION OF THIS AS SHE SAID

14  HE WAS NOT GUIDING IS NOT ACCURATE.  IT'S SHE DIDN'T SEE

15  ANYTHING THAT WAS RELEVANT.  SO, IT'S THE ABSENCE OF THE

16  EVIDENCE THAT'S NOT RELEVANT TO PROVE THAT POINT.

17          MR. FAKHOURY:  YOUR HONOR, I'M SORRY TO INTERRUPT.

18  JUST TO KIND OF CLARIFY, I DISAGREE WITH THE WAY MR. MILLER

19  CHARACTERIZES IT.  IN HER STATEMENT THE AGENT ASKED HER, "WAS

20  HE IN FRONT OF THE GROUP?  WAS HE BEHIND?  DID HE GIVE

21  ORDERS?  WHAT DID HE DO?"  THE WITNESS, AND THE WITNESS

22  ANSWERS, "NO, HE DIDN'T GIVE ANSWERS."  AND THE AGENT ASKS

23  AGAIN, "PARDON ME?"  AND MS. GARCIA SAYS, "HE DID NOT GIVE

24  ORDERS.  NO?  NO.  WHO GAVE ORDERS?  I DON'T KNOW."  AS MUCH

25  AS IT WAS HER BOYFRIEND WHO MADE ARRANGEMENTS BEFORE THE

1   ACTUAL TRIP, SHE DID HAVE OBSERVATIONS DURING THE EVENT OF

2   WALKING WITH THIS LARGER GROUP.  TO THE EXTENT HER

3   OBSERVATION WAS MR. LEAL WASN'T GIVING ORDERS AND WASN'T

4   GUIDING ANYONE, THAT IS RELEVANT AND ADMISSIBLE.

5           I WANTED TO NOTE IN **SANCHEZ-LIMA** THE NINTH CIRCUIT

6   ADDRESSES THIS EXACT SITUATION IN THE SENSE OF THE VIDEO

7   TAPED STATEMENT OF THE DEPORTED MATERIAL WITNESS IN THE NINTH

8   CIRCUIT FOUND THAT THAT COULD COME IN UNDER THE RESIDUAL

9   EXCEPTION OF THE HEARSAY RULE.

10          AGAIN, AS I MENTIONED IN MY BRIEFS, THERE ARE A

11  NUMBER OF OTHER EXCEPTIONS THAT THIS FALLS UNDER, INCLUDING

12  THE FORMER TESTIMONY EXCEPTION, THE PUBLIC BUSINESS RECORDS

13  EXCEPTION, FORFEITURE BY WRONGDOING, AND IT'S A STATEMENT

14  AGAINST PENAL INTEREST.  AGAIN, YOUR HONOR, THE VIDEOTAPED

15  STATEMENT SHOULD COME IN.

16          THE COURT:  I WILL ADOPT THE RULING THAT I

17  PREVIOUSLY MADE.  I DON'T SEE THAT IT'S THAT MATERIAL.  HER

18  TESTIMONY, IN ESSENCE, HER STATEMENT, IN ESSENCE, SHE DIDN'T

19  THINK ANYBODY WAS GIVING ORDERS, WALKING IN THE MIDDLE OF A

20  GROUP AND DIDN'T KNOW ANYBODY WAS GIVING ORDERS.  SOMEHOW

21  THEY WERE JUST WALKING ALONG AND SOMEBODY HAPPENED TO GET

22  THEM IN THE RIGHT PLACE.  MOST SIGNIFICANTLY YOUR CLIENT HAD

23  AN OPPORTUNITY TO HAVE THAT WITNESS BE KEPT AND HE AGREED

24  WITH A WAIVER AND LET THE WITNESS BE RELEASED.  IF THERE IS

25  ANY ISSUE, I THINK THAT FORECLOSES IT.

```
 1            NOW, WITH REGARD TO A TIME FOR THE TRIAL, I WANTED
 2    TO TELL THE JURY WE WILL BE FINISHED BY THURSDAY, THAT SOUNDS
 3    ALL RIGHT?
 4            MR. MILLER:  BY THEN, IF NOT BEFORE.
 5            THE COURT:  OKAY.  THAT SOUNDS ALL RIGHT TO YOU?
 6            MR. FAKHOURY:  THAT SOUNDS PERFECT, YOUR HONOR.
 7            THE COURT:  MR. MILLER, I KNOW YOU ARE AWARE OF
 8    THIS, JUST SO I DON'T CATCH YOU OFF GUARD, I WILL BE ASKING
 9    YOU TO NAME YOUR POTENTIAL WITNESSES.
10            MR. MILLER:  YES.
11            THE COURT:  OBVIOUSLY I DON'T ASK YOU GENTLEMEN TO
12    DO THAT.  IF YOU WANT TO DO SOMETHING, GIVE ME A HI-SIGN, BUT
13    I CERTAINLY WOULDN'T CALL ON YOU.
14            MR. FAKHOURY:  THAT'S FINE.
15            THE COURT:  I KNOW YOU ARE BOTH AWARE OF THIS,
16    SINCE YOU HAVE TWO LAWYERS ON YOUR SIDE, ANY GIVEN WITNESS ON
17    CROSS OR DIRECT IS THE ONLY ONE WHO WILL OBJECT TO THE OTHER
18    SIDES QUESTION OF THAT WITNESS, OKAY?
19            MR. FAKHOURY:  SURE, YOUR HONOR, NO PROBLEM.
20            THE COURT:  I THINK WHAT I WILL DO BEFORE I HAVE MY
21    CLERK CALL FOR THE JURY, I WILL LET YOU GET YOUR INVESTIGATOR
22    GET HERE TO HAVE HIM DRESSED OUT.
23            MR. FAKHOURY:  WE HAVE THE CLOTHES.
24            THE COURT:  OH, OKAY.  AS SOON AS YOU GET HIM
25    DRESSED OUT, AS SOON AS YOU DO, SHE WILL CALL FOR THE PANEL.
```

1          MR. FAKHOURY:  PERFECT.

2          THE COURT:  SINCE WE ARE NOT GOING OVER THE WEEKEND

3    I WILL SELECT ONE ALTERNATE.

4          MR. FAKHOURY:  THAT'S FINE.

5          THE COURT:  OKAY.  WE ARE IN RECESS.

6               (BRIEF RECESS TAKEN.)

