1          UNITED STATES OF AMERICA
           UNITED STATES DISTRICT COURT
2          SOUTHERN DISTRICT OF CALIFORNIA

3                      - - -

4          HONORABLE THOMAS J. WHELAN
           UNITED STATES DISTRICT JUDGE PRESIDING
5                      - - -

6    UNITED STATES OF AMERICA,    )
                                  )
7          PLAINTIFF,             )
                                  )
8    VS.                          ) NO. 10CR1372W
                                  )
9    JONATHAN LEAL-DEL CARMEN,    )
                                  )
10        DEFENDANT.              )
     _____)
11

12
                    **JURY TRIAL - DAY THREE**
13          REPORTER'S TRANSCRIPT OF PROCEEDINGS
                    **NOVEMBER 18, 2010**
14              SAN DIEGO, CALIFORNIA

15

16
           MELISSA A. PIERSON, CSR 12499, RPR
17          FEDERAL OFFICIAL COURT REPORTER
             940 FRONT STREET, ROOM 3155
18          SAN DIEGO, CALIFORNIA 92101
                 PH:  (619)702-7508
19          PIERSON1121@SBCGLOBAL.NET

20

21

22

23

24

25

```
 1   APPEARANCES OF COUNSEL:

 2   ON BEHALF OF PLAINTIFF:
             LAURA E. DUFFY
 3           UNITED STATES ATTORNEY
             BY:  MR. STEPHEN MILLER, ESQ.
 4           ASSISTANT UNITED STATES ATTORNEYS
             880 FRONT STREET
 5           FIFTH FLOOR
             SAN DIEGO, CA 92101
 6

 7   ON BEHALF OF DEFENDANT:
             FEDERAL DEFENDERS OF SAN DIEGO
 8           BY:  MR. HANNI M. FAKHOURY, ESQ.
             BY:  MR. DAVID M.C. PETERSON, ESQ.
 9           225 W. BROADWAY
             ST. 900
10           SAN DIEGO, CA 92101
             (619) 234-8467
11
```

12   **WITNESS:**

13   **CON'T. MAURO RAMIREZ-JARQUIN**

14       (VIDEOTAPED DEPOSITION.)

15

16   **GABRIEL GONZALEZ-RAMIREZ**

17       (VIDEOTAPED DEPOSITION.)

18

19

20                          **EXHIBITS**                    **ADM**

21

22   DEFENDANT'S EXHIBIT A                          172

23

24

25

```
1              MADAM CLERK:  10CR1372, UNITED STATES OF AMERICA

2   VERSUS JONATHAN LEAL-DEL CARMEN.

3              THE COURT:  GOOD MORNING, LADIES AND GENTLEMEN.

4              THE JURY:  GOOD MORNING.

5              THE COURT:  THIS IS THE MATTER OF THE UNITED STATES

6   VERSUS JONATHAN LEAL-DEL CARMEN.  THE COURT FINDS THE UNITED

7   STATES -- ALL COUNSEL ARE PRESENT, THE DEFENDANT IS PRESENT,

8   ALL MEMBERS OF THE JURY PANEL ARE PRESENT.

9              MR. MILLER, YOU MAY PROCEED.  I THINK YOU'RE AT

10  ABOUT PAGE 70, LINE 2.

11             MR. MILLER:  MAY I HAVE THAT PANEL OF LIGHTS TURNED

12  OFF?  WE WILL BEGIN PLAY.

13                    (VIDEOTAPE PLAYING.)

14             MR. MILLER:  THE BALANCE OF THE TRANSCRIPT IS

15  OMITTED.  SO, THAT IS IT.

16             THE COURT:  FOLKS, IF YOU WOULD PASS ALL THOSE DOWN

17  TO ONE END.  MR. MILLER, IF YOU WOULD PICK UP THE

18  TRANSCRIPTS, PLEASE?

19             MR. MILLER:  YES.  I'M NOW DISTRIBUTING THE

20  TRANSCRIPTS FOR THE SECOND DEPOSITION.

21             THE COURT:  FOR THE RECORD, WOULD YOU GIVE THE NAME

22  OF THAT WITNESS?

23             MR. MILLER:  THAT WOULD BE GABRIEL GONZALEZ-

24  RAMIREZ.

25             THE COURT:  AND THAT WOULD BE MARKED AS
```

```
 1    GOVERNMENT'S 3?
 2            MR. MILLER:  YES, AND I HAVE A TRANSCRIPT FOR THE
 3    COURT AND THE INTERPRETER.
 4            THE COURT:  JUST FOR THE RECORD, ANY OBJECTION TO
 5    THREE BEING RECEIVED?
 6            MR. FAKHOURY:  NO, YOUR HONOR.
 7            THE COURT:  THREE IS RECEIVED.
 8                (GOVERNMENT'S EXHIBIT NO. 3
 9                 ADMITTED INTO EVIDENCE.)
10            THE COURT:  AGAIN, LADIES AND GENTLEMEN, I AM NOT
11    GOING TO REPEAT THE ADMONITIONS I GAVE YOU BEFORE, BUT JUST
12    KEEP THAT IN MIND.
13            ADDITIONALLY, WHEN A PERSON IS UNAVAILABLE TO
14    TESTIFY AT TRIAL, THE SWORN TESTIMONY OF THAT PERSON, OF
15    COURSE, MAY BE USED.  THE WITNESS, AS YOU ARE AWARE, IS
16    PLACED UNDER OATH TO TELL THE TRUTH AND LAWYERS FOR EACH
17    PARTY ARE ASKING QUESTIONS.  THE TESTIMONY IS ENTITLED TO THE
18    SAME CONSIDERATION AND SHOULD BE JUDGED BY YOU INSOFAR AS
19    POSSIBLE, JUST AS IF THE WITNESS HAD BEEN HERE PRESENT TO
20    TESTIFY.  SO, THAT'S WHY WE HAVE THE VIDEO OF IT SO YOU HAVE
21    AN OPPORTUNITY TO OBSERVE THE DEMEANOR DURING THE COURSE OF
22    THE TESTIMONY.
23            BEGIN WHENEVER YOU ARE READY, MR. MILLER.
24            MR. MILLER:  IF I MAY TAKE A MOMENT TO BOOT IT UP
25    AND THEN TO QUE IT UP.
```

1        THE COURT:  OKAY.

2        MR. MILLER:  I'M BEGINNING THE DEPOSITION NOW.

3            (VIDEOTAPED DEPOSITION PLAYING.)

4        THE COURT:  MR. MILLER, LET'S TAKE OUR MORNING

5    RECESS AT THIS TIME.

6        LADIES AND GENTLEMEN, WE WILL TAKE OUR MORNING

7    RECESS.  WE WILL BE IN RECESS FOR 15 MINUTES.  PLEASE

8    REMEMBER THE ADMONITIONS, DON'T DISCUSS THE MATTER AMONG

9    YOURSELVES OR ALLOW ANYBODY TO DISCUSS IT WITH YOU, OR FORM

10   OR EXPRESS ANY OPINIONS UNTIL WE FINALLY SUBMIT IT TO YOU.

11   SEE YOU IN 15 MINUTES.

12            (MORNING RECESS TAKEN.)

13            (JURY ENTERS COURTROOM.)

14       THE COURT:  GOOD MORNING, AGAIN, LADIES AND

15   GENTLEMEN.  THIS IS THE MATTER OF THE UNITED STATES VERSUS

16   JONATHAN LEAL-DEL CARMEN.  THE COURT FINDS COUNSEL ARE

17   PRESENT, MR. LEAL IS PRESENT, ALL MEMBERS OF THE JURY PANEL

18   ARE PRESENT.  MR. MILLER, YOU MAY PROCEED.  FOR THE JURORS, I

19   BELIEVE WE ARE AT PAGE 27, LINE 3.

20            (VIDEOTAPED DEPOSITION PLAYING.)

21       MR. MILLER:  MY APOLOGIES.

22       THE COURT:  MR. MILLER, WE WILL TAKE OUR LUNCH

23   RECESS AT THIS TIME.  LADIES AND GENTLEMEN, WE WILL TAKE THE

24   NOON RECESS.  WE WILL BE IN RECESS UNTIL 1:00 O'CLOCK.  HAVE

25   A NICE RECESS.  SEE YOU AT 1:00 O'CLOCK.

```
1                      (NOON RECESS TAKEN.)

2                   (JURY ENTERS COURTROOM.)

3            THE COURT:  GOOD AFTERNOON, LADIES AND GENTLEMEN.

4    THIS IS THE MATTER OF THE UNITED STATES VERSUS JONATHAN

5    LEAL-DEL CARMEN.  THE COURT FINDS COUNSEL ARE PRESENT,

6    MR. LEAL IS PRESENT, ALL MEMBERS OF THE JURY PANEL ARE

7    PRESENT.  MR. MILLER, YOU MAY PROCEED.  FOR THE JURORS, I

8    BELIEVE WE ARE STARTING AT THE TOP OF PAGE 69, OF THE

9    TRANSCRIPT.

10           MR. MILLER:  CORRECT, I'M STARTING THE VIDEO NOW.

11               (VIDEOTAPED DEPOSITION PLAYING.)

12           THE COURT:  PASS THEM DOWN TO THE END, PLEASE.

13           MR. MILLER:  WE MARKED -- DESIGNATED EACH OF THE

14   DVD'S AS GOVERNMENT'S EXHIBITS 2 AND 3.  I DON'T KNOW IF THE

15   COURT WISHES FOR ME TO OFFER THEM INTO EVIDENCE.

16           THE COURT:  I ALREADY RECEIVED 2 AND 3 INTO

17   EVIDENCE.

18           MR. MILLER:  WITH THAT, THEN, THE GOVERNMENT RESTS.

19           THE COURT:  DEFENSE?

20           MR. FAKHOURY:  YOUR HONOR, WE DO HAVE A MOTION WE

21   WANT TO MAKE.  WE ALSO HAVE ONE MATTER WE SHOULD TAKE UP AT

22   SIDEBAR OR OUTSIDE THE PRESENCE OF THE JURY.

23           THE COURT:  LET'S DO IT SIDEBAR.

24           MR. FAKHOURY:  SURE.

25                   (SIDEBAR HEARING HELD.)
```

1          MR. FAKHOURY:  FIRST OF ALL, WE MAKE A MOTION UNDER

2    RULE 29 AS TO EACH AND EVERY ELEMENT, UNLESS THE COURT WANTS

3    TO HEAR ANY FURTHER ARGUMENT ON THAT?

4          THE COURT:  SUBMIT.  DOES THE GOVERNMENT WANT TO BE

5    HEARD?

6          MR. MILLER:  SUBMIT.

7          THE COURT:  RULE 29 IS DENIED.

8          MR. FAKHOURY:  THE SECOND ISSUE IS --

9          MR. PETERSON:  WE DON'T HAVE ANY WITNESSES WE

10   INTEND TO CALL, BUT WE DO WANT TO OFFER DOMINGO

11   GOMEZ-AGUILAR'S PLEA AGREEMENT.

12         THE COURT:  HIS WHOLE PLEA AGREEMENT?

13         MR. PETERSON:  WE CAN COME UP WITH AN AGREEMENT AS

14   TO WHAT TO REDACT.  IF YOU WANT TO GIVE US TEN MINUTES WITH

15   MR. MILLER, WE CAN REDACT IT.  IT IS ALL A STATEMENT AGAINST

16   PENAL INTEREST BY HIM.

17         THE COURT:  I ASSUME YOU JUST WANT HIS FACTUAL

18   BASIS?

19         MR. PETERSON:  THE FACTUAL BASIS IS A CRITICAL

20   PART, AND INVOLUNTARY UNDER OATH, THOSE TYPES OF THINGS.  I

21   THINK WE CAN COME UP WITH AN AGREEMENT.

22         THE COURT:  OKAY.

23         MR. FAKHOURY:  OBVIOUSLY WE DON'T HAVE ANY

24   OBJECTION TO HAVING THE PENALTIES REVISION REDACTED OR

25   GUIDELINES CALCULATIONS REDACTED.

```
1              THE COURT:  THIS WILL BE THE EXTENT OF YOUR DEFENSE

2    CASE?

3              MR. FAKHOURY:  THAT'S IT.

4              THE COURT:  WHY DON'T WE DO IT THIS WAY, EXCUSE

5    THEM FOR, I WILL SAY, ABOUT 20 MINUTES.  YOU GUYS CAN DO

6    THIS.  MAYBE MAKE A RUN THROUGH JURY INSTRUCTIONS AND GO

7    RIGHT INTO ARGUMENT.

8              MR. FAKHOURY:  THAT'S FINE.

9              MR. MILLER:  THIS IS MY COPY?

10             MR. FAKHOURY:  YEAH, WE HAVE A COUPLE.  THESE ARE

11   CERTIFIED WITH THE CLERK'S STAMP ON THEM.

12             MR. PETERSON:  THEY ARE SELF-AUTHENTICATING.

13             THE COURT:  THAT'S NOT GOING TO BE AN ISSUE.  THE

14   QUESTION IS BRINGING THE WHOLE THING IN.

15             MR. PETERSON:  PARTICULARLY THE PENALTIES AND

16   GUIDELINES ARE THE PROBLEM.

17             MR. FAKHOURY:  WE CAN REDACT, THAT'S FINE.

18             THE COURT:  THAT'S FINE.

19                  (BACK BEFORE THE JURY.)

20             THE COURT:  LADIES AND GENTLEMEN, I WILL GIVE YOU

21   AN EARLY RECESS THIS AFTERNOON.  NOT FOR THE DAY.  THERE ARE

22   SOME LEGAL MATTERS I HAVE TO TAKE UP WITH THEM THAT'S

23   PROBABLY GOING TO TAKE 20 MINUTES, AND THEN, WE WILL FINISH

24   THE TRIAL, HAVE ARGUMENT, AND WE WILL GET IT TO YOU FOR

25   DECISION.  SO, IF YOU COULD, LET'S SEE, I HAVE ROUGHLY 1:33.
```

1   ABOUT FIVE TO 2:00, IF YOU CAN BE BACK OUT FRONT, I WILL DO

2   MY BEST TO BE READY TO GO BY THEN.  PLEASE REMEMBER THE

3   ADMONITIONS.  WE WILL SEE YOU IN ABOUT 20 MINUTES.

4               (JURY EXITS COURTROOM.)