7          (WHEREUPON, VOIR DIRE WAS REPORTED

8                    BUT NOT TRANSCRIBED.)

9          THE COURT:  GOOD AFTERNOON, AGAIN, LADIES AND

10   GENTLEMEN.  THIS IS THE MATTER OF THE UNITED STATES VERSUS

11   JONATHAN LEAL-DEL CARMEN.  THE COURT FINDS COUNSEL ARE

12   PRESENT, MR. LEAL IS PRESENT, ALL MEMBERS OF THE JURY PANEL

13   ARE PRESENT.  BEFORE OPENING STATEMENTS, LADIES AND

14   GENTLEMEN, I THINK IT'S A GOOD IDEA FOR YOU TO HAVE IN MIND

15   THE DEFINITION OF REASONABLE DOUBT.  I WILL REPEAT THIS

16   INSTRUCTION AT THE END OF THE TRIAL, BUT IT IS PROBABLY A

17   GOOD IDEA TO HEAR IT BEFORE YOU START HEARING EVIDENCE.

18          PROOF BEYOND A REASONABLE DOUBT IS PROOF THAT

19   LEAVES YOU FIRMLY CONVINCED THE DEFENDANT IS GUILTY.

20          IT IS NOT REQUIRED THAT THE GOVERNMENT PROVE GUILT

21   BEYOND ALL POSSIBLE DOUBT.

22          REASONABLE DOUBT IS A DOUBT BASED UPON REASON AND

23   COMMON SENSE AND IS NOT BASED PURELY ON SPECULATION.  IT MAY

24   ARISE FROM A CAREFUL AND IMPARTIAL CONSIDERATION OF ALL THE

25   EVIDENCE OR FROM A LACK OF EVIDENCE.  IF AFTER A CAREFUL AND

1    IMPARTIAL CONSIDERATION OF ALL THE EVIDENCE YOU'RE NOT

2    CONVINCED BEYOND A REASONABLE DOUBT THE DEFENDANT IS GUILTY,

3    IT'S YOUR DUTY TO FIND THE DEFENDANT NOT GUILTY.  ON THE

4    OTHER HAND, IF AFTER A CAREFUL AND IMPARTIAL CONSIDERATION OF

5    ALL THE EVIDENCE YOU ARE CONVINCED BEYOND A REASONABLE DOUBT

6    THE DEFENDANT IS GUILTY, IT'S YOUR DUTY TO FIND THE DEFENDANT

7    GUILTY.

8        NOW, WITH REGARD TO THE NOTEBOOKS, I KNOW YOU FOUND

9    THEM, YOU HAVE THEM IN YOUR HANDS.  LET ME GIVE YOU THIS

10    CAUTION ABOUT THE NOTEBOOKS.  STATEMENTS OF COUNSEL DURING

11    THE TRIAL ARE NOT EVIDENCE.  SO, I ASK THAT YOU NOT TAKE

12    NOTES DURING OPENING STATEMENTS.

13        QUESTIONS THEY ASK A WITNESS ARE NOT EVIDENCE.  THE

14    QUESTION IS RELEVANT FOR YOUR CONSIDERATION ONLY IN THAT THE

15    QUESTION GIVES MEANING TO THE WITNESS'S ANSWER, BUT IT'S THE

16    WITNESS'S ANSWER THAT'S EVIDENCE.

17        LET ME READ YOU THE INSTRUCTION ON NOTEBOOKS, TOO.

18    I WILL REPEAT THIS AT THE END OF THE TRIAL, BUT IT'S JUST A

19    GOOD IDEA FOR YOU TO BE CAUTIOUS.

20        IF YOU WISH, YOU CAN TAKE NOTES TO HELP YOU

21    REMEMBER WHAT WITNESSES SAID.  IF YOU DO TAKE NOTES, KEEP

22    THEM TO YOURSELF UNTIL YOU AND YOUR FELLOW JURORS GO TO THE

23    JURY ROOM TO DECIDE THE CASE.

24        DON'T LET NOTE TAKING DISTRACT YOU SO YOU DON'T

25    HEAR OTHER WITNESSES ANSWERS.

1          WHEN YOU LEAVE THE COURTROOM, YOUR NOTES SHOULD BE

2     LEFT HERE IN THE COURTROOM.

3          WHETHER OR NOT YOU TAKE NOTES, YOU SHOULD RELY ON

4     YOUR OWN MEMORY OF WHAT WAS SAID.  NOTES ARE ONLY TO ASSIST

5     YOUR MEMORY AND YOU SHOULD NOT BE OVERLY INFLUENCED BY THE