5       THE COURT:  THIS IS THE MATTER OF THE UNITED STATES

6   VERSUS JONATHAN LEAL-DEL CARMEN.  THE COURT FINDS COUNSEL ARE

7   PRESENT, MR. LEAL IS PRESENT.  THERE ARE NO MEMBERS OF THE

8   JURY PANEL PRESENT.  WE ARE IN SESSION OUTSIDE THE PRESENCE

9   OF THE JURY TO MAKE A RECORD WITH REGARD TO JURY

10  INSTRUCTIONS.

11      IN THAT REGARD, THE RECORD CAN REFLECT THAT COUNSEL

12  AND COURT HAVE MET TO REVIEW JURY INSTRUCTIONS.

13      WITH REGARD TO THE INSTRUCTIONS I INTEND TO GIVE,

14  IT'S MY BELIEF THAT NEITHER PARTY OBJECTS TO THE INSTRUCTIONS

15  I'M GOING TO GIVE, IS THAT ACCURATE FROM THE GOVERNMENT'S

16  STANDPOINT?

17      MR. MILLER:  YES.

18      THE COURT:  ACCURATE FROM THE DEFENSE'S STANDPOINT?

19      MR. FAKHOURY:  YES, YOUR HONOR.

20      THE COURT:  WITH REGARD TO THE INSTRUCTIONS I'M NOT

21  GOING TO GIVE, DEFENSE HAS WITHDRAWN SEVERAL OF THE

22  INSTRUCTIONS THAT THEY TENTATIVELY HAD TENDERED TO THE COURT,

23  INCLUDING THEIR REQUEST FOR LAO INSTRUCTION, THE REQUEST FOR

24  A DISCRETIONARY DEFINITION OF KNOWINGLY INSTRUCTION.  THE

25  ONLY DEFENSE INSTRUCTION THAT THEY HAVE REQUESTED, THAT I AM

1    NOT GOING TO GIVE, IS THE NINTH CIRCUIT JURY INSTRUCTION WITH

2    REGARD TO EYEWITNESS IDENTIFICATION.  MY REASON FOR NOT

3    GIVING THAT IS THAT I FIND THAT IN THIS PARTICULAR CASE TO BE

4    CUMULATIVE WITH THE GENERAL INSTRUCTION ON THE CREDIBILITY OF

5    WITNESSES, WHICH IS INSTRUCTION 3.9.  AND AS I TOLD COUNSEL,

6    YOU CERTAINLY ARE FREE TO ARGUE ANY PARTICULAR ASPECT OF THE

7    EYEWITNESS INSTRUCTION THEY THINK IS APPROPRIATE, BUT THE

8    ONLY ASPECTS OF THAT INSTRUCTION THAT APPEAR RELEVANT IN THIS

9    CASE, IN THE COURT'S MIND, ARE ADEQUATELY COVERED BY THE

10   GENERAL INSTRUCTION.  AND WHAT I MEAN BY THAT, THERE IS

11   REALLY NO INDICATION OF A SUGGESTIVE LINEUP, ANYTHING OF THAT

12   NATURE.  BUT I'LL LET YOU AUGMENT YOUR RECORD, MR. FAKHOURY.

13           MR. FAKHOURY:  NOTHING, YOUR HONOR, THAT'S ALL.

14           THE COURT:  ALL RIGHT.  THEN THE ONLY OTHER THING,

15   AS WE DISCUSSED OFF THE RECORD, AS A GENERAL RULE, IT'S NOT

16   MY PRACTICE TO SEND THE INDICTMENT INTO THE JURY ROOM.

17   HOWEVER, IN THIS CASE, SINCE WE HAVE SIX COUNTS INVOLVING

18   THREE DIFFERENT MATERIAL WITNESSES, IT'S MY BELIEF THAT IT

19   WOULD BE APPROPRIATE TO SEND THE INDICTMENT IN, ADMONISHING

20   THE JURORS, AGAIN, THAT THE INDICTMENT IS NOT EVIDENCE.  AND

21   SPECIFICALLY TELLING THEM THE REASON I'M SENDING IT IN, AND I

22   BELIEVE THAT ALL COUNSEL AGREE, WITH THAT ADMONISH, THAT'S

23   APPROPRIATE, IS THAT CORRECT, MR. MILLER?

24           MR. MILLER:  YES, BY THE GOVERNMENT.

25           MR. FAKHOURY:  YES, YOUR HONOR.  YOUR HONOR, I

```
 1    MISSPOKE THERE WAS ONE THING WE DID REQUEST, A MISSING

 2    WITNESS INSTRUCTION RELATED TO THE WITNESS WE HAD HOPED TO

 3    HAVE A VIDEOTAPED STATEMENT PLAYED, AND I KNOW THE COURT

 4    PREVIOUSLY DENIED OUR MOTION IN LIMINE.  I WANTED TO PUT ON

 5    THE RECORD THAT WE HAD REQUESTED A MISSING WITNESS

 6    INSTRUCTION, BUT IT WAS DENIED BECAUSE THE JURY DIDN'T HEAR

 7    THAT TESTIMONY.  THAT'S ALL.

 8            THE COURT:  THAT'S FINE.  ANYTHING FURTHER BEFORE

 9    WE BRING THE PANEL BACK IN?

10            MR. FAKHOURY:  NO, YOUR HONOR.

11            THE COURT:  YOU GENTLEMEN WORKED OUT THE

12    STIPULATION?

13            MR. FAKHOURY:  WE HAVE A MARKED COPY WE CAN ADMIT

14    INTO EVIDENCE, AND WE CAN JUST READ THE FACTUAL BASIS AND

15    JUST TELL THE JURY THAT, I GUESS, THE COURT CAN TAKE JUDICIAL

16    NOTICE OF IT AND ADMIT IT INTO EVIDENCE, AND PERHAPS WHEN WE

17    RECALL THE JURY, WE CAN READ INTO EVIDENCE JUST THE FACTUAL

18    BASIS OF THE PLEA AGREEMENT AND THEN THAT CAN GO BACK TO THE

19    JURY ROOM WHEN THEY DELIBERATE, IF THAT'S OKAY?

20            THE COURT:  IF MR. MILLER DOESN'T OBJECT, I DON'T

21    OBJECT.

22            MR. MILLER:  NO, YOUR HONOR, NO OBJECTION.

23            THE COURT:  WE WILL BE IN RECESS MOMENTARILY WHILE

24    WE BRING THE JURY IN.

25                    (JURY ENTERS COURTROOM.)
```

```
 1              GOOD AFTERNOON, AGAIN, LADIES AND GENTLEMEN.  THIS
 2    IS THE MATTER OF THE UNITED STATES VERSUS JONATHAN LEAL-DEL
 3    CARMEN.  THE COURT FINDS COUNSEL ARE PRESENT, MR. LEAL IS
 4    PRESENTS, ALL MEMBERS OF THE JURY PANEL ARE PRESENT.
 5    MR. PETERSON, YOU MAY PROCEED.
 6              MR. PETERSON:  THANK YOU, YOUR HONOR.  THE DEFENSE
 7    MOVES TO INTRODUCE DEFENSE EXHIBIT A, AND WOULD READ A
 8    PORTION THEREOF.
 9              THE COURT:  JUST DESCRIBE A FOR THE RECORD.  I KNOW
10    WHAT IT IS, BUT TELL THE RECORD WHAT IT IS.
11              MR. PETERSON:  VERY WELL.  FOR THE RECORD, IT'S
12    PORTIONS OF THE PLEA AGREEMENT IN THE **UNITED STATES VERSUS**
13    **DOMINGO GOMEZ-AGUILAR**, DEFENDANT.  AND IT SAYS --
14              THE COURT:  HANG ON JUST A SECOND.  ANY OBJECTION?
15              MR. MILLER:  NO.
16              THE COURT:  DEFENDANT'S A IS RECEIVED.  GO AHEAD.
17                   (DEFENDANT'S EXHIBIT A
18                    ADMITTED INTO EVIDENCE.)
19              MR. PETERSON:  THE PORTION WE ARE GOING TO READ
20    SAYS, "THE FOLLOWING FACTS ARE TRUE.  ON OR ABOUT MARCH 25,
21    2010, WITHIN THE SOUTHERN DISTRICT OF CALIFORNIA, THE
22    DEFENDANT, DOMINGO GOMEZ-AGUILAR, AN ACCOMPLICE, GUIDED A
23    GROUP OF 12 UNDOCUMENTED ALIENS FROM MEXICO INTO THE UNITED
24    STATES IN AN AREA TEN MILES EAST OF THE TECATE PORT OF ENTRY.
25    ONE OF THE UNDOCUMENTED ALIENS IN THE GROUP WAS ARISTEO
```

1   VAZQUEZ-ROJAS.  THE DEFENDANT KNEW ARISTEO VAZQUEZ-ROJAS WAS

2   AN UNDOCUMENTED ALIEN.

3          WHEN DEFENDANT, DOMINGO GOMEZ-AGUILAR, AN

4   ACCOMPLICE, BROUGHT ARISTEO VAZQUEZ-ROJAS ACROSS THE BORDER,

5   HE DID NOT DECLARE OR PRESENT ARISTEO VAZQUEZ-ROJAS TO THE

6   APPROPRIATE IMMIGRATION AUTHORITIES, AND COMMITTED THE ABOVE

7   ACTS WITH THE INTENTION OF VIOLATING UNITED STATES

8   IMMIGRATION LAWS, AND WITH THE INTENT TO ASSIST ANOTHER IN

9   BRINGING AN ALIEN INTO THE UNITED STATES WITHOUT

10   PRESENTATION."

11          THE COURT:  ANYTHING FURTHER FROM THE DEFENSE?

12          MR. FAKHOURY:  YOUR HONOR, THE DEFENSE RESTS, AND

13   WE RENEW OUR RULE 29.

14          THE COURT:  DO YOU WANT TO BE HEARD FURTHER AT

15   SIDEBAR?

16          MR. FAKHOURY:  NO, YOUR HONOR.

17          THE COURT:  SUBMITTED?

18          MR. FAKHOURY:  YES, YOUR HONOR.

19          THE COURT:  DENIED.  ANY REBUTTAL BY THE

20   GOVERNMENT?

21          MR. MILLER:  NO REBUTTAL BY THE GOVERNMENT.

22          THE COURT:  GOVERNMENT RESTS?

23          MR. MILLER:  YES.

24          MR. FAKHOURY:  I'M SORRY, YOUR HONOR, THIS IS

25   EXHIBIT A.  I'LL JUST BRING IT UP.

```
 1            THE COURT:  FINE.  YOU ARE PREPARED TO ARGUE?
 2            MR. MILLER:  YES.
 3            THE COURT:  ALL RIGHT.  AT THIS TIME, LADIES AND
 4    GENTLEMEN, WE WILL HAVE CLOSING STATEMENTS OF COUNSEL.
 5    BEFORE WE START THAT, LET ME JUST REMIND YOU THAT STATEMENTS
 6    THE ATTORNEYS MAKE DURING THE COURSE OF THE TRIAL ARE NOT
 7    EVIDENCE.  STATEMENTS THEY MAKE DURING CLOSING ARGUMENT ARE
 8    NOT EVIDENCE.  OBVIOUSLY THEY HAVE TO REFER TO THE TESTIMONY
 9    THAT YOU HEARD TO MAKE A COHERENT ARGUMENT, BUT IF YOUR
10    RECOLLECTION OF THE EVIDENCE DIFFERS FROM THEIRS, IT'S YOUR
11    RECOLLECTION THAT CONTROLS.
12            THE GOVERNMENT HAS THE BURDEN OF PROOF.  FOR THAT
13    REASON, THEY ARE GOING TO TALK TO YOU FIRST TO TELL YOU HOW
14    THEY BELIEVE THEY MET MEETING THAT BURDEN OF PROOF.  THE
15    DEFENSE HAS AN OPPORTUNITY TO REBUT WHAT THE GOVERNMENT SAYS,
16    OR IN OTHER WORDS, TELL YOU WHY THEY DON'T THINK THE
17    GOVERNMENT HAS MET THEIR BURDEN OF PROOF.  GOVERNMENT COUNSEL
18    THEN GETS AN OPPORTUNITY TO REBUT WHAT THE DEFENSE SAYS.  FOR
19    THAT REASON, DEFENSE COUNSEL WILL TALK TO YOU ONLY ONCE,
20    WHEREAS GOVERNMENT COUNSEL WILL BE SPEAKING TO YOU TWICE.
21            MR. MILLER, YOU MAY PROCEED.
22            MR. MILLER:  I'M PLEASED TO BEGIN ADDRESSING YOU BY
23    GOOD AFTERNOON, INSTEAD OF GOOD MORNING, LADIES AND
24    GENTLEMEN.
25            IN THIS CASE, THE DEFENDANT, MR. LEAL-DEL CARMEN,
```