6     TAKING OF NOTES.

7          MR. MILLER, YOU MAY OPEN.

8          MR. MILLER:  THANK YOU, YOUR HONOR.  IT WON'T DO US

9     ANY GOOD UNLESS IT WAS ON.

10         AS YOU HEARD DURING VOIR DIRE, LADIES AND

11    GENTLEMEN, THE DEFENDANT, MR. LEAL-DEL CARMEN, THE MAN SEATED

12    RIGHT HERE IN THE BLUE SHIRT, IS CHARGED WITH SIX COUNTS OF

13    SMUGGLING UNDOCUMENTED ALIENS.  THREE OF THE COUNTS BRING

14    UNDOCUMENTED ALIENS INTO THE UNITED STATES FOR COMMERCIAL

15    GAIN OR PROFIT.  FINANCIAL GAIN.  AND THE OTHER THREE ARE

16    BRINGING THE SAME THREE ALIENS TO THE UNITED STATES WITHOUT

17    HAVING PRESENTED THEM TO THE AUTHORITIES AT THE BORDER.

18         THIS IS HOW THAT MAN THERE (INDICATING) WAS CAUGHT.

19    ON MARCH 25, 2010, THE BORDER PATROL WAS SURPRISINGLY ENOUGH

20    PATROLLING THE BORDER.  IT'S AN AREA CALLED ZONE 29, AND IT

21    IS ALONG THIS STRETCH WHERE THE PACIFIC CREST TRAIL STARTS.

22    IT'S ABOUT A TWO TO THREE MILE STRETCH OF THE BORDER.  JUST

23    ALONG THE BORDER THERE IS A DIRT ROAD AND THE BORDER PATROL

24    DRIVE THEIR SUV'S UP AND DOWN THAT ROAD.  BUT BEFORE THEY

25    DRIVE UP AND DOWN THE ROAD, THE BORDER PATROL WILL DRAG THAT

1    ROAD WITH TIRES AND CHAINS IN ORDER TO OBSERVE WHETHER OR NOT

2    THERE ARE FOOTPRINTS CROSSING ACROSS THE ROAD, BECAUSE THERE

3    IS NOTHING TO THE SOUTH OF IT EXCEPT MEXICAN BORDER.

4            IN THE EVENING OF MARCH 25TH, AGENT PECHT WAS

5    DRIVING ALONG THE ROAD, AND HE SAW SIGNS OF CROSSING.  IT

6    WASN'T FOOTPRINTS, HE SAW SIGNS AS IF SOMEONE HAD TRIED TO

7    BRUSH OUT A CROSSING.  HE CALLS FOR ASSISTANCE.  AGENT GUIEB

8    RESPONDED AND THEN THEY LOOKED TO THE NORTH SIDE OF THIS DIRT

9    ROAD WHERE THEY FOUND FOOTPRINTS, WHERE THEY FOLLOWED THOSE

10   FOOTPRINTS.

11           NOW, THE FOOTPRINTS THAT THEY SAW SHOWED ABOUT A

12   GROUP OF AT LEAST SIX.  THERE WAS A LARGE GROUP OF

13   FOOTPRINTS.  AND THEY FOLLOWED THE TRAILS, AND IT FOLLOWS

14   THROUGH THE BRUSH UNTIL THE FOOTPRINTS STOPPED.  WHEN THE

15   FOOTPRINTS STOPPED, THEY THEN LOOKED FOR MORE FOOTPRINTS,

16   LOOKED AROUND, AND IN THAT AREA THEY FOUND 12 UNDOCUMENTED

17   ALIENS WHO WERE HIDING UNDER A TREE.  THEY APPREHENDED THE

18   GROUP OF UNDOCUMENTED ALIENS, AND LEARNED THAT THERE MIGHT BE

19   OTHER PEOPLE AS PART OF THIS GROUP.

20           SO, AFTER THE ALIENS WERE TRANSPORTED TO THE

21   STATION, BOTH THESE AGENTS WENT LOOKING FOR OTHER FOOTPRINTS.

22   THEY FOUND A SET, TWO SETS OF FOOTPRINTS, AND THEY WENT

23   FOLLOWING THOSE FOOTPRINTS UNTIL THEY ENDED.  THEY LOOKED

24   AROUND.  IT WAS STILL IN THE EVENING, EARLY, EARLY MORNING.

25   THEY COULD NOT FIND WHO THOSE FOOTPRINTS BELONGED TO.

1          SO, BOTH OF THE AGENTS WENT BACK ON PATROL DUTY