1   THE MAN SEATED RIGHT HERE (INDICATING), IS GUILTY OF

2   SMUGGLING THREE ALIENS, FOR FINANCIAL GAIN AND COMMERCIAL

3   ADVANTAGE.  ESSENTIALLY, WHAT IT MEANS WHEN YOU SMUGGLE

4   ALIENS IS THAT AN ALIEN -- THE ALIENS AGREED TO PAY MONEY TO

5   BE BROUGHT TO THE UNITED STATES, THAT THE DEFENDANT BROUGHT

6   THE ALIENS TO THE US, DEFENDANT KNEW THE PEOPLE WERE ALIENS

7   WITHOUT ANY RIGHT TO BE IN THE UNITED STATES, AND THAT HE

8   ACTED WITH THE INTENT TO VIOLATE THE IMMIGRATION LAWS.  AT

9   THE CONCLUSION OF OUR ARGUMENT THE COURT WILL GIVE YOU

10  INSTRUCTIONS ON EACH OF THOSE ELEMENTS, AND I'M GOING TO

11  ADDRESS THOSE WITH YOU RIGHT NOW.

12          THREE COUNTS IS SMUGGLING ALIENS FOR COMMERCIAL

13  ADVANTAGE AND FINANCIAL GAIN.  THREE COUNTS ARE BRINGING TO

14  THE UNITED STATES WITHOUT PRESENTING TO THE IMMIGRATION

15  AUTHORITIES.  AND THE INDICTMENT CHARGES COUNT ONE WITH ONE

16  OF THE ALIENS THAT YOU HEARD TESTIFY, COUNT TWO WITH THAT

17  SAME ALIEN WITHOUT THE FINANCIAL GAIN ELEMENT, AND COUNT TWO

18  -- THREE AND FOUR ARE FOR THE SECOND MATERIAL WITNESS, AND

19  THE LAST TWO ARE FOR THE THIRD MATERIAL WITNESS.  AND

20  ESSENTIALLY, IT IS, LET ME SEE IF THIS -- FIRST, THE

21  DEFENDANT KNOWINGLY AND INTENTIONALLY BROUGHT A PERSON WHO

22  WAS AN ALIEN, TO THE UNITED STATES FOR THE PURPOSE OF

23  PERSONAL COMMERCIAL ADVANTAGE OR PERSONAL PRIVATE FINANCIAL

24  GAIN.

25          SECOND, THE DEFENDANT KNEW OR WAS IN A RECKLESS

1    DISREGARD OF THE FACT THAT THE PERSON WAS AN ALIEN WHO HAD

2    NOT RECEIVED PRIOR OFFICIAL AUTHORIZATION TO COME TO, ENTER

3    OR RESIDE IN THE UNITED STATES.

4              THIRD, THE DEFENDANT ACTED WITH THE INTENT TO

5    VIOLATE THE UNITED STATES IMMIGRATION LAWS.

6              AT THE BOTTOM OF THIS IS, AN ALIEN IS A PERSON

7    WHO'S NOT A NATURAL BORN OR NATURALIZED CITIZEN OF THE UNITED

8    STATES.  THE TERM COMMERCIAL ADVANTAGE OR PRIVATE FINANCIAL

9    GAIN MEANS ANY ECONOMIC BENEFIT.

10             NOW, THE EVIDENCE IN THIS CASE ESTABLISHES THAT THE

11   DEFENDANT IS GUILTY OF EACH OF THE THREE COUNTS CHARGING HIM

12   WITH BRINGING ALIENS INTO THE UNITED STATES FOR FINANCIAL

13   GAIN.  THE EVIDENCE -- UNCONTROVERTED EVIDENCE IN THIS CASE

14   IS THAT 12 ALIENS WERE FOUND IN THE UNITED STATES BY AGENT

15   PECHT AND AGENT GUIEB.  THEY WERE HIDING, AND THEY COULD

16   DEDUCE THAT THEY WERE HIDING SHORTLY AFTER THEY HAD ENTERED

17   THE UNITED STATES.  THEY HAD JUST CROSSED THE DRAG ROAD AND

18   LEFT THE FOOTPRINTS.

19             THE EVIDENCE ALSO ESTABLISHES, BY EACH OF THE

20   ALIENS THAT TESTIFIED IN THE DEPOSITIONS BEFORE YOU, WAS THAT

21   THE DEFENDANT TOLD THEM TO STAY HERE.  TWO OF THEM SAID, STAY

22   HERE AND HIDE.  ONE OF THEM SAID, STAY HERE AND SLEEP.  THEN

23   AFTER THIS THAT THE EVIDENCE ESTABLISHED THAT THE DEFENDANT

24   AND HIS ACCOMPLICES LEFT.

25             THE THREE ALIENS WERE RETAINED, AND YOU CAN

1    UNDERSTAND HOW LONG AND DETAILED THESE DEPOSITIONS WERE.  IT

2    WAS LIKE WATCHING GRASS GROW AND PAINT DRY, BUT IT WAS THE

3    ONLY OPPORTUNITY TO RESERVE WHAT THEY HAD SEEN, AND EACH OF

4    THE ALIENS TESTIFIED CONSISTENTLY, AND EACH ONE SAID, THAT

5    THE DEFENDANT WAS THEIR GUIDE.  EACH ONE OF THEM SAID THEY

6    WERE MEXICAN CITIZENS.  THAT ESTABLISHES THAT ELEMENT.  EACH

7    ONE SAID THAT THEY HAD NO RIGHT TO BE IN THE UNITED STATES.

8    THAT'S ONE OF THE REQUIRED ELEMENTS.  EACH ONE AGREED TO PAY

9    MONEY TWO, $2,500, ONE $2,300, ONE $1,500.  UNCONTROVERTED

10   EVIDENCE THEY EACH AGREED TO PAY MONEY.

11        AND IT'S ALSO UNCONTROVERTED THAT EACH OF THOSE

12   MATERIAL WITNESSES WERE LED FROM MEXICO INTO THE UNITED

13   STATES, OVER THE ROAD TO THE BUSH WHERE THEY STAYED UNTIL

14   THEY WERE APPREHENDED.  AND EACH OF THE ALIENS THAT THE

15   DEFENDANT SMUGGLED SAID, THAT'S THE GUY WHO SMUGGLED ME.

16        ONE OF THE ARGUMENTS THAT THE DEFENDANT ELUDED TO

17   IN THEIR OPENING STATEMENT WAS, SOMEONE ELSE DID IT.  IT WAS

18   THE GUY WHO PLEAD GUILTY.  AND THERE IS NO DISPUTE THAT THE

19   OTHER PERSON THAT AGENT GUIEB AND PECHT FOUND IN THE CHURCH

20   OF GOD WERE INVOLVED, PLEAD GUILTY, AND WAS INVOLVED IN

21   SMUGGLING THESE THREE UNDOCUMENTED ALIENS.

22        BUT KEEP IN MIND THAT IT IS IN ADDITION TO, NOT

23   INSTEAD OF, THE DEFENSE IMPLICATION IS SINCE THE OTHER GUY

24   PLEAD GUILTY, THEREFORE, THE DEFENDANT MUST NOT BE GUILTY.

25   IT IS NOT MUTUALLY EXCLUSIVE.

1    ALSO, YOU WILL BE INSTRUCTED ON THE THEORIES OF

2  AIDING AND ABETTING.  AIDING AND ABETTING ESSENTIALLY STATES

3  THAT IF YOU ASSIST ANOTHER PERSON IN COMMITTING A CRIME,

4  YOU'RE JUST AS GUILTY AS THAT PERSON THAT YOU HELPED.

5    MR. FAKHOURY:  OBJECTION, MISSTATES THE LAW.

6    THE COURT:  OVERRULED.

7    MR. MILLER:  AND THOUGH THE EVIDENCE IN THIS CASE

8  SHOWS THAT THE DEFENDANT WAS DIRECTLY INVOLVED, THAT HE WAS

9  THE ONE THAT MADE ARRANGEMENTS, HE'S THE ONE THAT GUIDED

10  THEM, AND EACH OF THE ALIENS WHO TESTIFIED BY THEIR

11  PERCEPTION WAS THAT HE WAS THAT GROUP'S GUIDE, EACH OF THE

12  ALIENS SAID THERE ARE TWO DIFFERENT GROUPS AND I SEE

13  MR. GOMEZ, BUT MY CONTACT WAS MAINLY WITH MR. LEAL.

14    THERE IS ALSO AN ILLUSION IN THE OPENING STATEMENT

15  THEY WEREN'T TRUTHFUL BECAUSE THEY WERE AFRAID.  WELL, YOU

16  CAN EVALUATE THEIR DEMEANOR DURING THE DEPOSITION.  THERE IS

17  NO FEAR OR HESITATION WHEN THEY ARE IDENTIFYING MR. LEAL AS

18  THE PERSON WHO'S GUIDING THEM.  BUT FOR AIDING AND ABETTING,

19  THE EVIDENCE SHOWS THAT EVEN IF MR. GOMEZ WAS RESPONSIBLE,

20  THAT MR. GOMEZ, IN THIS EVIDENCE, WAS HELPING MR. LEAL, EVEN

21  IF IT WAS THE OTHER WAY AROUND, MR. LEAL WAS CERTAINLY DOING

22  THINGS TO ASSIST MR. GOMEZ.

23    AND THAT SAYS, IN THE AIDING AND ABETTING

24  INSTRUCTION IT IS FIRST, SOME INDIVIDUAL BROUGHT AN ALIEN

25  INTO THE UNITED STATES FOR COMMERCIAL ADVANTAGE OR FINANCIAL

1    GAIN, EITHER THE DEFENDANT MR. LEAL OR MR. GOMEZ.  THERE IS

2    NO DOUBT THAT SOMEONE DID IT BECAUSE EACH OF THOSE ALIENS

3    CAME IN HERE AFTER AGREEING TO PAY FOR THEIR TRANSPORT.

4         SECOND, THE DEFENDANT KNOWINGLY AND INTENTIONALLY

5    AIDED, COUNSELED, COMMANDED, INDUCED, PROCURED THE

6    INDIVIDUALS TO COMMIT THE CRIME OF BRINGING IN ILLEGAL ALIENS

7    FOR INDIVIDUAL COMMERCIAL ADVANTAGE OR PRIVATE FINANCIAL

8    GAIN; AND

9         THIRD, THAT THE DEFENDANT ACTED BEFORE THE CRIME

10   WAS COMMITTED.

11        THE COURT:  COMPLETED.

12        MR. MILLER:  PARDON?

13        THE COURT:  YOU MISSPOKE.  THE CRIME WAS COMPLETED,

14   NOT COMMITTED.

15        MR. MILLER:  COMPLETED.  I APOLOGIZE.

16        THE COURT:  AT LEAST YOU KNOW I'M LISTENING.

17        MR. MILLER:  SO, ESSENTIALLY, THIS INSTRUCTION SAYS

18   THAT IF ANYONE HELPS THE MAIN PERSON, THAT YOU DON'T HAVE TO

19   DO EVERYTHING.  FOR INSTANCE, MR. GONZALEZ-RAMIREZ SAID THAT

20   HIS ARRANGEMENTS WERE WITH THE TAXI.  AND THE TAXI TOOK HIM

21   TO TECATE AND SAID, ALL RIGHT, WE ARE GOING TO BRING YOU IN

22   FOR 1500 BUCKS, ALL YOU GUYS.  CONTACT THAT GUY OVER THERE.

23   SO, THE TAXI IS INVOLVED.  BUT THE DEFENDANT WAS ASSISTING

24   THE TAXI DRIVER.  THAT MAKES HIM GUILTY OF SMUGGLING THESE

25   NON-COMMITTED ALIENS FOR FINANCIAL GAIN.

```
1              WE ALSO SPENT A LOT OF TIME IN VOIR DIRE, AND I
2    EXPECT YOU ARE GOING TO HEAR MORE OF THIS ARGUMENT ABOUT
3    PROOF BEYOND A REASONABLE DOUBT.  THE EVIDENCE IN THIS CASE
4    IS PROOF BEYOND A REASONABLE DOUBT.  THERE IS NO OTHER
5    EVIDENCE ESTABLISHING WHAT HAPPENED HERE.  THE ALIENS EACH
6    IDENTIFIED THE DEFENDANT AS THE PERSON WHO WAS GUIDING.
7              MR. FAKHOURY:  OBJECTION, YOUR HONOR, BURDEN
8    SHIFTING, AS TO NO OTHER EVIDENCE.
9              THE COURT:  OVERRULED.
10             MR. MILLER:  YOU WILL BE INSTRUCTED ABOUT
11   REASONABLE DOUBT, AND WE HAD A LOT OF DISCUSSION ON THAT ON
12   VOIR DIRE.  AND THIS IS WHAT MY BURDEN IS, PROOF BEYOND A
13   REASONABLE DOUBT IS PROOF THAT LEAVES YOU FIRMLY CONVINCED
14   THAT THE DEFENDANT IS GUILTY.  IT DOES NOT REQUIRE THAT THE
15   GOVERNMENT PROVE GUILT BEYOND ALL POSSIBLE DOUBT.  A
16   REASONABLE DOUBT IS A DOUBT BASED UPON REASON AND COMMON
17   SENSE AND NOT BASED PURELY ON SPECULATION.  IT MAY ARISE FROM
18   THE CAREFUL AND IMPARTIAL CONSIDERATION OF ALL THE EVIDENCE
19   OR FROM A LACK OF EVIDENCE.  IF AFTER A CAREFUL AND IMPARTIAL
20   CONSIDERATION OF ALL THE EVIDENCE YOU'RE NOT CONVINCED BEYOND
21   A REASONABLE DOUBT THAT THE DEFENDANT IS GUILTY, IT IS YOUR
22   DUTY TO FIND THE DEFENDANT NOT GUILTY.  ON THE OTHER HAND, IF
23   AFTER A CAREFUL AND IMPARTIAL CONSIDERATION OF ALL THE
24   EVIDENCE YOU ARE CONVINCED BEYOND A REASONABLE DOUBT THAT THE
25   DEFENDANT IS GUILTY, IT IS YOUR DUTY TO FIND THE DEFENDANT
```