2     DRIVING ALONG THE DIRT ROAD.  A FEW HOURS LATER THEY RECEIVED

3     A CALL FROM THE SCOPE OPERATOR JUST LOOKING AT THE AREA AND

4     THEY RECEIVED SOME INFORMATION, AND BASED ON THAT INFORMATION

5     WENT TO THE AREA THAT WAS NICKNAMED THE CHURCH OF GOD.  THEY

6     STOPPED THEIR SUV'S AND THEY GOT OUT AND STARTED HIKING

7     THROUGH THE BRUSH TO THIS AREA CALLED THE CHURCH OF GOD,

8     UNTIL THEY CAME TO A WASH AND SAW TWO SETS OF FOOTPRINTS.

9     THE SAME TYPE OF FOOTPRINTS THAT THEY SAW EARLIER THAT HAD

10    LEFT THE GROUP OF UNDOCUMENTED ALIENS.

11         THEY STARTED FOLLOWING THOSE FOOTPRINTS.  THEY WENT

12    TO THE CHURCH OF GOD AND THEY FOUND TWO PEOPLE.  ONE OF WHOM

13    WAS MR. LEAL-DEL CAMPOS -- DEL CARMEN, EXCUSE ME.  THEY

14    APPREHENDED HIM.  WELL, IT DOESN'T END THERE.  YOU ALSO WILL

15    HEAR TESTIMONY FROM THREE OF THE PEOPLE THAT THE DEFENDANT

16    SMUGGLED.  AND TWO OF THE ALIENS THAT THE DEFENDANT GUIDED

17    INTO THE UNITED STATES TESTIFIED BY DEPOSITION, AND THERE

18    WILL BE TRANSCRIPTS, THERE WILL BE A VIDEO, AND YOU WILL HEAR

19    THEIR JOURNEY FROM THEIR HOME TOWN TO HIDING UNDER THAT

20    BRUSH.  YOU WILL ALSO HEAR LIVE TESTIMONY FROM ONE OF THE

21    UNDOCUMENTED ALIENS.

22         NOW, THE TESTIMONY -- THE TRANSCRIPTS ARE GOING TO

23    SPEAK FOR THEMSELVES, BUT ESSENTIALLY WHAT HAPPENED IS THAT

24    THESE UNDOCUMENTED ALIENS LEFT THEIR HOME TOWNS, ARRIVED IN

25    TIJUANA, AND THEN THEY MADE ARRANGEMENTS TO BE SMUGGLED INTO

1    THE UNITED STATES.  THE COSTS WERE DIFFERENT FOR DIFFERENT

2    PEOPLE.  ONE WAS JUST GOING TO LOS ANGELES.  ONE WANTED TO GO

3    FURTHER.  BUT IN THE TESTIMONY, YOU WILL HEAR THAT PART OF

4    THE ARRANGEMENTS WERE THAT TWO UNDOCUMENTED ALIENS HAD TO GO

5    TO THE BUS STATION TO MEET THE PERSON WHO WAS GOING TO GUIDE

6    THEM ACROSS INTO THE UNITED STATES.  THEY GOT TO THE BUS

7    STATION AND THEY MET MR. LEAL-DEL CARMEN.

8        THEY THEN WENT, TOOK A BUS RIDE OUT TO AN AREA

9    WHERE THEY GOT OFF AND THAT'S WHERE THEY HIKED.  THEY WAITED

10   UNTIL SUNDOWN -- ACTUALLY, THEY WAITED FOR ANOTHER GROUP TO

11   COME JOIN THEM.  AND THE DEFENDANT SAID, "WE ARE GOING TO

12   CROSS NOW," AND GUIDED WHERE THEY WERE GOING TO GO.

13       YOU WILL ALSO HEAR FROM ONE OF THE PEOPLE WHO

14   TESTIFIED IN THE DEPOSITION, "HOW DID YOU KNOW WHO TO GO WITH

15   WHEN YOU GOT TO THE BUS STATION?  WE HAD SEEN HIM BEFORE.

16   WELL, WHEN?  WELL, WHEN I MET THE GUY WHO I MADE ARRANGEMENTS

17   WITH, WHO I AGREED TO PAY THE MONEY, THAT GUY IDENTIFIED HIM

18   AS THE PERSON WHO'S GOING TO BE BRINGING US TO THE UNITED

19   STATES."

20       YOU WILL HEAR TESTIMONY ABOUT HOW THE DEFENDANT LED

21   THEM FROM THROUGH THE HINDER LANDS OF THE MEXICAN SIDE OF THE

22   BORDER.  HOW THEY GOT TO THE FENCE AT THE MEXICAN -- ON THE