1      GUILTY.

2              THERE IS A REASON THAT THE BURDEN IS CALLED

3      REASONABLE DOUBT BECAUSE IT IS WHAT IS REASONABLE.  THAT IS

4      WHAT THE OPERATIVE WORD OF THIS TERM IS.  AND AS CONTAINED

5      RIGHT IN THE INSTRUCTION, IT IS BASED UPON REASON AND COMMON

6      SENSE AND NOT ON SPECULATION.

7              THERE ARE A FEW THINGS THAT YOU NEED TO KNOW AS TO

8      WHAT REASONABLE DOUBT IS NOT.  RIGHT THERE IN THE

9      INSTRUCTION, IT IS NOT SPECULATION.  IT IS NOT SYMPATHY, AND

10     IT IS NOT CONFUSION.

11             WITH REGARD TO SYMPATHY, THERE IS EVIDENCE THAT THE

12     DEFENDANT HAS A DAUGHTER IN MEXICO.  THAT IS NOT REASONABLE

13     DOUBT.  IT SEEMS THAT THE ARGUMENT, OH, HE HAS A DAUGHTER IN

14     MEXICO, THEREFORE, HE IS NOT GUILTY, NO, THAT'S NOT

15     REASONABLE DOUBT.  SPECULATION, WELL, HE WENT DOWN TO MEXICO

16     TO VISIT HIS DAUGHTER IN JANUARY AND FEBRUARY, THEREFORE, HE

17     IS NOT GUILTY BECAUSE HE DIDN'T SMUGGLE THE ALIENS.  NO,

18     THERE IS NO EVIDENCE ABOUT VISITING THE DAUGHTER IS NOT

19     MUTUALLY EXCLUSIVE TO HIM BECOMING INVOLVED IN ALIEN

20     SMUGGLING AND SMUGGLING THESE THREE UNDOCUMENTED ALIENS.

21             MR. FAKHOURY:  OBJECTION, BURDEN SHIFTING AS TO NO

22     EVIDENCE.

23             THE COURT:  OVERRULED.

24             MR. MILLER:  THAT OR CONFUSION.

25             NOW, YOU CAN UNDERSTAND HOW DIFFICULT IT IS TO

1    ENGAGE IN A DEPOSITION OR INTERVIEW OF SOMEONE WHEN YOU ARE

2    GOING BACK AND FORTH WITH AN INTERPRETER AND THE DEPOSITIONS

3    WERE LONG, BUT THEY WERE DETAILED, AND EACH OF THOSE DETAILS

4    ESTABLISHED THAT THE DEFENDANT WAS THE GUIDE.

5         NOW, WHEN YOU GO TO DELIBERATE, WHAT YOU HEARD IN

6    THE DEPOSITION IS THE TESTIMONY.  YOU HAVE THE TRANSCRIPTS TO

7    ASSIST YOU IN YOUR VIEWING OF THAT TESTIMONY.  YOU WILL NOT

8    HAVE TRANSCRIPTS DURING YOUR DELIBERATION.  HOWEVER, THERE

9    ARE PORTIONS OF THE TESTIMONY THAT I WOULD LIKE TO CALL YOUR

10   ATTENTION TO THAT ESTABLISHES BEYOND A REASONABLE DOUBT THAT

11   THIS DEFENDANT IS GUILTY BEYOND A REASONABLE DOUBT.

12        OBVIOUSLY I'M ONLY GOING TO DO PORTIONS OF THESE

13   TRANSCRIPTS, BUT WE PLAYED THE ENTIRE TRANSCRIPTS SO YOU CAN

14   SEE THE ENTIRE CONTEXT, AND EVALUATE THE STRENGTH OF THE

15   EVIDENCE ON YOUR OWN.  BUT THE WITNESS SAID, WE HAD SEEN THEM

16   BEFORE.  WE RECOGNIZED THEM AND WE FOLLOWED HIM.  I HAD SEEN

17   HIM BEFORE.  LIKE ONE DAY BEFORE, I THINK.  I ASKED HOW WERE

18   YOU INTRODUCED?  HE WAS INTRODUCED AS THE PERSON WHO WAS

19   GOING TO CROSS ME.  DID YOU SPEAK WITH HIM AT ALL DURING THE

20   BUS TRIP?  ON THE BUS HE TOLD ME WHENEVER WE GOT OFF I WAS TO

21   GET OFF.  WHEN MR. LEAL GOT OFF AND YOU GOT OFF THE BUS AND

22   YOU FOLLOWED MR. LEAL, DID THE OTHER PEOPLE FOLLOW HIM?  YES.

23   DURING YOUR WALK FROM JOINING THE GROUP THE FIRST TIME THAT

24   YOU STOPPED, DID HE SAY ANYTHING TO YOU?  NO, HE JUST SAID

25   THAT WE WERE CLOSE, CLOSE TO THE BORDER.  THOSE ARE JUST SOME

1    OF THE EXCERPTS THAT WERE ESTABLISHING FROM HIS CONTENT WITH

2    MR. RAMIREZ-JARQUIN THAT HE WAS A GUIDE.

3              MR. GONZALEZ-RAMIREZ ASKED HOW --

4    MR. GONZALEZ-RAMIREZ, AT THAT TIME, YOU CAN IMAGINE MAY FELT

5    NOT LIKE AN ATTORNEY BUT LIKE A DENTIST.  IT WAS LIKE PULLING

6    TEETH TO GET INFORMATION FROM HIM.  BUT IF YOU LISTEN TO THE

7    CONTEXT OF HIS TESTIMONY, NOW, AT SOME POINT WHILE YOU WERE

8    IN TECATE DID YOU MAKE ARRANGEMENTS FOR PEOPLE TO BE BROUGHT

9    INTO THE UNITED STATES?  NO.  WE LATER LEARNED THAT IT WAS

10   FROM THE TAXI.  DID SOMEONE -- DID YOU MEET SOMEONE WHO TOOK

11   YOU TO THE BORDER?  YES.  WHERE DID YOU MEET THIS PERSON?

12   THERE CROSSING ON THE HIGHWAY.  WE LATER LEARNED THAT HE TOOK

13   THE TAXI TO TECATE, THE TAXI DRIVER SAID CONTACT THAT GUY.

14   HE CONTACTED HIM AND SAID, WHAT DID YOU TALK ABOUT?  ABOUT

15   THE WAY, HOW WE GET ACROSS.  WHAT DID HE TELL YOU?  THAT WE

16   NOT CROSS THAT NIGHT, NOT UNTIL THE NEXT ONE.

17             NOW, THERE IS NO DOUBT THAT THE FINANCIAL

18   ARRANGEMENTS WITH REGARD TO MR. GABRIEL-RAMIREZ, I APOLOGIZE,

19   WAS WITH THE TAXI.  BUT IT WAS THE TAXI THAT DREW

20   MR. GONZALEZ-RAMIREZ' ATTENTION TO THE DEFENDANT AND SAID,

21   THAT'S THE GUY THAT WAS GOING TO SMUGGLE.

22             IF YOU REMEMBER HIS TESTIMONY, IT ALSO WAS THAT HE

23   TOLD US WHEN WE WERE GOING TO CROSS, I FOLLOWED HIM.  HE PUT

24   THE BLANKETS DOWN.  HE WAS THE ONE THAT WAS GUIDING

25   MR. GONZALEZ-RAMIREZ ACROSS INTO THE UNITED STATES.

1          NOW, GIVE ME JUST A MOMENT.  YOU ALSO HEARD THE

2    LIVE TESTIMONY OF MR. VAZQUEZ-ROJAS.  THERE WAS AN

3    IMPLICATION IN CLOSING ARGUMENT THAT THE PEOPLE WHO WERE

4    DEPOSED, WHO HAD THE DEPOSITIONS TAKEN, ONLY IDENTIFIED THE

5    DEFENDANT BECAUSE THEY WERE AFRAID OF THE OTHER GUY, BUT

6    MR. VAZQUEZ-RAMIREZ WAS NOT DEPOSED.  HE HAD NO CONTACT WITH

7    HIS FRIEND, MAURO, AND HE TESTIFIED CONSISTENTLY WITH THE

8    OTHER UNDOCUMENTED ALIENS WHO WERE DEPOSED STATED.

9          HE SAID THAT AFTER HE TRIED TO GET ACROSS AND WAS

10   SENT BACK, HE WENT TO TIJUANA, AND THEN THERE HE MET MAURO,

11   ONE OF THE PEOPLE WHO WAS DEPOSED.  HE THEN WAS INTRODUCED AT

12   THE ARCHES TO THE DEFENDANT.  THE ARCHES, IT WAS THE

13   DEFENDANT THAT SAID IT WILL BE $2,500.  YOU GO TO THE BUS

14   STATION.  THEN THE MATERIAL WITNESS WHO TESTIFIED HERE BEFORE

15   YOU TESTIFIED HOW HE GOT TO THE BUS STATION, AND EVERYTHING

16   THAT THE DEFENDANT TOLD HIM ALONG THE WAY.  WHEN TO WALK.

17   WHERE TO STOP.  WE ARE NOT GOING TO CROSS IN THE DAY TIME.

18   WE ARE GOING TO STOP HERE.  HE IS THE ONE THAT PUT THE

19   BLANKETS DOWN.  THAT WITNESS WAS NOT UNDER ANY INFLUENCE OF

20   ANY FEAR THAT THE DEFENSE MAY BE ATTEMPTING TO ALLEGE AGAINST

21   MR. GOMEZ.  AND ALSO, THE IMPLICATION WAS THAT MR. VAZQUEZ

22   WAS THREATENED BY THE BORDER PATROL.

23          YOU HEARD TESTIMONY THAT WHEN MR. VAZQUEZ WAS

24   ASKED, DID THESE PEOPLE -- WHEN THEY WERE ARRESTED, DID THEY

25   TREAT YOU BADLY?  HE SAID, NO.  SO, IF HE WAS UNDER THREAT TO

1   GIVE THEM UNTRUTHFUL INFORMATION, HE CERTAINLY WOULDN'T HAVE

2   PUT THEM IN A GOOD LIGHT.  SO, KEEP THAT IN MIND WHEN YOU ARE

3   EVALUATING.

4        I WANT TO TOUCH BRIEFLY UPON THE OTHER COUNTS, THE

5   MAIN COUNTS ARE THE BRINGING TO FOR FINANCIAL GAIN.  AS I

6   DESCRIBED EARLIER, ESSENTIALLY, THE OTHER THREE COUNTS ARE

7   THE SMUGGLING WITHOUT THE FINANCIAL GAIN.

8        NOW, THERE IS NO DOUBT BEYOND A REASONABLE DOUBT

9   THAT THIS WAS FOR FINANCIAL GAIN BECAUSE EACH OF THE ALIENS

10  AGREED TO PAID MONEY.  THIS IS A COMMERCIAL ENDEAVOR.  PEOPLE

11  DO THIS TO MAKE MONEY.  BUT THE ELEMENTS FOR FAILING TO

12  PRESENT ARE AS FOLLOWS.

13       FIRST, THE DEFENDANT BROUGHT A PERSON WHO WAS AN

14  ALIEN INTO THE UNITED STATES, AND UPON ARRIVAL DID NOT

15  IMMEDIATELY BRING -- PRESENT SAID ALIEN TO THE APPROPRIATE

16  IMMIGRATION OFFICIALS AT A DESIGNATED PORT OF ENTRY.

17       SECOND, THE DEFENDANT KNEW OR WAS IN A RECKLESS

18  DISREGARD TO THE FACT THAT THE PERSON WAS AN ALIEN WHO HAD

19  NOT RECEIVED PRIOR OFFICIAL AUTHORIZATION TO COME TO, ENTER

20  OR RESIDE IN THE UNITED STATES.

21       AND THIRD, THE DEFENDANT ACTED WITH THE INTENT TO

22  VIOLATE THE UNITED STATES IMMIGRATION LAWS.

23       ALL THE EVIDENCE PROVES BEYOND A REASONABLE DOUBT

24  THE DEFENDANT'S GUILT FOR THOSE THREE REMAINING COUNTS, FOR

25  EACH OF THOSE ALIENS.  THERE IS NO DOUBT THAT THE DEFENDANT

1    BROUGHT EACH OF THOSE ALIENS, AND NINE OTHERS, INTO THE

2    UNITED STATES, OVER THE BORDER, INTO THE UNITED STATES.

3         THERE IS NO DOUBT THAT THE DEFENDANT KNEW THAT EACH

4    OF THOSE ALIENS WERE PAYING HIM -- WERE GOING TO PAY 1500 TO

5    $2,500, WERE OTHER THAN US CITIZENS OR DID NOT HAVE ANY RIGHT

6    TO BE IN THE UNITED STATES, OTHERWISE, THEY WOULDN'T HAVE

7    HIRED THE DEFENDANT AND THEY WOULDN'T HAVE BEEN SMUGGLING

8    THEM IN, IN THE MIDDLE OF THE NIGHT.

9         THERE IS NO DOUBT THAT THEY DID NOT PRESENT THESE

10   ALIENS UPON THEIR ARRIVAL AT THE PORT OF ENTRY BECAUSE IT

11   WASN'T THE PORT OF ENTRY.  IT WAS THE WIRE ACROSS THE CANYON.

12        THERE IS NO DOUBT THAT THE DEFENDANT KNEW EXACTLY

13   WHO THESE PEOPLE WERE AND WHY HE WAS BRINGING THEM INTO THE

14   UNITED STATES.

15        AND THERE IS NO DOUBT THAT WHEN HE GUIDED THEM

16   ACROSS THE UNITED STATES -- INTO THE UNITED STATES, THAT HE

17   CERTAINLY INTENDED TO VIOLATE THE IMMIGRATION LAWS.

18        NOW, I AM GOING TO SIT DOWN AND THE DEFENSE ARE

19   GOING TO ARGUE, AND I'M GOING TO HAVE AN OPPORTUNITY TO

20   RESPOND TO SOME OF THE THEIR ARGUMENTS, BUT BEFORE I SIT

21   DOWN, I WOULD LIKE TO CALL YOUR ATTENTION TO ONE OF THE

22   ARGUMENTS I ANTICIPATE IS GOING TO BE NAMED, AND THE MAIN

23   DEFENSE THAT WAS ASSERTED IN OPENING STATEMENT, THE OTHER

24   DUDE DID IT, AND IT IS A NON SEQUITUR, THAT ARGUMENT.  IT

25   DOES NOT -- WHEN I SAY NON SEQUITUR, IT MEANS IT DOES NOT

1    SEQUENTIALLY FOLLOW THE LOGIC.  THE LOGIC IS THAT

2    GOMEZ-AGUILAR PLEAD GUILTY TO SMUGGLING THESE ALIENS,

3    THEREFORE, THE DEFENDANT IS NOT GUILTY OF SMUGGLING THESE

4    ALIENS.  THAT IS NOT AN ACCURATE ARGUMENT.

5         YOU WILL HAVE A COPY OF THIS PLEA AGREEMENT,

6    MR. GOMEZ-AGUILAR'S PLEA AGREEMENT, AND THERE IS NO DISPUTE

7    THAT HE PLEAD GUILTY -- LET ME BACK UP.  THERE IS NO DISPUTE

8    THAT HE WAS ARRESTED IN THIS CASE AFTER HE AND THE DEFENDANT

9    LEFT THEIR GROUP OF ALIENS.

10        THERE IS NO DISPUTE THAT HE WAS CHARGED WITH THE

11   DEFENDANT FOR HAVING SMUGGLED THESE ALIENS.

12        AND THERE IS NO DISPUTE THAT HE PLEAD GUILTY.  BUT

13   AS I MENTIONED EARLIER, IT IS NOT A MUTUALLY EXCLUSIVE

14   PROPOSITION.

15        THE FACTUAL BASIS THAT WAS READ TO YOU IS THAT ON

16   OR ABOUT MARCH 25, 2010, IN THE SOUTHERN DISTRICT OF

17   CALIFORNIA, DEFENDANT, GOMEZ-AGUILAR, THE PERSON WHERE THERE

18   IS NO DISPUTE PLEAD GUILTY TO THIS OFFENSE, AND AN

19   ACCOMPLICE, GUIDED A GROUP OF 12 UNDOCUMENTED ALIENS FROM

20   MEXICO INTO THE UNITED STATES IN AN AREA TEN MILES EAST OF

21   THE TECATE PORT OF ENTRY.  ONE OF THE UNDOCUMENTED ALIENS IN

22   THE GROUP WAS ARISTEO VAZQUEZ-ROJAS.  THREE DEFENDANT,

23   DEFENDANT GOMEZ-AGUILAR KNEW ARISTEO VAZQUEZ-ROJAS WAS AN

24   UNDOCUMENTED ALIEN.

25        AND THEN, LASTLY, WHEN DEFENDANT DOMINGO GOMEZ-

1    AGUILAR AND HIS ACCOMPLICE BROUGHT ARISTEO VAZQUEZ-ROJAS

2    ACROSS THE BORDER, HE DID NOT DECLARE OR PRESENT ARISTEO

3    VAZQUEZ-ROJAS TO THE APPROPRIATE IMMIGRATION AUTHORITIES, AND

4    COMMITTED THE ABOVE ACTS WITH THE INTENTION OF VIOLATING

5    UNITED STATES IMMIGRATION LAWS WITH THE INTENT -- AND WITH

6    THE INTENT TO ASSIST ANOTHER IN BRINGING AN ALIEN INTO THE

7    UNITED STATES WITHOUT PRESENTATION.  THAT FACTUAL BASIS IN

8    AND OF ITSELF ESTABLISHES THAT MR. GOMEZ-AGUILAR HAD AN

9    ACCOMPLICE.

10        AND THE EVIDENCE IN THIS CASE IS THAT THE DEFENDANT

11   WAS THE ONE WHO WAS GUIDING, AND HE WAS GUIDING ONE GROUP.

12   THE EVIDENCE BY THE MATERIAL WITNESSES SHOWS THAT MR. GOMEZ-

13   AGUILAR WAS GUIDING ANOTHER GROUP BECAUSE EACH OF THE ALIENS

14   SAID, I KNOW HIM BECAUSE HE WAS IN MY GROUP.  I SAW HIM, BUT

15   HE WAS WITH ANOTHER GROUP.

16        SO, DO NOT FALL INTO THAT NON SEQUITUR.  IT DOES

17   NOT LOGICALLY FOLLOW SINCE HE PLEAD GUILTY, HE'S NOT GUILTY,

18   BECAUSE UNDER THE LAW, ANYONE WHO ASSISTS ANOTHER IS GUILTY

19   OF THE MAIN OFFENSE, BUT THE EVIDENCE IN THIS CASE IS

20   OVERWHELMING, BEYOND A REASONABLE DOUBT, THAT THIS MAN,

21   MR. LEAL-DEL CARMEN, SMUGGLED EACH OF THE THREE MATERIAL

22   WITNESSES IN THIS CASE FOR FINANCIAL GAIN, AND BROUGHT EACH

23   OF THOSE MATERIAL WITNESSES TO THE UNITED STATES, AND DID NOT

24   PRESENT THEM FOR INSPECTION TO THE IMMIGRATION AUTHORITIES

25   AND I ASK YOU TO RETURN A VERDICT OF GUILTY ON EACH OF THE

1    SIX COUNTS.  THANK YOU.