23   US/MEXICAN BORDER.  HOW IT'S WIRE.  SO, THEY DIDN'T HAVE TO

24   CRAWL OVER ANYTHING.  HOW IT WAS JUST WIRE AND CAME TO THE

25   ROAD THAT WAS DRAGGED, AND YOU WILL HEAR TESTIMONY ABOUT HOW

1     THIS MAN TOOK FABRIC AND LAID IT OVER THE DIRT AND INSTRUCTED

2     THE PEOPLE TO WALK OVER IT.

3          THEN YOU WILL ALSO HEAR HOW THOSE UNDOCUMENTED

4     ALIENS CAME TO BE HIDING UNDER THAT TREE WHERE THE AGENTS

5     FOUND THEM.  AND THAT WHEN THEY WERE -- AFTER THEY CROSSED

6     THE ROAD AND HAD BEEN HIKING, THEY WERE AWARE OF THE BORDER

7     PATROL'S PRESENCE, AND THE BORDER PATROL WAS HIKING THROUGH

8     WITH FLASHLIGHTS, AND THAT THE DEFENDANT AND HIS ACCOMPLICE

9     TOLD THEM, "YOU STAY HERE AND HIDE," AND THEN LEFT THE GROUP.

10          AFTER REVIEW OF ALL THE EVIDENCE, AND THE PURPOSE

11    OF AN OPENING STATEMENT IS TO GIVE YOU A MAP, AN OVERVIEW OF

12    WHAT TO EXPECT, BECAUSE SOME OF THE EVIDENCE IS GOING TO COME

13    IN PIECEMEAL, AS YOU CAN IMAGINE, WHEN I PRESENTED

14    DELIBERATELY THE PERCEPTION OF JUST THE AGENTS, THEY DIDN'T

15    KNOW HOW THEY CAME TO BE THERE, BUT THEY KNOW THAT THEY WERE

16    THERE.

17          SO, YOU WILL HEAR THE SETTING OF THE SCENE, WHAT

18    THE AREA IS LIKE, HOW THEY CAME ACROSS THE GROUP OF ALIENS

19    THAT THIS MAN SMUGGLED, AND HOW THEY CAME ACROSS THIS MAN

20    AFTER HE SMUGGLED.  AND THEN YOU WILL HEAR MORE TESTIMONY

21    ABOUT HOW HE LED THEM FROM TIJUANA TO THE AREA IN THE

22    WILDERNESS, THROUGH THE WILDERNESS, OVER THE BORDER, ACROSS

23    THE ROAD, AND TO THE TREE WHERE THE AGENTS FOUND HIM.  AND

24    AFTER REVIEW OF ALL THE EVIDENCE, I AM GOING TO COME BACK TO

25    YOU AND ASK YOU TO FIND THE DEFENDANT GUILTY ON ALL SIX

1  COUNTS.  THANK YOU.

2         THE COURT:  THANK YOU, MR. MILLER.  MR. PETERSON.

3         MR. PETERSON:  THANK YOU, YOUR HONOR.

4         JONATHAN LEAL-DEL CARMEN WAS, AS I INDICATED IN

5  VOIR DIRE, ONE OF 14 PEOPLE WHO CROSSED ILLEGALLY INTO THE

6  UNITED STATES ON MARCH 25TH.  THERE IS NO DISPUTE ABOUT THAT.

7  BUT HE WAS ONE OF THE 12 PEOPLE WHO WERE BEING SMUGGLED IN,

8  NOT ONE OF THE TWO FOOT GUIDES.  AND BECAUSE HE, LIKE 11

9  OTHERS, WAS SIMPLY SOMEONE SEEKING ENTRY INTO THE UNITED

10  STATES TO WORK, AND BECAUSE HE DIDN'T SMUGGLE ANYONE, HE IS

11  NOT GUILTY ON ALL SIX COUNTS.

12         NOW, THE JOURNEY THAT LANDED MR. LEAL-DEL CARMEN

13  RIGHT THERE IN THAT CHAIR, IT WASN'T A PLEASANT ONE.  IT

14  STARTED, AS MR. MILLER INDICATED, BACK IN TIJUANA AT THE TIME

15  GROUPS OF PEOPLE WERE GETTING TOGETHER.  BUT LEAVING THAT

16  ASIDE, THE GROUP THAT HE WAS A PART OF WALKED FOR ALMOST AN

17  ENTIRE DAY IN MEXICO BEFORE THEY GOT TO THE UNITED STATES.

18  THEY WALKED BY NIGHT AND TRIED TO EITHER SLEEP OR REST DURING