2              THE COURT:  THANK YOU, MR. MILLER.  MR. FAKHOURY.

3              MR. PETERSON:  YOUR HONOR, I DON'T KNOW IF YOU HAVE

4    A PREFERENCE WHERE THE EASEL GOES?

5              THE COURT:  BACK IT UP A LITTLE TOWARDS -- THAT'S

6    FINE.

7              MR. FAKHOURY:  HELLO.  A DAY-AND-A-HALF OF WALKING

8    IN THE WILDERNESS, SLEEPING ON THE GROUND, EATING WHATEVER

9    SNACKS THEY BROUGHT WITH THEM, SITTING IN THE SUN ALL DAY,

10   DAY-AND-A-HALF, 36 HOURS, CONSTANTLY AFRAID HE WOULD BE

11   CAUGHT AGAIN, SENT BACK TO JAIL, SENT BACK TO MEXICO, HIS

12   PLAN FOILED.  HIS HOPE AT A BETTER LIFE RUINED.  HIS HOPE FOR

13   THE LITTLE SLICE OF THE AMERICAN DREAM SHATTERED.

14             THE TRIP TO AMERICA IS A TOUGH ONE, AND FROM OAXACA

15   A LONG ONE.  AND ON MARCH 25TH, OF 2010, ARISTEO VAZQUEZ-

16   ROJAS TOOK THAT TRIP AND HAD HIS DREAM SHATTERED.  HE FOUND

17   HIMSELF IN JAIL.  HE FAILED AGAIN, JUST LIKE HE FAILED A WEEK

18   BEFORE IN ARIZONA.

19             AND TOGETHER IN THAT CELL WITH SOME FRIENDS OF HIS

20   FROM OAXACA, FROM HIS VILLAGE IN THE SOUTHERN PART OF MEXICO,

21   THEY SAT THERE FOR HOURS, 12, 16 HOURS SITTING THERE WAITING

22   AS THE LITTLE DOOR WAS OPENED AND SOMEBODY WAS TAKEN OUT ONE

23   AT A TIME.  MR. VAZQUEZ-ROJAS SAT THERE.  HE WAITED FOR HIS

24   TURN.  HE WAITED FOR HIS TURN TO SPEAK TO THE AGENTS, TO TELL

25   THEM WHAT HAPPENED, TO GIVE HIS SIDE OF THE STORY AND TO GO

1    HOME.

2              AND SURE ENOUGH, IT BECAME MR. VAZQUEZ' TIME.  SO,

3    HE, LIKE EVERYBODY ELSE BEFORE HIM, GOT OUT OF THAT CELL, ONE

4    AT A TIME, HE WAS LED DOWN A HALLWAY, SAT DOWN IN AN EVEN

5    SMALLER ROOM AND THIS TIME THERE WERE NO FRIENDS THERE.

6    THERE WAS JUST HIM AND TWO AGENTS, A VIDEO CAMERA IN THE TOP

7    CORNER AND AN UNDERSTANDING.  YOU'RE GOING TO TELL ME WHO THE

8    GUIDES ARE OR YOU ARE GOING TO GO TO JAIL FOR SIX MONTHS.

9    IT'S YOUR CHOICE, AND NOW I'M GOING TO TURN ON THE CAMERA.

10   THE AGENTS GAVE MR. VAZQUEZ A VERY EASY CHOICE AND, OF

11   COURSE, HE PICKED OUT GUYS.

12             IT HAPPENED TO ARISTEO VAZQUEZ-ROJAS, AND YOU CAN

13   BE SURE IT HAPPENED TO GABRIEL GONZALEZ-RAMIREZ AND TO

14   DOMINGO RAMIREZ-JARQUIN.  AND, LADIES AND GENTLEMEN, THE

15   TRUTH DOESN'T COME OUT THROUGH THREATS AND THROUGH FORCE.

16             THIS CASE IS NOT ABOUT SOLVING OUR NATIONS

17   IMMIGRATION PROBLEMS.  THIS IS NOT IMMIGRATION COURT.  YOU'RE

18   NOT HERE TO DECIDE WHETHER MR. LEAL GETS TO STAY HERE IN THE

19   UNITED STATES.  HE DOESN'T.  HE'S GOING TO BE SENT BACK TO

20   MEXICO.

21             YOU'RE NOT HERE TO DECIDE WHETHER MR. LEAL IS

22   GUILTY OF ILLEGALLY ENTERING THE UNITED STATES.  HE DID.  ON

23   MARCH 25TH, OF THIS YEAR, HE ILLEGALLY ENTERED THE UNITED

24   STATES, AND THAT WAS WRONG AND HE SHOULDN'T HAVE DONE IT.

25             YOU'RE HERE TO DECIDE TODAY, LADIES AND GENTLEMEN,

1    WHETHER MR. LEAL IS GUILTY OF SMUGGLING ALIENS INTO THE

2    UNITED STATES, OF WHETHER HE TRIED TO BRING PEOPLE INTO THE

3    UNITED STATES AND GUIDE THEM ACROSS THE BORDER.  YOU'RE GOING

4    TO DECIDE TODAY WHETHER HE SHOULD GO TO PRISON FOR THAT.

5         THE BURDEN IS ON THE GOVERNMENT IN THIS CASE AND

6    THEY HAVE TO CONVINCE YOU BEYOND A REASONABLE DOUBT.  YOU

7    HAVE TO BE FIRMLY CONVINCED THAT THEY CARRIED THEIR BURDEN

8    AND HAVE SHOWN THAT MR. LEAL IS GUILTY BEYOND A REASONABLE

9    DOUBT.  AND SO, THE QUESTION TO YOU, LADIES AND GENTLEMEN, IS

10   HAS THE GOVERNMENT CARRIED THEIR BURDEN?  THE ANSWER IS?  NO,

11   THEY HAVE NOT.  THEY HAVE NOT PROVEN BEYOND A REASONABLE

12   DOUBT THAT MR. LEAL IS GUILTY OF ALIEN SMUGGLING.  AND THE

13   REASON IS SIMPLE, BECAUSE MR. LEAL, JUST LIKE THE 12 OTHER

14   PEOPLE IN THAT GROUP, WAS TRYING TO COME HERE INTO THE UNITED

15   STATES TO EARN MONEY TO MAKE A LIFE FOR HIMSELF.  HE DID IT

16   THE WRONG WAY.  HE DID IT BY ILLEGALLY TRYING TO ENTER THE

17   UNITED STATES, BUT HE DID NOT TRY TO SMUGGLE ANYBODY AND HE

18   IS NOT GUILTY.

19        I WANT TO START BY TALKING ABOUT WHAT'S NOT IN

20   DISPUTE, AND I WANT TO ADDRESS SOMETHING THAT MR. MILLER TOLD

21   YOU JUST BEFORE HE SAT DOWN AND I STOOD UP.  HE SAID THAT OUR

22   THEORY, THAT MR. LEAL'S THEORY, THAT IS, SINCE MR. GOMEZ-

23   AGUILAR IS GUILTY, THAT MR. LEAL IS NOT.  THAT'S NOT

24   COMPLETELY OUR THEORY, FOLKS.  WE DO NOT DISPUTE THAT

25   MR. GOMEZ HAD AN ACCOMPLICE.  HE ABSOLUTELY DID.  THERE WERE

1    ABSOLUTELY TWO FOOT GUIDES THERE ON MARCH 25TH, OF THIS YEAR.

2    THE QUESTION IS HAS THE GOVERNMENT PROVEN TO YOU THAT IT WAS

3    MR. LEAL WHO WAS THE OTHER FOOT GUIDE AND NOT SOMEBODY ELSE

4    IN THIS GROUP OF 12, AND THE ANSWER IS, NO, THEY HAVEN'T.

5         THERE IS NO QUESTION MR. LEAL WAS PART OF THAT

6    GROUP.  THERE IS NO QUESTION THAT HE WAS ON THE BUS WITH

7    ABOUT SEVEN OR EIGHT OF THE OTHER INDIVIDUALS WHO ARE PART OF

8    THIS GROUP.  THAT'S NOT IN DISPUTE.

9         THERE IS NO DISPUTE THAT THEY SPENT A

10   DAY-AND-A-HALF TOGETHER.  AND FOLKS, IT'S IMPORTANT TO

11   REMEMBER THAT YOU DON'T CHECK YOUR COMMON SENSE AT THE DOOR.

12   WHEN YOU SPEND A DAY-AND-A-HALF WITH A GROUP OF 12 PEOPLE,

13   YOU DON'T JUST WALK IN SILENCE.  YOU DON'T JUST STAND THERE

14   AS STRANGERS.  YOU TALK, AND FOR THIS GROUP OF PEOPLE THEY

15   TALKED.  THEY TALKED ABOUT WHERE THEY WERE GOING.  HOW THEY

16   WERE GOING TO GET THERE.  WHAT THEY HOPED TO DO IN AMERICA.

17   WHERE THEY HAD LIVED BEFORE.  WHERE THEY WORKED BEFORE.  THE

18   FAMILY THEY HAD LEFT BEHIND IN MEXICO.

19        WHEN YOU THINK ABOUT IT, ON TUESDAY, WE HAD JURY

20   SELECTION HERE IN THIS CASE AND WE NOW HAVE A JURY OF 13.

21   AND OVER THE LAST THREE DAYS, THE 13 JURORS HERE HAVE SPENT

22   SOME TIME TOGETHER.  AND THERE HAVE BEEN TIMES WHEN THE DOORS

23   HAVE OPENED, AND YOU HAD A CHANCE TO RECESS, AND YOU PROBABLY

24   WALKED OUTSIDE AND TALKED ABOUT THE CHARGERS, OR THE ECONOMY,

25   YOUR KIDS, JOBS, WHAT YOU HAD FOR LUNCH, WHAT YOU ARE GOING

1    TO MAKE FOR DINNER.  THAT'S WHAT GROUPS DO.  THAT'S WHAT

2    GROUPS OF PEOPLE WHO ARE GOING TO SPEND TIME TOGETHER DO.

3    THEY TALK.  THEY SHARE THEIR DREAMS.  THEY SHARE THEIR FEARS.

4    THEY SHARE THEIR COMMON EVERY DAY EXPERIENCES AND THAT'S

5    EXACTLY WHAT HAPPENED IN THIS GROUP.  AND JUST BECAUSE

6    MR. LEAL TALKED TO PEOPLE IN THIS GROUP DOESN'T MEAN HE WAS

7    THE GUIDE.  IT DOESN'T MEAN HE WAS THE ALIEN SMUGGLER.

8            DID HE TELL MAURO RAMIREZ-JARQUIN TO GET OFF THE

9    BUS?  PROBABLY DID.  THINK ABOUT IT.  MAURO RAMIREZ-JARQUIN

10   AND ARISTEO VAZQUEZ-ROJAS ARE BOTH FROM OAXACA.  AND WE HEARD

11   TESTIMONY FROM MR. VAZQUEZ THAT OAXACA IS FIVE HOURS AWAY

12   FROM TIJUANA BY PLANE.  SO, THAT'S LIKE FLYING FROM SAN DIEGO

13   TO NEW YORK CITY.  AND IF YOU ARE SITTING ON A TROLLEY IN

14   DOWNTOWN SAN DIEGO AND YOU ARE NEXT TO AN OUT-OF-TOWNER FROM

15   NEW YORK, AND YOU ASKED ME WHERE IS THE MISSION VALLEY STOP,

16   YOU TURN AROUND AND SAY, IT'S COMING UP IN THREE STOPS.

17   THAT'S EXACTLY THE SAME THING.  MR. LEAL, PART OF THIS GROUP,

18   PART OF THE GROUP OF PEOPLE GOING TO BE SMUGGLED, ALL GOING

19   TO THE SAME LOCATION, SAME SPOT IN TECATE, THIS IS OUR STOP.

20   THIS IS WHERE WE GET OFF TO BEGIN OUR JOURNEY INTO THE UNITED

21   STATES.

22            ANOTHER THING WE DON'T DISPUTE IS WHAT AGENT PECHT

23   TESTIFIED ABOUT.  HE WAS THE FIRST WITNESS TO TAKE THE STAND.

24   EVERYTHING HE SAID WAS SPOT ON.  WE DON'T DISAGREE WITH

25   ANYTHING HE SAYS.  HE WAS A GOOD AGENT.  HE DID HIS JOB.  HIS

1    JOB IS TO FIND PEOPLE TRYING TO ILLEGALLY ENTER THE UNITED

2    STATES.  AND ON MARCH 25TH, HE DID OUR COUNTRY PROUD.  HE

3    FOUND PEOPLE.  HE FOUND 12 PEOPLE, AND HE FOUND FOOTPRINTS.

4    BUT IT'S IMPORTANT TO REMEMBER WHAT HE DIDN'T DO.  HE DIDN'T

5    JUMP TO CONCLUSIONS.  HE DIDN'T JUMP TO THE CONCLUSION THAT

6    THE OTHER FOOTPRINTS THAT WERE THERE MUST BELONG TO THE FOOT

7    GUIDE.  HE WENT BACK, HE SUSPECTED MAYBE THERE IS MORE PEOPLE

8    THAT WE DIDN'T FIND.  HE LOOKED AROUND.  HE SAW FOOTPRINTS.

9    HE FOLLOWED THEM AS FAR AS HE COULD.  HE FOUND NOTHING AND HE

10   RETURNED BACK TO HIS PATROLLING DUTIES.  AND WHEN HE LATER

11   RECEIVED A CALLED FROM THE SCOPE OPERATOR THAT, HEY, WE FOUND

12   TWO OTHER PEOPLE.  HE WENT BACK AND DETERMINED THOSE TWO

13   PEOPLE WERE FROM THE SAME GROUP.  THAT'S NOT IN DISPUTE.  BUT

14   HE DIDN'T SAY THAT, I SUSPECTED THERE WERE FOOT GUIDES.  THE

15   SCOPE OPERATOR DIDN'T TELL HIM WE FOUND YOUR FOOT GUIDES.  HE

16   WAS JUST DOING HIS JOB AND HE DIDN'T JUMP TO ANY CONCLUSIONS.

17          THERE IS ONE VERY IMPORTANT FACT THAT MR. MILLER

18   DID NOT TOUCH UPON AT ALL IN HIS FIRST CLOSING.  OKAY.  THIS

19   IS THE MAP THAT AGENT PECHT TALKED TO US ABOUT.  AND HE

20   TESTIFIED THAT HE FOUND A GROUP, THE GROUP OF 12, THE

21   OFFICIAL GROUP, HE FOUND THEM RIGHT HERE (INDICATING).

22   ROUGHLY AROUND MARKER 146, CLOSE TO THE G ROAD.

23          AND HE TESTIFIED THAT THIS AREA BASICALLY

24   EVERYTHING SOUTH IS MEXICO.  AND HE HAS NO JURISDICTION IN

25   MEXICO.  HE CAN'T GO AND ARREST ANYBODY IN MEXICO.  I CAN'T

1    RUN DOWN THERE AND PUT HANDCUFFS ON ANYBODY.  HE FOUND THE

2    GROUP OF 12 HERE (INDICATING) AND HE SAW THE FOOTPRINTS GOING

3    NORTH, AND HE ULTIMATELY FOUND

4    MR. LEAL AND MR. GOMEZ-AGUILAR HERE BY THE CHURCH OF GOD

5    GATE.

6            SO, THESE FOOT GUIDES WERE GOING NORTH.  OKAY.

7    NOW, LOGICAL INFERENCE, IF YOU ARE A SUSPECTED FOOT GUIDE,

8    AND BOTH MR. LEAL AND MR. GOMEZ WERE THE FOOT GUIDES, WHY ARE

9    THEY GOING WITH?  IT MAKES NO SENSE.

10           IF THEY WERE BOTH THE FOOT GUIDES, THEY WOULD GO

11   SOUTH TO MEXICO.  ONE, IT'S CLOSER.  TWO, NOBODY CAN ARREST

12   THEM.  AND IF THEY ARE BOTH FOOT GUIDES THEY PRESUMABLY KNOW

13   THAT.

14           WHAT'S THE MORE LOGICAL INFERENCE TO DRAW?  WELL,

15   MR. GOMEZ IS THE FOOT GUIDE.  WE KNOW THAT.  THAT'S NOT IN

16   QUESTION.  SO, WHY WOULD MR. GOMEZ GO NORTH AND MR. LEAL

17   FOLLOW HIM?  WELL, SADLY, FOLKS, THIS IS A BUSINESS, AND I

18   HATE TO THINK OF PEOPLE AS COMMODITY, BUT IT'S THE TRUTH.

19   THERE IS MONEY TO BE MADE IN ALIEN SMUGGLING.  AND WE HEARD

20   TESTIMONY THAT FOR TWO OUT OF THE THREE WITNESSES, IT WAS

21   $2,300 THEY WERE GOING TO PAY TO BE SMUGGLED INTO THE UNITED

22   STATES.  FOR MR. GONZALEZ-RAMIREZ IT WAS $1,500.  AND THERE

23   WERE NINE OTHER INDIVIDUALS, AND I DON'T KNOW HOW MUCH THEY

24   WERE PAYING, NOBODY TALKED TO THEM.  THE GOVERNMENT DIDN'T

25   BOTHER TO QUESTION THEM ABOUT THAT.

1       BUT LET'S ASSUME FOR A MINUTE THAT HALF OF THEM ARE

2   PAYING 2300 AND HALF ARE GOING TO PAY 1500.  WELL, THAT'S

3   OVER $20,000.  THAT'S $20,000 A LOAD YOU HAVE GOT RIGHT

4   THERE.  AND NOW, THE BORDER PATROL HAS COME AND TAKEN AWAY 11

5   OUT OF THE 12 OF THOSE PEOPLE.  WHAT'S MR. GOMEZ-AGUILAR

6   GOING TO DO?  GO BACK TO MEXICO HAVING EARNED NOTHING FOR HIS

7   TROUBLE FOR WALKING FOR A DAY-AND-A-HALF AND PUTTING UP WITH

8   LOOKING OUT FOR BORDER PATROL AND SLEEPING ON THE FLOOR, AND

9   HAVING A HARD DAY-AND-A-HALF?  OR IS HE GOING TO TRY TO CUT

10  HIS LOSSES?  IF ONE MADE IT ACROSS, ONE PERSON THAT HE CAN

11  TAKE ACROSS, THAT'S STILL SOME SORT OF PAY DAY THAT'S BETTER

12  THAN NOTHING.  SOMETHING IS BETTER THAN NOTHING.

13      THERE IS NO EXPLANATION FROM THE GOVERNMENT WHY TWO

14  PEOPLE RIGHT CLOSE TO WHERE THEY COULD BE HOME FREE WOULD

15  RATHER GO THE OPPOSITE DIRECTION.  AND THEY WALKED FOR -- THE

16  AGENT SAID THEY DIDN'T FIND THEM FOR FOUR HOURS.  SO, FOR

17  FOUR HOURS THESE PEOPLE ARE WALKING NORTH, AWAY FROM THE

18  BORDER, GETTING WHERE IT'S HARDER AND HARDER FOR THEM TO GET

19  AWAY HOME FREE, AND WHERE IT'S EASIER AND EASIER FOR THE

20  BORDER PATROL TO ARREST THEM.  THE LOGICAL INFERENCE MR. LEAL

21  WAS GOING TO THE UNITED STATES, MR. GOMEZ WAS GUIDING HIM

22  THERE.

23      SO, WHAT THIS SHOWS IS THAT MR. LEAL IS JUST A