19  THE DAY.  THEY EACH BROUGHT THEIR OWN FOOD AND WATER, SO THEY

20  HAD FOOD AND WATER, BUT NOT A LOT.  THEY WALKED IN GROUPS.

21  THEY STOPPED WHEN THEY WERE TOLD TO STOP BY THE FOOT GUIDES.

22  AND MR. LEAL-DEL CARMEN STOPPED WHEN HE WAS TOLD TO STOP.  HE

23  SLEPT WHEN HE WAS TOLD TO SLEEP, LIKE 11 OTHER PEOPLE.  THAT

24  PART IS PRETTY STRAIGHT FORWARD.  A LONG ARDUOUS JOURNEY TO

25  THE -- EVEN TO JUST GET TO THE BORDER.

1          AND AS YOU HEARD, THEY MADE IT TO THE BORDER AND

2     THEY MADE IT ABOUT 20 YARDS PAST WHEN BORDER PATROL REALIZED

3     SOMETHING WAS UP.  THEY MADE IT ABOUT 200 YARDS INTO THE

4     UNITED STATES WHEN THEY HEARD AND SAW THE LIGHTS OF BORDER

5     PATROL 200 YARDS IN.  IT WAS OVER, AND EVERYONE KNEW IT.  AND

6     THE 12 PEOPLE WHO WERE BEING SMUGGLED ALL HAD DIFFERENT

7     REACTIONS.  SOME OF THEM FROZE.  SOME OF THEM TRIED TO HIDE.

8     AND MR. LEAL-DEL CARMEN, HE RAN.  HE RAN NORTH FURTHER INTO

9     THE UNITED STATES AND NOT BACK TO MEXICO.  THE REASON HE RAN

10    NORTH WAS BECAUSE HE WAS FOLLOWING THE FOOT GUIDE, DOMINGO

11    GOMEZ-AGUILAR.  AND YOU WILL HAVE NO DOUBT AT THE END OF THIS

12    CASE THAT DOMINGO GOMEZ-AGUILAR WAS A FOOT GUIDE.

13          HE ADMITTED, HE PLEAD GUILTY IN FRONT OF A JUDGE

14    AND SAID THAT HE WAS THE ALIEN SMUGGLER AND HE SAID THAT HE

15    HAD AN ACCOMPLICE.  HE DID NOT SAY THAT THAT ACCOMPLICE WAS

16    JONATHAN LEAL-DEL CARMEN.  HE COULDN'T IDENTIFY MR. LEAL-DEL

17    CARMEN AS HIS ACCOMPLICE BECAUSE MR. LEAL-DEL CARMEN WASN'T

18    HIS ACCOMPLICE.  HE WAS JUST THE ONE WHO RAN, AND THAT'S HOW

19    HE GOT HERE.

20          SO, THIS EVIDENCE, THE DEPOSITION EVIDENCE THAT THE

21    GOVERNMENT SAYS PROVES ITS CASE BEYOND A REASONABLE DOUBT,

22    THAT OVERCOMES THE PRESUMPTION THAT MR. LEAL-DEL CARMEN WAS

23    NOT THE SECOND GUIDE.  AS MR. MILLER TOLD YOU, TWO OF THE 12

24    PEOPLE WHO WERE ARRESTED IDENTIFIED MR. LEAL-DEL CARMEN AS

25    THE SECOND FOOT GUIDE.  THEY DID.  THOSE TWO PEOPLE WERE

1    MAURO RAMIREZ AND GABRIEL GONZALEZ.  IT WAS ABOUT FIVE MONTHS

2    AGO, THEY WERE CALLED AS WITNESSES IN A DEPOSITION, BY THE

3    GOVERNMENT.  IN EXCHANGE FOR THEIR TESTIMONY THEY WERE

4    RELEASED BACK TO MEXICO, AND THEY IDENTIFIED MR. LEAL AS THE

5    SECOND FOOT GUIDE.

6         BUT THEY BOLDLY DENIED THAT DOMINGO GOMEZ-AGUILAR,

7    WHO YOU WILL FIND WAS AN ADMITTED FOOT GUIDE, WAS A FOOT

8    GUIDE.  HE WAS THERE IN THE ROOM WITH THEM AND THEY DID THEIR

9    BEST TO AVOID IDENTIFYING HIM.  THEY DID THEIR BEST TO AVOID

10   IDENTIFYING THE FOOT GUIDE, DOMINGO GOMEZ-AGUILAR BECAUSE

11   THEY WERE AFRAID OF HIM.  BUT THEY WEREN'T AFRAID OF MR. DEL

12   CARMEN BECAUSE HE IS NOT AN ALIEN SMUGGLER.

13        NOW, YOU WILL ALSO HEAR THEY IDENTIFIED

14   MR. LEAL-DEL CARMEN AS THE SECOND FOOT GUIDE BECAUSE THEY