24  MEMBER OF THIS GUIDE.  HOW DO WE GET TO WHERE WE ARE TODAY?

25  WE HAD A THREE-DAY FELONY JURY TRIAL IN FEDERAL COURT.  WE

1    WATCHED FOUR HOURS OF DEPOSITIONS.  HOW DID WE GET HERE TO

2    THIS POINT?  WHY IS MR. LEAL ACCUSED OF BEING THE GUIDE?  AND

3    THERE ARE TWO THINGS THE GOVERNMENT PRESENTED TO YOU TO GET

4    US TO THIS POINT TODAY.

5             FIRST, THE AGENTS, AND IT'S AGENT MESSIAHS, WHO'S

6    THE CASE AGENT, AND THE OTHER AGENT, I DON'T KNOW WHO IT IS,

7    MADE THE DETERMINATION, MADE THE DECISION TO MAKE MR. LEAL

8    THE FOOD GUIDE.

9             AND SECOND, WE ARE HERE TODAY BECAUSE OF POOR

10   WITNESS IDENTIFICATION, AND I'M GOING TO TALK ABOUT EACH OF

11   THOSE IN TURN.

12            LET'S START WITH WHAT THE AGENTS DID TO MAKE

13   MR. LEAL THE GUIDE.  WHEN AGENT PECHT FOUND MR. LEAL, THEY

14   SUSPECTED HE WAS PART OF THE LARGER GROUP, BUT THERE WAS NO

15   RUSH TO JUDGMENT OR NO JUMPING TO CONCLUSIONS THAT MR. LEAL

16   WAS A FOOT GUIDE.  AND IT'S IMPORTANT TO REMEMBER WHAT THE

17   MATERIAL WITNESSES SAID, MR. VAZQUEZ, AND MR. GONZALEZ AND

18   MR. RAMIREZ.  WHAT DID THEY SAY?  THEY SAID THAT WHEN THEY

19   WERE ARRESTED IN THE FIELD, NO ONE SPOKE TO THEM.  NO ONE

20   TOLD THEM HEY, OUR TWO FOOT GUIDES WENT NORTH.  THEY DID NOT

21   SAY THAT.  THERE WAS NO MENTION OF FOOT GUIDES UNTIL AFTER

22   MR. LEAL HAD BEEN ARRESTED AND MR. GOMEZ-AGUILAR, AND AFTER

23   AGENT MESSIAHS AND THE OTHER AGENT SPLIT MR. LEAL FROM THE

24   REST OF THE GROUP.

25            IF YOU REMEMBER, YOU HEARD BOTH MR. RAMIREZ AND

1    MR. GONZALEZ SAY THAT WHEN MR. LEAL WAS ARRESTED, HE WAS NOT

2    PLACED IN THE CELL WITH THE OTHER MEN IN THE GROUP.  HE WAS

3    PLACED IN A DIFFERENT CELL.  AND THIS WAS, AGAIN, FOUR OR

4    FIVE HOURS AFTER THE FIRST GROUP HAD BEEN ARRESTED.  BUT

5    THERE WAS NO INTERROGATION BY THE AGENTS UNTIL 12 OR 15 HOURS

6    LATER.

7         SO, WHAT WAS GOING ON IN THIS EIGHT HOURS?  WHAT

8    WAS GOING ON WAS THE DECISION WAS BEING MADE TO SAY MR. LEAL

9    AND MR. GOMEZ ARE THE FOOT GUIDES.  AND THE GOVERNMENT GOT

10   PART OF IT RIGHT.  MR. GOMEZ WAS THE FOOT GUIDE, BUT THEY

11   WERE WRONG ABOUT MR. LEAL.

12        SECOND, AGENT MESSIAHS CREATED A BAD PHOTO LINEUP.

13   HE CREATED A PHOTO LINEUP WHERE AFTER HE HAD ARRESTED

14   MR. LEAL, AFTER HE HAD SPLIT HIM UP FROM THE REST OF THE

15   GROUP, AND AFTER MR. RAMIREZ-JARQUIN TESTIFIED HE KNEW THAT

16   THE AGENT CAUGHT MR. LEAL AND SPLIT HIM UP FROM EVERYBODY

17   ELSE WHO HAD BEEN CAUGHT, HE BRINGS THEM IN THE OFFICE AND

18   SHOWS THEM A PHOTO LINEUP.  SIX PHOTOS.  TWO OF THEM HAVE

19   PEOPLE THEY HAVE SEEN BEFORE, MR. GOMEZ AND MR. LEAL.  THEY

20   ARE TOLD TO IDENTIFY TWO PEOPLE.  THEY IDENTIFY THE TWO

21   PEOPLE THEY SAW.  AND THEN, AGAIN, WE ARE NOT DISPUTING THAT

22   MR. LEAL WAS PART OF THE GROUP.  HE WAS PART OF THE GROUP.

23   SO, IT WAS EASY FOR HIM TO BE PICKED OUT BECAUSE THESE THREE

24   WITNESSES HAD SEEN HIM BEFORE.

25        AND LASTLY, THE AGENTS THREATENED MR. VAZQUEZ-

1   ROJAS.  AND YOU HEARD IT FROM HIMSELF.  THIS IS NOT SOMETHING

2   WE ARE SUGGESTING.  THIS IS WHAT HE TESTIFIED TO.  AND TO THE

3   EXTENT MR. MILLER SAID IT WAS JUST A SUGGESTION OR NOT TO BE

4   BELIEVED, DON'T FORGET MR. VAZQUEZ IS MR. MILLER'S WITNESS.

5   SO, HE IS CALLING HIS OWN WITNESS, YOU KNOW -- OR HE IS

6   QUESTIONING THE CREDIBILITY OF HIS OWN WITNESS AND YOU SHOULD

7   KEEP THAT IN MIND.

8            AND MR. VAZQUEZ MADE IT VERY CLEAR, HE SAID THAT

9   THE CAMERA WAS NOT TURNED ON.  HE WAS TOLD, PICK TWO PEOPLE

10  OR GO TO JAIL FOR SIX MONTHS, YOUR CHOICE, AND THEN THE

11  CAMERA WAS TURNED OFF.  YOU CAN ONLY EXPECT THAT THE

12  REASONABLE DECISION TO BE MADE WAS TO PICK OUT TWO PEOPLE AND

13  HE DID.  HE PICKED OUT MR. LEAL.

14           AND IF YOU HAVE QUESTIONS ABOUT THIS, IF YOU ARE

15  WONDERING ABOUT THIS, IF YOU HAVE QUESTIONS YOU WANT TO ASK

16  AGENT MESSIAHS ABOUT THIS IDENTIFICATION, WHY IT TOOK 12

17  HOURS, YOU ASK MR. MILLER THOSE QUESTIONS.  IT'S HIS BURDEN.

18  IT'S THE GOVERNMENT'S BURDEN TO PROVE MR. LEAL IS GUILTY

19  BEYOND A REASONABLE DOUBT.  MR. LEAL DOESN'T HAVE TO SAY

20  ANYTHING.  HE DOESN'T HAVE TO PRESENT ANY EVIDENCE.  IT'S ON

21  THE GOVERNMENT.  AND IF YOU ARE NOT SATISFIED, IF YOU HAVE

22  DOUBTS AND IF YOU HAVE QUESTIONS, THAT'S NOT GUILTY.

23           SECOND, AND LED TO BAD EYEWITNESS IDENTIFICATIONS.

24  AND I WANT TO TALK A LITTLE BIT ABOUT SOME OF THE NUMBERS

25  HERE.  WE HEARD FROM THREE WITNESSES WHO IDENTIFIED MR. LEAL

1  AS THE FOOT GUIDE.  APART AND IN ADDITION TO THE THREE

2  WITNESS IDENTIFICATIONS WE HAVE A LOT OF INCONSISTENCIES AND

3  I'M GOING TO TALK ABOUT THAT IN SOME DETAIL IN A MINUTE.

4       WE ALSO HAVE ONE NON-IDENTIFICATION MADE BY

5  MR. GOMEZ, AND FOR THE NINE OTHER WITNESSES WE HAVE NO IDEA

6  BECAUSE NOBODY BOTHERED TO QUESTION THEM, OR ASK THEM OR SEE

7  WHAT THEY KNEW.  AND AGAIN, IF YOU ARE WONDERING WHAT THEY

8  KNEW OR ARE WONDERING WHAT HAPPENED, ASK MR. MILLER.

9       THERE IS A GROUP OF 14 PEOPLE.  LET'S DISCOUNT

10  MR. LEAL FOR A MINUTE BECAUSE SINCE HE IS THE DEFENDANT, HE

11  HAS A RIGHT TO REMAIN SILENT.  HE DOESN'T HAVE TO TESTIFY AND

12  YOU CAN'T HOLD IT AGAINST HIM THAT HE DIDN'T TESTIFY.  WE

13  HAVE 13 PEOPLE.  WE HAVE THREE PEOPLE WHO IDENTIFY MR. LEAL

14  AS THE FOOT GUIDE.  WE HAVE MR. GOMEZ-AGUILAR WHO DOES NOT

15  IDENTIFY MR. LEAL AS A FOOT GUIDE.

16       MR. MILLER:  OBJECTION, CALLS FOR A STATEMENT OF

17  SOMETHING REPRESENTED BY COUNSEL.

18       THE COURT:  JUST REPHRASE IT, MR. FAKHOURY.

19       MR. FAKHOURY:  SURE.  YOU HAVE SEEN THE PLEA

20  AGREEMENT.  MR. GOMEZ DOES NOT IDENTIFY MR. LEAL AS A FOOT

21  GUIDE IN HIS PLEA AGREEMENT THAT HE SIGNED.  WE HAVE NINE

22  OTHER WITNESSES WHO DON'T SAY ANYTHING AT ALL, AND WE DON'T

23  KNOW WHAT THEY SAY BECAUSE, AGAIN, THE GOVERNMENT SENT THEM

24  BACK TO MEXICO BEFORE ANYBODY HAD A CHANCE TO TALK TO THEM.

25   SO, THAT MEANS WE HAVE THREE POSITIVE IDENTIFICATIONS OUT

1    OF THE 13 POTENTIAL WITNESSES.  THAT'S 23 PERCENT.

2         DURING JURY SELECTION, MR. PETERSON SPENT SOME TIME

3    TALKING TO YOU ABOUT THE BURDEN OF PROOF IN A CRIMINAL CASE,

4    HOW IT'S DIFFERENT THAN IN A CIVIL CASE, AND SOME OF YOU MAY

5    HAVE SERVED ON CIVIL JURIES BEFORE AND WERE TOLD ABOUT THE

6    PREPONDERANCE OF EVIDENCE STANDARD.  AND I DON'T WANT TO

7    QUANTIFY OR CREATE A NUMBER THAT DEFINES WHAT PROOF BEYOND A

8    REASONABLE DOUBT IS, BUT I CAN ASSURE YOU 23 PERCENT IS NOT

9    PROOF BEYOND A REASONABLE DOUBT.  THAT'S NOT EVEN

10   PREPONDERANCE OF THE EVIDENCE.  THAT'S NOT EVEN 50 PERCENT.

11   IT'S HALF OF 50 PERCENT.  SO, YOU CAN REST ASSURED THAT THE

12   23 PERCENT IS NOT PROOF BEYOND A REASONABLE DOUBT.  AND ONLY

13   23 PERCENT OF THE POTENTIAL WITNESSES POSITIVELY IDENTIFY

14   MR. LEAL AS A FOOT GUIDE.

15        LET'S TURN TO THE IDENTIFICATIONS OF MR. LEAL.  AND

16   WHEN YOU ARE CONSIDERING AN EYEWITNESS IDENTIFICATION, YOU

17   SHOULD KEEP IN MIND A COUPLE THINGS.  FIRST OF ALL, HOW LONG

18   DID THIS PERSON HAVE A CHANCE TO OBSERVE AND SPEND TIME WITH

19   THESE -- WITH THE PERSON THEY IDENTIFY?  WELL, WE KNOW THAT

20   MR. LEAL WAS PART OF THIS GROUP, AND HE WAS PART OF THE GROUP

21   FOR 36 HOURS, AND THEY WERE WALKING TOGETHER, TALKING

22   TOGETHER ON THE BUS.  SO, THERE WAS DEFINITELY AN OPPORTUNITY

23   TO SPEND SOME TIME WITH MR. LEAL.  BUT MOST OF THE WALKING

24   WAS DONE AT NIGHT, IN AN AREA WHERE THERE IS NO LIGHTS, AND

25   NO CARS, AND NO HOUSES AND NO BUSINESSES.  AND WHILE IT MAY

1   BE EASY TO PICK SOMEBODY OUT DURING THE DAY, THERE WAS NO

2   WALKING OR GUIDING HAPPENING DURING THE DAY.  DURING THE DAY

3   IT WAS REST TIME.  IT WAS AT NIGHT THAT ALL THE GUIDING WAS

4   HAPPENING.  SO, WHO SAID WHAT IS A LOT HARDER AT NIGHT WHEN

5   YOU CAN'T SEE.  ESPECIALLY WHEN YOU ARE IN A DARK DESERTED

6   AREA AND YOU ARE TRYING TO AVOID BEING ARRESTED BY THE BORDER

7   PATROL.

8          LET'S TALK ABOUT SOME OF THE INCONSISTENCIES

9   BETWEEN THE THREE WITNESSES THAT WE HEARD TESTIMONY FROM.

10  THAT MEANS, MR. VAZQUEZ, WHO TESTIFIED IN PERSON AND THE TWO

11  WITNESSES WE SAW IN THE DEPOSITION.  LET'S TALK A LITTLE BIT

12  ABOUT THEM.

13         FIRST OF ALL, FINANCIAL ARRANGEMENTS.  THERE WERE

14  THREE DIFFERENT EXPLANATIONS OF WHO MADE WHAT FINANCIAL

15  ARRANGEMENTS WITH WHO.  MR. VAZQUEZ SAID HE MADE FINANCIAL

16  ARRANGEMENTS WITH MR. LEAL.  MR. RAMIREZ SAID HE MADE

17  ARRANGEMENTS WITH A MAN NAMED RONIS AND NOT MR. LEAL.

18  MR. GONZALEZ CHANGED HIS STORY THREE TIMES DURING THE

19  DEPOSITION.  AFTER HIS ARREST HE SAID HE MADE ARRANGEMENTS

20  WITH MR. LEAL AT THE GAS STATION.  ON DIRECT EXAMINATION HE

21  SAID HE MADE HIS ARRANGEMENTS WITH THE TAXI DRIVER.  AND ON

22  CROSS EXAMINATION HE SAID HE DID NOT MAKE HIS ARRANGEMENTS

23  WITH MR. LEAL.

24         NOW, I WANT TO GO BACK ON THE FACT THAT MR. VAZQUEZ

25  SAID HE MADE HIS ARRANGEMENTS WITH MR. LEAL, AND MR. RAMIREZ

1    SAID HE MADE HIS ARRANGEMENTS WITH RONIS.  REMEMBER,

2    MR. VAZQUEZ THIS IS THE WITNESS WHO TOOK THE STAND, SAID HIS

3    FRIEND ARISTEO MADE ARRANGEMENTS, SUGGESTED THE SAME

4    SMUGGLER.  SO, TO MR. VAZQUEZ, HE SAID ME AND ARISTEO MADE

5    THE SAME ARRANGEMENTS WITH THE SAME GUY AT THE SAME TIME.

6              AND MAURO RAMIREZ, WHO YOU SAW ON THE VIDEO, SAID,

7    I MADE ARRANGEMENTS BY MYSELF WITH SOMEBODY COMPLETELY

8    DIFFERENT.  WELL, IT CAN'T BE BOTH.

9              WHO THE GUIDES WERE, THEY CAN'T EVEN GET THAT

10   RIGHT.  MR. RAMIREZ, ON THE VIDEO, CAN'T EVEN IDENTIFY

11   MR. GOMEZ WHO IS A SELF-ADMITTED ALIEN SMUGGLER.  HE DIDN'T

12   IDENTIFY HIM.  HE SAID, I DON'T KNOW WHO THAT GUY IS.  I

13   CAN'T TELL YOU FOR SURE IF THAT'S THE GUY.

14             HOW ABOUT BLANKETS, WE HEARD A LOT ABOUT BLANKETS.

15   WE DIDN'T SEE ANY BLANKETS, NOBODY SAW ANY BLANKETS, BUT THIS

16   WAS A BIG DEAL, THESE BLANKETS.

17             MR. VAZQUEZ, THE AGENT -- THE WITNESS WHO TOOK THE

18   STAND SAID MR. LEAL HAD THE BLANKETS.  MR. RAMIREZ' FRIEND

19   FROM OAXACA SAID IT WAS THE PEOPLE FROM THE OTHER GROUP WHO

20   HAD THE BLANKETS.  IN FACT, HE SAID IT WASN'T BLANKETS, IT

21   WAS A JACKET.

22             MR. GONZALEZ, AGAIN, LIKE MR. MILLER SAID, IT WAS

23   LIKE PULLING TEETH, ON DIRECT SAID, MR. LEAL PUT THE BLANKETS

24   DOWN AND ACTUALLY DIDN'T SEE ANYBODY PUT ANY BLANKETS DOWN.

25   HE ASSUMED.

```
1          HOW ABOUT WHETHER MR. LEAL WAS GIVING ORDERS.
2   LET'S LOOK AT THAT IN SOME MORE DETAIL.  AND THIS IS THE
3   DEPOSITION OF MR. RAMIREZ.  HE WAS THE FIRST DEPOSITION WE
4   SAW YESTERDAY AND EARLIER TODAY.  LET'S READ A LITTLE SNIPPET
5   OF WHAT HE SAID.
6          WHEN YOU MET MR. LEAL THE DAY BEFORE YOU WENT TO
7   THE BUS STATION, DID HE SAY ANYTHING TO YOU?  ANSWER, NO.
8   DID HE SAY ANYTHING ELSE DURING THIS BUS TRIP?  ANSWER, NO.
9   WHEN YOU GOT OFF THE BUS NEAR THE GAS STATION, DID MR. LEAL
10  SAY ANYTHING TO YOU?  NO, WE JUST GOT OFF.  WHERE WAS
11  MR. LEAL WHEN YOU WERE WAITING IN THIS PLACE?  HE WAS WITH
12  US.  HE DIDN'T SAY ANYTHING.  HE DIDN'T GUIDE ANYONE.  HE
13  DIDN'T COUNSEL, COMMAND, ASSIST OR INDUCE ANYTHING, HE WAS
14  JUST THERE.  WHILE YOU WERE WAITING IN THE SECOND PLACE, DID
15  MR. LEAL SAY ANYTHING TO YOU OR THE GROUP?  ANSWER, NO.
16  WHILE YOU WERE WAITING IN THE SECOND PLACE, WHAT DID MR. LEAL
17  DO?  ANSWER, HE WAS JUST THERE WITH US.  BEFORE YOU CAME
18  ACROSS THIS OTHER GROUP, DID MR. LEAL SAY ANYTHING TO YOU OR
19  THE OTHER GROUP?  NO.  HOW DID YOU KNOW WHERE TO GO?  I JUST
20  TOLD HIM.  HOW DID YOU KNOW WHERE TO GO?  ME?  YES.  I JUST
21  FOLLOWED HIM.  DURING YOUR WALK FROM JOINING THE GROUP TO THE
22  FIRST TIME THAT YOU STOPPED, DID MR. LEAL SAY ANYTHING TO
23  YOU?  NO.  HE JUST SAID WE WERE CLOSE, CLOSE TO THE BORDER.
24  IS THAT GUIDING?  THAT'S NOT GUIDING.  THAT'S NOT, ASSISTING
25  OR COMMANDING OR COUNSELING.  I'M CLOSE TO THE DOOR, I
```