15   WERE AFRAID OF BORDER PATROL.  THEY WERE AFRAID OF JAIL.

16        SO, INSTEAD OF IDENTIFYING THE PERSON WHO WAS THE

17   SECOND FOOT GUIDE, WHEN MR. MILLER ASKED HIM WHO THE SECOND

18   FOOT GUIDE WAS, THEY SAID IT WAS A MR. DEL CARMEN.  HE WAS

19   CONVENIENT.  HE WAS THERE.  HE WAS THE ONE WHO RAN.  THEY

20   CHOSE HIM EVEN THOUGH HE IS INNOCENT.

21        NOW, THE BASIC QUESTION HOW THEY WERE ABLE TO

22   IDENTIFY MR. LEAL-DEL CARMEN EIGHT MONTHS LATER?  THAT'S

23   SIMPLE.  HE WALKED FOR A DAY WITH THEM WHEN THEY WALKED.  HE

24   STOPPED WHEN THEY STOPPED.  HE TRIED TO SLEEP WHEN THEY TRIED

25   TO SLEEP.  OF COURSE THEY WERE ABLE TO IDENTIFY HIM.  HE IS

1   DISTINCTIVE LOOKING.  THAT PART IS EASY.  WHAT IS THE

2   EVIDENCE OF WHAT THEY SAY THAT HE DID?

3            ACTUALLY, WHEN YOU WATCH THE DEPOSITIONS, THEY ARE

4   QUITE LENGTHY, AND A LOT OF WHAT THEY HAVE TO SAY IS HE IS

5   THE GUIDE.  HE'S THE GUIDE.  THEY USE THOSE WORDS, AND THEY

6   ANSWER THAT QUESTION.  BUT MOST OF THEIR TESTIMONY ACTUALLY

7   INVOLVES HIM SAYING, AT THAT TIME, HE DID NOTHING.  AT THAT

8   TIME, HE SAID NOTHING.  THEY SAID HE DID NOT MAKE

9   ARRANGEMENTS WITH MR. LEAL.  THAT HE DIDN'T IDENTIFY HIMSELF

10  AS AN ALIEN SMUGGLER AT ANY TIME.

11           THEN, AT POINTS IN THE DEPOSITION, AS MR. MILLER

12  SAID, THE DEPOSITION WILL SPEAK FOR ITSELF, THEY FOLLOW

13  MR. MILLER'S PROMPTS AND THEY SAY HE WAS THE GUIDE.  WHEN YOU

14  HEAR THE DETAILS, YOU WON'T BELIEVE THEM.  YOU ARE HERE TO

15  JUDGE THE CREDIBILITY OF THESE TWO WITNESSES AND THE OTHER

16  WITNESSES THAT TAKE THE STAND.  WHEN THEY MADE THINGS UP

17  ABOUT MR. LEAL, THEY WERE INCONSISTENT.  THEY CLAIM THE

18  SECOND GUIDE HAD A CELL PHONE.  MR. LEAL HAD NO CELL PHONE.

19  ONE CLAIMED THAT MR. LEAL LAID DOWN THOSE BLANKETS TO AVOID

20  SETTING FOOTPRINTS.  THE OTHERS NOT SO.  ONE OF THEM BACK ON

21  THE DAY OF HIS ARREST WHEN HE SPOKE WITH THE BORDER PATROL

22  SAID MR. LEAL GAVE NO ORDERS, AND THEN, HE CHANGED HIS STORY.

23           NOW, THE IDENTIFICATION OF MR. LEAL BACK IN

24  TIJUANA, YOU WILL SEE IT'S NOT SO SIMPLE.  YOU WILL SEE THAT

25  THAT INDIVIDUAL CHANGES HIS STORY, AND HE ADDS THINGS AND WE

1    LEAVE THAT TO YOU TO DECIDE WHAT THE EVIDENCE SHOWS.  BUT

2    KEEP IN MIND THAT THE STORIES AREN'T JUST INCONSISTENT.  THE

3    STORIES ARE NOT TRUE, BECAUSE WHEN THEY SAT IN THE ROOM WITH

4    SOMEONE WHO ADMITTED HE WAS AN ALIEN SMUGGLER, THEY DID THEIR

5    BEST TO AVOID IDENTIFYING HIM.  THEY CLAIM THEY COULDN'T

6    RECOGNIZE HIM.  AND THOSE TWO WITNESSES IN THAT DEPOSITION

7    TESTIMONY WILL BE MOST OF THE GOVERNMENT'S CASE BESIDES THE

8    SCENE SETTING AND A LITTLE DESCRIPTION AS A PRECURSOR.

9            THE THIRD WITNESS THAT THEY KEPT WE WILL SEE WHAT