1    HAVEN'T GUIDED ANYBODY TO THE DOOR.

2           WHEN YOU ARRIVED AT THE LITTLE HOUSE, DID MR. LEAL

3    SAY ANYTHING TO YOU OR THE GROUP?  ANSWER, NO.  WHEN YOU

4    STARTED TO CONTINUE WALKING, DID MR. LEAL SAY ANYTHING TO YOU

5    OR THE GROUP?  THAT IT WAS JUST A SHORT DISTANCE TO GO AND IT

6    WAS CLOSE TO THE BORDER.  THAT'S WHAT MR. LEAL SAID TO YOU?

7    YES.  THAT'S NOT GUIDING.  THAT'S NOT ASSISTING.  THAT'S NOT

8    COMMANDING.  THAT'S NOT COUNSELING.  THAT'S MAKING AN

9    OBSERVATION.

10          BEFORE YOU CROSSED THE ROAD, DID MR. LEAL SAY

11   ANYTHING TO YOU OR THE GROUP?  NO.  THAT'S FROM

12   MR. RAMIREZ-JARQUIN.

13          LET'S TAKE A LOOK AT MR. GONZALEZ-RAMIREZ BECAUSE

14   HE DOES THE SAME THING.  WHEN MR. LEAL, THE DEFENDANT WITH

15   THE MUSTACHE, TOLD YOU THAT YOU WERE NOT GOING TO CROSS THAT

16   DAY, DID HE SAY ANYTHING ELSE TO YOU THAT DAY?  NO.  THAT DAY

17   DID YOU HAVE ANY CONVERSATIONS WITH MR. LEAL, THE DEFENDANT

18   WITH THE MUSTACHE?  ANSWER, NO.  WHILE YOU WERE WALKING, WHAT

19   WAS MR. LEAL DOING?  HE WAS UP FRONT.  DID HE TELL ANYONE

20   WHERE TO GO?  NO, BECAUSE I WAS IN THE MIDDLE OF THE GROUP.

21   AND YOU TESTIFIED THAT WHILE YOU WERE WALKING BEFORE YOU GOT

22   TO THE DIRT ROAD THAT MR. LEAL, THE MAN WITH THE MUSTACHE,

23   DIDN'T SAY ANYTHING TO YOU, RIGHT?  ANSWER, NO.  YOU

24   TESTIFIED THAT YOU, AFTER ABOUT 30 MINUTES, YOU GOT TO THE

25   BORDER, RIGHT?  YES.  AGAIN, MR. LEAL, THE MAN WITH THE

1    MUSTACHE, DIDN'T SAY ANYTHING TO YOU, RIGHT?  ANSWER, NO.

2            THIS IS IMPORTANT FOLKS BECAUSE I WANT TO GO BACK

3    TO ONE OF THE JURY INSTRUCTIONS THAT JUDGE WHELAN READ TO YOU

4    ABOUT AIDING AND ABETTING.  IT IS NOT ENOUGH THAT THE

5    DEFENDANT MERELY ASSOCIATED WITH THE PERSON COMMITTING THE

6    CRIME, OR KNOWINGLY INTENTIONALLY DID THINGS THAT WERE

7    HELPFUL TO THAT PERSON OR WAS PRESENT AT THE SCENE OF THE

8    CRIME.  OKAY.  THERE IS NO DISPUTE THAT MR. LEAL WAS PRESENT

9    AT THE SCENE OF THE CRIME.  HE WAS ONE OF THE PEOPLE TRYING

10   TO BE GUIDED IN.  BUT IT WAS NOT ENOUGH THAT IT WAS ONLY

11   THERE OR THAT HE DID THINGS -- I'M SORRY, IT'S NOT ENOUGH

12   THAT HE WAS JUST MERELY ASSOCIATING WITH MR. GOMEZ.  HE WAS

13   ASSOCIATING WITH MR. GOMEZ.  HE HIRED MR. GOMEZ TO CROSS HIM

14   INTO THE UNITED STATES.  THAT'S NOT ALIEN SMUGGLING.

15           IT'S NOT ENOUGH THAT HE MERELY ASSOCIATED WITH

16   OTHER PEOPLE COMMITTING THE CRIME.  THAT'S NOT ALIEN

17   SMUGGLING.  IF THAT WAS ALIEN SMUGGLING, THEN EVERY SINGLE

18   ONE OF THE PEOPLE WOULD BE GUILTY OF ALIEN SMUGGLING, TOO.

19   THEN EVERY SINGLE ONE OF THE GOVERNMENT'S WITNESSES,

20   MR. VAZQUEZ, THE TWO WITNESSES WE SAW THROUGH DEPOSITION,

21   THEY WOULD BE GUILTY OF ALIEN SMUGGLING, TOO.  THAT'S NOT

22   ENOUGH.

23           AND WHEN YOU THINK ABOUT A WITNESS'S CREDIBILITY,

24   YOU ARE GOING TO GET AN INSTRUCTION FROM JUDGE WHELAN THAT

25   SAYS, WHEN YOU DETERMINE THE CREDIBILITY OF A WITNESS, YOU

1    CAN CONSIDER A WITNESS'S MEMORY.  HOW GOOD IS THEIR MEMORY?

2    WELL -- AND IT MAY HAVE BEEN A LITTLE BIT TOUGH FOR YOU ALL

3    TO KIND OF GET FROM THE VIDEOTAPE DEPOSITION, BUT THERE WAS A

4    BREAK IN A POINT IN TIME IN THE DEPOSITION WHEN THE WITNESS

5    WAS ALLOWED TO WATCH HIS POST-ARREST STATEMENT.  WHEN

6    MR. RAMIREZ WAS ALLOWED TO WATCH HIS POST-ARREST STATEMENT

7    AND ASKED QUESTIONS ABOUT IT.  AND HE SAID HE COULDN'T

8    REMEMBER WHAT HE SAW TEN MINUTES AGO, BUT HE COULD REMEMBER

9    WHAT HAPPENED THREE MONTHS AGO.

10          MR. RAMIREZ, THIS WAS THE VERY LAST PORTION OF THE

11   DEPOSITION THAT WE SAW RIGHT BEFORE WE STARTED CLOSING, HE

12   SAID THAT HE COULDN'T -- HE MADE SOME MISSTATEMENTS OR HE

13   CHANGED HIS STORY A LITTLE BIT BECAUSE HE WAS REALLY TIRED

14   AND HUNGRY WHEN HE SPOKE TO THE AGENTS, BUT HE STILL MANAGED

15   TO GIVE THEM A LOT OF DETAILS.  SO, WE CAN CALL INTO QUESTION

16   THEIR MEMORY.  WHAT DO THEY REALLY REMEMBER?  HOW ABOUT THEIR

17   MANNER WHEN TESTIFYING.  MR. RAMIREZ WAS VERY EVASIVE.

18   MR. GONZALEZ, YOU HEARD MR. MILLER HIMSELF SAID IT, IT WAS

19   LIKE PULLING TEETH, LIKE BEING AT A DENTIST TRYING TO PULL

20   TEETH.

21          AND LET'S CONTRAST THAT WITH AGENT PECHT.  AGENT

22   PECHT GOT ON THE STAND AND HE ANSWERED EVERY SINGLE QUESTION

23   STRAIGHT.  HE DIDN'T TRY TO HIDE ANYTHING.  HE WASN'T TRYING

24   TO BE EVASIVE.  HE TOLD EXACTLY WHAT HAPPENED.  HE WENT TO

25   THE FIELD.  HE SAW THE FOOTPRINTS AND HE FOLLOWED THEM.  AND

1    HE NEVER GAVE US ANY TESTIMONY THAT HE BELIEVE MR. LEAL WAS

2    THE FOOT GUIDE OR THAT ANY INVESTIGATION REVEALED THAT

3    MR. LEAL WAS THE FOOT GUIDE.

4          HOW ABOUT A WITNESS'S BIAS OR PREJUDICE, YOU CAN

5    CONSIDER THAT WHEN DECIDING HOW MUCH CREDIT TO GIVE A

6    WITNESS.  OKAY.  IN THE END IT'S THE GOVERNMENT THAT CHOOSES

7    THE LABELS.  IT'S THE GOVERNMENT THAT CHOSE TO LABEL THREE

8    PEOPLE AT MATERIAL WITNESSES.  IT'S THE GOVERNMENT THAT

9    DECIDED TO LABEL MR. LEAL AS THE DEFENDANT.  IT'S THE

10   GOVERNMENT THAT DECIDED TO LABEL NINE OTHER WITNESSES AS

11   UNIMPORTANT ENOUGH TO SPEAK TO THEM OR BRING THEM HERE.

12          EVERY SINGLE PERSON IN THAT GROUP IS GUILTY OF A

13   CRIME.  THEY ARE GUILTY OF ILLEGALLY ENTERING THE UNITED

14   STATES.  MR. GOMEZ WAS CHARGED WITH ALIEN SMUGGLING AND

15   MR. LEAL WAS CHARGED WITH ALIEN SMUGGLING, BUT IT'S THE

16   GOVERNMENT WHO GETS TO DECIDE THE CHARGES.  SO, IF YOU DON'T

17   THINK THAT EVERY ONE OF THOSE WITNESSES WHO, YOU KNOW,

18   MR. VAZQUEZ WHO TOOK THE STAND, MR. RAMIREZ AND MR. GONZALEZ

19   WHO YOU SAW THEIR DEPOSITION, DO YOU THINK THEY HAVE AN

20   INTEREST IN THIS?  DO THEY HAVE A STAKE IN THIS?  ABSOLUTELY.

21   THEY DON'T WANT TO BE CHARGED WITH A CRIME.  MR. VAZQUEZ

22   TESTIFIED HE WAS ALREADY THREATENED ONCE BY THE GOVERNMENT

23   AGENTS.  THEY DON'T WANT ANY MORE.  THEY ARE JUST GOING TO

24   SAY WHATEVER MAKES THE GOVERNMENT HAPPY.  THESE ARE THINGS

25   THAT YOU NEED TO THINK ABOUT AND CONSIDER AND I HOPE YOU DO

1    THAT WHEN YOU GO INTO THE JURY ROOM AND DISCUSS THIS EVIDENCE

2    AND LACK OF EVIDENCE.

3           I WANT TO END ON THE REASONABLE DOUBT INSTRUCTION,

4    AND PROOF BEYOND A REASONABLE DOUBT IS PROOF THAT LEAVES YOU

5    FIRMLY CONVINCED THAT THE DEFENDANT IS GUILTY.  AND IT'S NOT

6    REQUIRED THAT THE GOVERNMENT PROVE GUILT BEYOND ALL POSSIBLE

7    DOUBT BUT THEY HAVE TO PROVE IT BEYOND A REASONABLE DOUBT.

8    AND A REASONABLE DOUBT MAY ARISE FROM A CAREFUL AND IMPARTIAL

9    CONSIDERATION OF ALL THE EVIDENCE OR FROM THE LACK OF

10   EVIDENCE.  AND LET'S LOOK AT THE LACK OF EVIDENCE.

11          BLANKET.  WHERE IS IT?  WAS IT A BLANKET?  WAS IT A

12   JACKET?  I DON'T KNOW.  HOW ABOUT A CELL PHONE?  THERE IS A

13   LOT OF -- THERE WAS A BIG DEAL ABOUT THE CELL PHONE.  DID

14   MR. LEAL HAVE A CELL PHONE?  DID MR. LEAL NOT HAVE A CELL

15   PHONE?  WE KNOW THAT AGENT PECHT SEARCHED MR. LEAL, SECURED

16   HIM AND DIDN'T FIND ANYTHING.  HE DIDN'T FIND ANY CELL PHONE.

17          HOW ABOUT RONIS?  WHO'S RONIS?  I DON'T KNOW.

18   WHO'S THE TAXI DRIVER THAT MADE ARRANGEMENTS?  WE KNOW THAT

19   FIVE OTHER PEOPLE MADE ARRANGEMENTS WITH RONIS, PERHAPS.  OR

20   PERHAPS FIVE PEOPLE MADE ARRANGEMENTS WITH THE TAXI DRIVER.

21   WE KNOW THAT FIVE PEOPLE CAME TO THE TAXI DRIVER.  WHAT ABOUT

22   HIM?  DO WE HAVE ANY INFORMATION ABOUT HIM, ANY EVIDENCE, ANY

23   SUGGESTION THAT HE WAS INVOLVED IN IT?  I DON'T KNOW.  THE

24   GOVERNMENT CHOSE NOT TO KEEP THOSE PEOPLE AS WITNESSES.  SO,

25   I DON'T KNOW WHAT THEY SAY.  DO YOU HAVE QUESTIONS ABOUT WHAT

```
1    THEY WOULD HAVE SAID, YOU CAN ASK MR. MILLER.

2         ULTIMATELY, FOLKS, MR. LEAL IS JUST LIKE EVERYBODY

3    ELSE IN THIS GROUP.  HE WANTED TO COME TO THE UNITED STATES,

4    TO MAKE A BETTER LIFE FOR HIMSELF.  TO WORK HERE AS A DAY

5    LABORER, GETTING WHATEVER JOBS HE COULD GET AT A HOME DEPOT,

6    PAINTING, DRYWALL, WHATEVER IT COULD BE.  IT WAS WRONG FOR

7    HIM TO ILLEGALLY ENTER THIS COUNTRY ON MARCH 25.  THERE ARE

8    LEGAL WAYS TO IMMIGRATE AND HE SHOULD HAVE DONE THAT.  BUT HE

9    IS NOT ON TRIAL FOR THAT.  HE IS NOT ON TRIAL TO DETERMINE

10   WHETHER HE SHOULD STAY HERE IN THE UNITED STATES OR NOT.  HE

11   IS ON TRIAL BECAUSE THE GOVERNMENT CLAIMS HE'S AN ALIEN

12   SMUGGLER.  AND THE BOTTOM LINE IS THAT THEY HAVE FAILED TO

13   PROVE BEYOND A REASONABLE DOUBT THAT HE IS.

14        ALL THE GOVERNMENT HAS BROUGHT US IS INCONSISTENT

15   STATEMENTS FROM WITNESSES WHO HAVE EVERY INCENTIVE TO STAY

16   OUT OF TROUBLE, TO AVOID BEING THREATENED AGAIN, AND WHO JUST

17   WANT TO GO HOME AND SAID WHATEVER IT WAS GOING TO TAKE TO GET

18   THEM HOME SOONER RATHER THAN LATER.  THAT'S NOT PROOF BEYOND

19   A REASONABLE DOUBT.  THAT'S NOT WHAT SUFFICES TO SEND A MAN

20   TO PRISON IN A FEDERAL FELONY JURY TRIAL.

21        SO, LADIES AND GENTLEMEN, WHEN YOU HAVE REVIEWED

22   ALL THE EVIDENCE, WHEN YOU'VE REVIEWED ALL THE TESTIMONY,

23   WHEN YOU THINK OF EVERYTHING, MY HOPE IS THAT YOU RETURN A

24   VERDICT OF NOT GUILTY.  THANK YOU.

25        THE COURT:  THANK YOU, MR. FAKHOURY.  MR. MILLER,
```

```
 1    YOU MAY CLOSE.

 2              MR. MILLER:  YES, YOUR HONOR.

 3              ONE OF THE THINGS THAT THE DEFENDANT ARGUED,

 4    ACTUALLY I'M GOING TO LEAVE THIS UP BECAUSE AS I HAD STATED,

 5    IT'S A DOUBT BASED ON REASON AND COMMON SENSE, NOT BASED ON

 6    SPECULATION.  KEEP THAT IN MIND.

 7              I AGREE WITH ONE THING THAT THE DEFENSE COUNSEL

 8    STATED.  YOU KNOW WHEN YOU ARE GATHERING IN A GROUP YOU TALK

 9    ABOUT YOUR HOPES, AND DREAMS, AND THE BALL SCORES AND

10    WHATEVER.  AND GOSH, YOU'RE TAKING THE TROLLEY AND YOU'RE

11    GOING TO ASK WHEN IS THE NEXT FASHION VALLEY STOP?  WHEN IS

12    THE MISSION VALLEY STOP?  YOU TAKE A BUS RIDE AND YOU TALK TO

13    PEOPLE NEXT TO YOU ON THE BUS.  BUT I DON'T THINK ANYONE HAS

14    EVER TAKEN THE TROLLEY AND SAY, DO YOU KNOW WHERE IN THE NEXT

15    BUS STOPS IN THE HINDER LAND I'M GOING TO GET OFF IN ORDER TO

16    BE SMUGGLED INTO THE UNITED STATES?  DO YOU KNOW WHERE THE

17    TRAIL HEAD IS AND THE BRUSH AND SCRUB?  NO.  THAT DEFIES

18    COMMON SENSE.

19              COUNSEL ARGUED, WELL, THESE PEOPLE THAT WERE

20    SMUGGLED, SOMEONE MUST HAVE SMUGGLED THEM.  IT WOULDN'T HAVE

21    BEEN MR. LEAL.  WE KNOW THAT IT WAS MR. GOMEZ.  NOW, THEY ARE

22    ALL GUILTY.  WELL, YES, THAT MAKES SENSE IF YOU'RE GOING TO

23    SMUGGLE ILLEGAL ALIENS, YES, THOSE ALIENS ARE GOING TO BE

24    ILLEGAL.  BUT THEY ARE THE ONES THAT ARE SMUGGLING THEM.

25              ONE OF THE ATTEMPTS TO SHOW THAT YOU SHOULD NOT
```