10   HE SAYS.  THERE WERE NINE OTHER WITNESSES THAT NIGHT THAT YOU

11   WON'T BE HEARING FROM.  NINE PEOPLE ARRESTED IN THE GROUP

12   WERE DEPORTED BACK TO MEXICO ON THAT SAME NIGHT.  WHEN THERE

13   ARE INCONSISTENCIES, KEEP IN MIND THOSE NINE OTHER WITNESSES.

14   THEY WON'T BE HERE TO ANSWER YOUR QUESTIONS, AND YOU WILL

15   HEAR NO EVIDENCE THAT ANY OF THOSE NINE PEOPLE EVER

16   IDENTIFIED MR. LEAL AS THE SECOND FOOT GUIDE.

17           THE GOVERNMENT KEPT ONLY THREE WITNESSES.  IT WILL

18   BE FOR YOU TO DECIDE HOW CREDIBLE THOSE THREE WITNESSES ARE.

19   BECAUSE WHEN YOU HAVE HEARD THE EVIDENCE, YOU WILL SEE, LIKE

20   THE 11 OTHER PEOPLE TRYING TO BE SMUGGLED ACROSS THE BORDER,

21   AND THIS IS MY FEAR IN THE CASE, THEY TALKED ABOUT IT IN VOIR

22   DIRE, MR. LEAL CAME TO THE UNITED STATES FOR A BETTER LIFE.

23   WHEN HE DID THAT, IT WAS ILLEGAL.  IT WAS WRONG.  THAT'S NOT

24   WHAT YOU ARE HERE TO JUDGE.  THAT'S NOT WHAT THIS CASE IS

25   ABOUT.  THE CASE IS ABOUT ALIEN SMUGGLING, AND SOMEONE WHO

```
1    BREAKS THE LAW, EVEN SOMEONE WHO BREAKS THE LAW STILL

2    SHOULDN'T HAVE TO ANSWER FOR A CRIME THEY DIDN'T COMMIT.

3    JONATHAN LEAL-DEL CARMEN IS NOT AN ALIEN SMUGGLER.  HE IS NOT

4    GUILTY.

5              THE COURT:  THANK YOU, MR. PETERSON.

6              MR. PETERSON:  THANK YOU, YOUR HONOR.

7              THE COURT:  MR. MILLER, DO YOU HAVE A WITNESS OR DO

8    YOU WANT TO RECESS UNTIL THE MORNING?

9              MR. MILLER:  I WOULD LIKE TO RECESS UNTIL THE

10   MORNING, IF I MAY.

11             THE COURT:  YOUR CALL.

12             MR. MILLER:  IF WE MAY RECESS UNTIL THE MORNING.

13             THE COURT:  OKAY.  LADIES AND GENTLEMEN, TOMORROW

14   MORNING AT 9:00 O'CLOCK I HAVE ANOTHER SHORT MATTER, IT WILL

15   ONLY TAKE ME ABOUT 15 MINUTES.  JUST FOR TOMORROW, I WILL

16   BRING YOU BACK AT 9:15.  I DON'T WANT TO KEEP YOU WAITING IN

17   THE HALL WHILE I DO THE OTHER STUFF.  SEE YOU AT 9:15

18   TOMORROW MORNING.  REMEMBER THE ADMONITIONS.  HAVE A NICE

19   EVENING.  DRIVE SAFE.  SEE YOU AT 9:15 TOMORROW.  WE ARE IN

20   RECESS.

21                  (WHICH WERE ALL THE PROCEEDINGS

22                   HELD IN THE ABOVE-ENTITLED CAUSE.)

23

24

25
```

CERTIFICATE OF REPORTER

COUNTY OF SAN DIEGO        )

                          )  SS.

STATE OF CALIFORNIA        )


I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, DO HEREBY

CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING

PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH;

THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY

MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER

CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

STENOGRAPHIC NOTES.



DATE:  5-2-11


S:/MELISSA A. PIERSON

MELISSA A. PIERSON, CSR 12499 RPR

FEDERAL OFFICIAL COURT REPORTER