1   TAKE THE CREDIBILITY OF ONE OF THE WITNESSES IS WHERE THEY

2   REPEATEDLY ASKED THEM YOU'VE BEEN HERE BEFORE.  YOU'VE

3   CROSSED BEFORE.  THAT'S AGAINST THE LAW.  WELL, IN

4   MR. GONZALEZ-RAMIREZ, THE SECOND DEPOSITION, THEY ARE TALKING

5   ABOUT HOW HE HAD BEEN TO THE STATES BEFORE.  I'M TALKING

6   ABOUT IN THE PRESENT CASE.  HE MADE ARRANGEMENTS FOR YOU AND

7   YOUR GIRLFRIEND TO COME TO THE UNITED STATES, RIGHT?  YES.

8   AND THE REASON WAS BECAUSE YOU DIDN'T KNOW WHERE TO GO,

9   RIGHT?  YES.  EIGHT YEARS AGO WHEN YOU SUCCESSFULLY CROSSED,

10  DID YOU HIRE SOMEONE TO BRING YOU ACROSS?  YES, BECAUSE I

11  DON'T KNOW THE WAY.  I DON'T KNOW HOW TO CROSS.

12         SO, YOU'RE RIDING ALONG THE TROLLEY AND JUST

13  TALKING TO SOME GUY?  NO.  YOU NEED SOMEONE TO TELL YOU WHEN

14  TO GET OFF.  YOU NEED TO HAVE SOMEONE TELL YOU WHERE YOU'RE

15  GOING TO STOP TO TAKE THE TRAIL TO BE BROUGHT INTO THE UNITED

16  STATES.  THE DEFENDANT ARGUED, WELL, YOU KNOW, JUST SAYING

17  THAT WE ARE NEAR THE BORDER THAT DOESN'T MEAN THAT HE WAS

18  GUIDING.  NO.

19         WHEN MR. LEAL GOT OFF THE BUS AND YOU GOT OFF THE

20  BUS AND YOU FOLLOWED MR. LEAL, DID THE OTHER PEOPLE FOLLOW

21  HIM?  YES.  THAT IS ALIEN SMUGGLING.  THEY RELIED UPON THIS

22  MAN TO TELL THEM WHEN THEY WERE GOING TO GET OFF SO THAT THIS

23  MAN COULD SMUGGLE THEM INTO THE UNITED STATES.  YOU HIRE

24  ALIEN SMUGGLERS BECAUSE YOU DON'T KNOW WHERE TO GO.  HE KNEW

25  WHERE TO GO.

1    AND IF THERE WAS ANY DOUBT, MR. RAMIREZ-JARQUIN

2    SAID, WE HAD SEEN HIM BEFORE.  WHEN WE RECOGNIZED HIM, WE

3    FOLLOWED HIM.  I HAD SEEN HIM BEFORE, LIKE ONE DAY BEFORE, I

4    THINK.  HE WAS INTRODUCED AS THE PERSON WHO WAS GOING TO

5    CROSS ME.  EACH OF THE PEOPLE WHO TESTIFIED IDENTIFIED HIM AS

6    THE GUIDE.

7    WHAT DID HE SAY?  DID HE SAY ANYTHING TO YOU?  NO,

8    HE JUST SAID WE WERE CLOSE.  CLOSE TO THE BORDER.  WELL, HE

9    KNEW HE WAS CLOSE TO THE BORDER BECAUSE HE WAS THE ONE WHO

10   KNEW WHERE TO GO.  THAT'S THE ONE WHERE MR. GONZALEZ-RAMIREZ

11   SAID, I HIRE GUIDES BECAUSE I DON'T KNOW THE WAY.  BUT, THE

12   DEFENDANT KNEW THE WAY.

13   ON THE BUS HE TOLD ME THAT WHENEVER HE GOT OFF, I

14   WAS TO GET OFF TOO.  WELL, IT'S JUST HIM THAT WAS THERE.  IT

15   WAS JUST HIM THAT WAS GUIDING US.  I DON'T KNOW IF -- YOU

16   DON'T WHAT IF WHAT?  I MEAN, THERE WERE OTHER IN THE GROUP I

17   DON'T KNOW WHO WAS THE OTHER ONE.

18   AFTER THEY CROSSED THE ROAD, BETWEEN THE TIME HE

19   CROSSED THE ROAD OVER THE JACKETS AND YOU HID IN THE BRUSH,

20   DID MR. LEAL SAY ANYTHING TO YOU OR THE GROUP?  HE TOLD US TO

21   STAY HERE.  WHAT DID HE DO?  HE LEFT.  I'M SAYING THAT

22   MR. GOMEZ IS THE GUILTY ONE AND WE DON'T KNOW THE ACCOMPLICE

23   IS.  WE KNOW WHO THE ACCOMPLICE WAS.  MR. GOMEZ WAS THE

24   ACCOMPLICE.  MR. LEAL WAS THE ONE UP IN FRONT.  IF YOU

25   REMEMBER THE DEPOSITION TESTIMONY, HE WAS THE ONE UP FRONT.

```
 1            AND THEY ARE ASKING ABOUT THE OTHER ONE.  WELL, I
 2   CAN'T SAY, HE WASN'T MY GUIDE.  MR. GOMEZ WASN'T
 3   MR. RAMIREZ-JARQUIN'S GUIDE.  AND IF YOU REMEMBER THE
 4   TESTIMONY OF ARISTEO, IT WAS LEAPFROGGING FROM MOMENT TO
 5   MOMENT.  WHEN YOU DID THIS, WHAT DID THE DEFENDANT SAY?  I
 6   WENT TO THE ARCHES.  HE SAID I HAD TO PAY $2,300.  GO TO THE
 7   BUS.  I WENT TO THE BUS.  WHAT DID YOU DO?  I BOUGHT THE BUS
 8   TICKET.  WHAT DID HE SAY?  WHEN I GOT OFF, YOU GET OFF.  WHAT
 9   DID YOU DO WHEN HE GET OFF?  WE WAITED.  WHAT DID HE SAY?
10   WAIT.  WHAT DID YOU DO WHEN THE OTHER GROUP CAME?  HE SAID TO
11   WALK.  WHAT DID YOU -- I WALKED.  THE DEFENDANT WAS THE ONE
12   WHO KNEW WHERE TO GO.  HE WASN'T SOME GUY THAT YOU HAPPENED
13   TO TALK WITH ON THE TROLLEY.  IT'S NOT LIKE PUBLIC KNOWLEDGE
14   WHERE THE FASHION VALLEY TROLLEY STOP IS.  HE WAS THE ONE
15   THAT HAD THE NECESSARY KNOWLEDGE OF WHERE TO STOP AND WHERE
16   TO GO.
17            THERE WAS -- ALSO EVALUATE THE CREDIBILITY OF THE
18   MATERIAL WITNESSES.  THE DEFENSE ATTEMPTS TO SAY WHEN HE
19   BEGINS ARGUMENT, THE DREAM IS SHATTERED, HIS DREAM WAS
20   SHATTERED.  I DIDN'T KNOW WHO HE WAS TALKING ABOUT, BUT HE
21   WAS TALKING ABOUT ARISTEO.
22            WELL, BECAUSE HE WAS IN THE CELL AND HE WAS BROUGHT
23   OUT, THEN HE MUST HAVE MADE IT UP.  WELL, LADIES AND
24   GENTLEMEN, IT WASN'T, PICK OUT WHOMEVER WE TELL YOU IS THE
25   GUIDES.  IF YOU REMEMBER HE WAS GIVEN A PHOTO LINEUP, AND
```

```
 1    THIS IS BEFORE THERE IS ANY IMPLICATION OF ANY UNDUE

 2    INFLUENCE THAT HAS BEEN APPLIED BY THEN.

 3              MR. PETERSON:  OBJECTION, MISSTATES THE EVIDENCE.

 4              THE COURT:  OVERRULED.  IT'S WITHIN THE SCOPE.

 5    YOU'RE ALL RIGHT.  GO AHEAD.

 6              MR. MILLER:  WHO WERE YOUR GUIDES?  AND HE SELECTED

 7    THEM.  THAT GUY.  THAT GUY.  AND IF YOU REMEMBER ARISTEO'S

 8    TESTIMONY, HE WAS SAYING, WELL, I KNEW NO. 5, MR. LEAL.  THE

 9    OTHER GUY I DIDN'T KNOW SO WELL, AND EACH OF THE MATERIAL

10    WITNESSES SAY HE'S THE GUIDE.  EXCUSE ME JUST A MOMENT.

11              MR. GONZALEZ-RAMIREZ, WAS YOUR ATTENTION DRAWN TO

12    MR. LEAL?  THE TAXI TOLD ME.  I MEAN, THE IMPLICATIONS THAT

13    THEY ARE HANGING OUT IN THE CELL, THEY ARE HUNGRY, THEY ARE

14    THIRSTY, THERE IS A TOILET THERE, AND GOSH, I CAN'T TELL WHO

15    THE GUIDE IS.  AND THEN, IN THE DEPOSITION, MR. GONZALEZ-

16    RAMIREZ, WHEN THE TAXI DREW YOUR ATTENTION TO MR. LEAL, WHAT

17    DID YOU DO?  I SPOKE AND ASKED IF HE COULD CROSS ME INTO THE

18    UNITED STATES.  DOESN'T GET MUCH MORE CLEARER THAN THAT.  WHO

19    DID YOU ASK?  THE ONE WITH THE MUSTACHE.  WHAT DID HE SAY?

20    THAT, YES, BUT THAT WE WEREN'T GOING TO CROSS UNTIL THE NEXT

21    NIGHT.  IT DOESN'T GET MORE ARE CLEARER THAN THAT.

22              ALSO, MR. GONZALEZ-RAMIREZ, BEFORE YOU CROSSED THIS

23    DIRT ROAD, DID MR. LEAL, THE DEFENDANT, WITH THE MUSTACHE DO

24    ANYTHING?  YES.  WHAT DID HE DO?  HE PUT THE BLANKETS ON THE

25    DIRT ROAD.  WHO PUT THE BLANKETS ON THE DIRT ROAD?  THE MAN
```

1    WITH THE MUSTACHE.  HE TOLD THE GROUP FOR US TO STAY THERE

2    AND TO SLEEP.  HE WAS THE ONE THAT WAS ISSUING INSTRUCTIONS.

3    MR. RAMIREZ-JARQUIN IS TALKING ABOUT WHO WAS TELLING THE

4    PEOPLE WHAT TO DO.

5            MR. PETERSON:  YOUR HONOR, THIS IS IMPROPER

6    REBUTTAL.  NONE OF THIS WAS DISCUSSED IN EITHER OF OUR

7    CLOSINGS.

8            THE COURT:  OUTSIDE THE SCOPE.  SUSTAINED.

9            MR. MILLER:  EACH OF THE ALIENS IDENTIFY THE

10   DEFENDANT AS THE GUIDE.

11           NOW, ONCE WHEN I WAS TAKING A LOGIC CLASS WE HAD A

12   SPECIAL CLASS ON LYING WITH STATISTICS.  AND THE PROFESSOR

13   ONCE TOLD ME THERE ARE LIARS, DARN LIARS AND HE DIDN'T USE

14   THE WORD DARN, AND STATISTICS.  AND IN THIS CASE THE

15   DEFENDANT ARGUED, WELL, WE ONLY HAD A 23 PERCENT

16   IDENTIFICATION RATE.  WELL, IT DEPENDS UPON WHO'S MAKING THE

17   CALCULATIONS, BECAUSE HIS ARGUMENT IS THAT THREE PEOPLE

18   IDENTIFIED THE DEFENDANT.  THEY WERE TAKEN OUT OF THE CELL AT

19   THE TIME OF THEIR APPREHENSION.  WHO GUIDED ME?  HE GUIDED

20   ME.  NEXT ONE, WHO GUIDED YOU?  HE GUIDED ME.  EACH OF THE

21   THREE.  SO, THREE OUT OF THE THREE, THAT'S 100 PERCENT

22   IDENTIFICATION.  A HUNDRED PERCENT IDENTIFICATION FOR

23   MR. LEAL.  THEY WERE MEMBERS OF HIS GROUP.  THEY SAID, WE ARE

24   IN THAT GROUP.  WE DON'T KNOW ABOUT MR. GOMEZ' GROUP.

25           AND THEY ARGUE, WELL, IT'S SIGNIFICANT BECAUSE THEY

```
 1    WENT NORTH.  THERE IS NO REASON THAT MR. GOMEZ WOULD SELECT
 2    THE GUY WHO'S NOT GOING TO LOS ANGELES OR SAN FRANCISCO, OR
 3    THE LESS OF THE CASH COW TO SMUGGLE NORTH.  THEY ARE ARGUING
 4    THAT THERE IS SOME SIGNIFICANCE THAT THE PEOPLE WHO WERE
 5    SMUGGLING THE ALIENS WENT NORTH.  REMEMBER, MR. LEAL-DEL
 6    CARMEN PROVIDED EVIDENCE TO YOU THAT HE LIVES IN RAMONA.
 7    THIS IS GETTING CLOSER TO HIS HOME.  BUT THERE WAS AN
 8    ALLEGATION HERE WHICH IS NOT A REBUTTAL OF ANYTHING BEYOND A
 9    REASONABLE DOUBT.  HE SAID, AND THIS WAS AN ASSERTION DURING
10    CLOSING ARGUMENT, THAT MR. LEAL IS THE ONE THAT HIRED
11    MR. GOMEZ TO SMUGGLE.  THERE IS NO EVIDENCE OF THAT.
12              MR. PETERSON:  OBJECTION, BURDEN SHIFTING.
13              THE COURT:  OVERRULED.  IT'S PROPER REBUTTAL.
14              MR. MILLER:  THEY MAKE AN ASSERTION TO YOU AS A
15    MATTER OF FACT, AND THERE IS NO EVIDENCE OF THAT FACT.
16              MR. FAKHOURY:  SAME OBJECTION.
17              THE COURT:  OVERRULED.
18              MR. MILLER:  BUT WHAT WE DO HAVE IS THAT AMONG THE
19    PEOPLE THAT HE ORDERED TO HIDE HERE, HE AND MR. GOMEZ LEFT
20    AND HID.
21              THE OTHER ARGUMENT THAT THEY MADE, WHICH IS PURE
22    SPECULATION, IS, WELL, GOSH, WHAT WOULD THE OTHER NINE PEOPLE
23    SAY?  WELL, THAT'S SPECULATION.  THEY TRIED TO REDUCE IT AS A
24    MATTER OF STATISTICS BY SAYING, WELL, SINCE THERE ARE OTHER
25    PEOPLE THAT YOU DIDN'T HEAR FROM, THEREFORE, THE OTHER
```

1    EVIDENCE MUST BE ACCURATE.  WELL, YOU HAVE THREE OUT OF THE

2    THREE, AND THE CIRCUMSTANCES SHOW THAT THAT TESTIMONY IS

3    RELIABLE, THEN THERE IS NO SENSE IN YOU LISTENING TO NINE

4    MORE DEPOSITIONS?  THAT DEFINES --

5            MR. PETERSON:  OBJECTION, MISLEADING THE JURY, YOUR

6    HONOR.

7            THE COURT:  SUSTAINED.

8            MR. MILLER:  LADIES AND GENTLEMEN, THE ONLY

9    EVIDENCE PRESENTED IN THIS CASE BY ALL THE MATERIAL

10   WITNESSES, EACH OF THEM CONSISTENT, EACH OF THEM ABSOLUTE

11   SAYING, I'M A MEXICAN CITIZEN.  I HAVE NO RIGHT TO BE IN THE

12   UNITED STATES.  I AGREED TO PAY SOMEONE 1,500 OR $2,500 TO BE

13   BROUGHT TO THE UNITED STATES.  I WAS THEN DIRECTED TO THE

14   DEFENDANT.  AFTER I MADE CONTACT WITH THE DEFENDANT, HE THEN

15   BROUGHT ME INTO THE UNITED STATES.  AND THEN THEY WERE CAUGHT

16   IN THE UNITED STATES.  THE WAY THAT THE DEFENDANT BROUGHT

17   THEM INTO THE UNITED STATES, THE CIRCUMSTANCES OF THE

18   APPREHENSION SHOW THAT HE KNEW THAT THEY WERE MEXICAN

19   CITIZENS AND HAD NO RIGHT TO BE IN THE UNITED STATES.  THE

20   EVIDENCE HAS SHOWN, BEYOND A REASONABLE DOUBT, THAT

21   DEFENDANT, MR. LEAL-DEL CAMPOS (SIC) IS GUILTY OF ALL SIX

22   COUNTS OF THE INDICTMENT, AND I ASK YOU TO RETURN A VERDICT

23   OF GUILTY.  THANK YOU.

24           THE COURT:  THANK YOU, MR. MILLER.

25           (WHEREUPON INSTRUCTIONS READ BUT NOT TRANSCRIBED.)

```
1                    CERTIFICATE OF REPORTER

2

3     COUNTY OF SAN DIEGO        )

4                                )  SS.

5     STATE OF CALIFORNIA        )

6

7     I, MELISSA A. PIERSON, OFFICIAL COURT REPORTER, REGISTERED

8     PROFESSIONAL REPORTER, IN AND FOR THE UNITED STATES DISTRICT

9     COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA, DO HEREBY

10    CERTIFY THAT I REPORTED, STENOGRAPHICALLY, THE FOREGOING

11    PROCEEDINGS AT THE TIME AND PLACE HEREINBEFORE SET FORTH;

12    THAT THE SAME WAS THEREAFTER REDUCED TO TYPEWRITTEN FORM BY

13    MEANS OF COMPUTER-AIDED TRANSCRIPTION; AND I DO FURTHER

14    CERTIFY THAT THIS IS A TRUE AND CORRECT TRANSCRIPTION OF MY

15    STENOGRAPHIC NOTES.

16

17

18    DATE:  5-5-11

19

20    S:/MELISSA A PIERSON

21    MELISSA A. PIERSON, CSR 12499 RPR

22    FEDERAL OFFICIAL COURT REPORTER

23

24

25
```